BRETT A. AXELROD, ESQ., NV Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ., NV Bar No. 16264
JEANETTE E. McPHERSON, ESQ., NV Bar No. 5423
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: 702-262-6899 / Facsimile: 702-597-5503
Email:  baxelrod@foxrothschild.com
          nkoffroth@foxrothschild.com
          jmcpherson@foxrothschild.com

*[Proposed] Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No. BK-S-23-13871-NMC |
|---|---|
| BLITZ NV, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | **DECLARATION OF JASON VERONA IN SUPPORT OF MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; (II) GRANTING LIENS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**<br><br>Hearing Date:  OST PENDING<br>Hearing Time:  OST PENDING |

I, Jason Verona, declare as follows:

1.      I am the Chief Operating Officer of Blitz NV, LLC ("Debtor"), debtor and debtor in possession in the above captioned chapter 11 case (the "Chapter 11 Case").

2.      Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.      I make this Declaration in support of Debtor's *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Liens; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Motion"), seeking an order of the Court authorizing and approving, among other things, Debtor to: (i) obtain senior secured postpetition financing in the amount of up to $300,000 (the "DIP Loan")

1

150042422.1

from Debtor's largest creditor, International Investments, Ltd. (the "Lender"), and (ii) grant Lender first priority liens on all of its Property (which specifically excludes Avoidance Actions). Debtor seeks authorization for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm a plan of reorganization. A copy of the *Debtor-In-Possession Credit Agreement* (the "DIP Agreement") is attached as **Exhibit 1** hereto. Debtor is seeking to use the DIP Loan pursuant to a cash budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to the DIP Agreement as **Exhibit B** thereto (the "Initial Cash Budget").

4.      Debtor was formed in 2014 for the purpose of operating businesses related to its trademarks and to sell its marketing services to help promote its customers' products. Debtor has 6 employees, including a chief operating officer and accountant, most of whom have been with Debtor for many years.

5.      Debtor's current assets consist of cash in its bank accounts in the aggregate amount of approximately $34,011, trademarks and receivables due for loans to affiliated entities in the aggregate amount of approximately $9,374,909. Debtor's fixed assets consist of certain leasehold improvements in the aggregate amount of approximately $117,330, and investments in the aggregate amount of approximately $115,000.

6.      Debtor's current liabilities consist of accounts payable in the aggregate amount of approximately $98,817, and amounts due on loans in the aggregate amount of approximately $4,191,122, including a loan of $3,937,803 owed to the DIP Lender.

7.      In March 2017, Debtor entered into an agreement (the "Steel Agreement") with Steel Supplements, Inc. ("Steel"), whereby Debtor would provide promotion, publicity and endorsement of Steel's products in exchange for ten percent (10%) of gross sales (bringing Debtor approximately $500,000 per month). On December 14, 2020, Steel filed a complaint against Debtor, alleging that Debtor had breached the Steel Agreement. Debtor answered and counterclaimed, asserting, among other things, that Steel had breached the Steel Agreement. The parties have been embroiled in litigation, costing Debtor over $1 million in legal fees and costs, depleting Debtor's cash resources and requiring Debtor to file the Chapter 11 Case to stay creditors from collection efforts until it has time to liquidate its claim against Steel and generate income from other business activities.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

150042422.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

8.    Debtor projects that it will not generate enough income to administer and preserve the value of its Chapter 11 Estate through confirmation of its plan of reorganization ("Plan").

9.    Debtor approached six different institutions for a DIP loan, including Lendzi, Credibly, Funding Circle and Seek Capital.  All of the institutions declined.  Only the DIP Lender, International Investments, was willing to make a DIP loan, and in the amount that Debtor requires to be able to emerge from bankruptcy.

10.    As set forth in the Budget attached as Exhibit B to the DIP Agreement, Debtor requires the DIP loan to make payroll, pay employee health benefits, and cover security and landscape maintenance costs (in addition to the administrative costs of the bankruptcy).  In the event that the DIP Loan is not approved, Debtor will be unable to make payroll and the employee benefits will be revoked, causing Debtor's employees to seek employment elsewhere.  Debtor does not believe that it can replace its employees without great expense and delay.

11.    By the Motion, Debtor seeks authorization to obtain the DIP Loan from Lender pursuant to the DIP Agreement.  The Lender is Debtor's largest creditor, with an unsecured claim of approximately $3,937,803.

12.    Debtor anticipates filing a Plan that will provide a distribution to all creditors.  As indicated by the Initial Cash Budget, Debtor projects that it will need to borrow up to $300,000 under the DIP Loan in order to confirm the Plan by the end of this year.  Accordingly, timely approval of the proposed DIP Loan is critical to Debtor's timely emergence from Chapter 11.

13.    Debtor proposes to obtain financing by providing the Lender with a first priority Lien on all of Debtor's Property (which is defined to specifically exclude Avoidance Actions), pursuant to section 364(c)(2) of the Bankruptcy Code.  All of Debtor's Property is currently unencumbered.

14.    During the period following the Petition Date, Debtor attempted to identify other sources of post-petition financing to determine whether Debtor could obtain debtor in possession financing on better terms.  However, given Debtor's current financial condition, Debtor has been unable to obtain financing on more favorable terms than those provided in the DIP Agreement.

150042422.1

15. In fact, Debtor has had contact with at least six other prospective lenders to try to obtain funding. In the end, the only (and best) offer received was the current proposed arrangement with the Lender.

16. The Lender was unwilling to extend unsecured credit in exchange for an administrative priority claim.

17. On the other hand, the Lender is not charging a commitment fee, and the DIP Loan is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the Effective Date of a Lender Approved Plan.

18. Debtor respectfully submits that, given the unsuccessful efforts made to seek attractive alternatives, it has demonstrated that post-petition financing is not available on a more favorable basis.

19. Likewise, the terms and conditions of the DIP Loan have been the subject of extensive negotiations conducted in good faith and at arm's length, and are fair and reasonable under the circumstances.

20. Moreover, without the DIP Loan, Debtor would be unable to fund the cost of administering its Chapter 11 Case or make any distribution to its existing creditors, likely eliminating its ability to reorganize altogether.

21. Debtor expects to file its Plan shortly. Among other things, Debtor anticipates that the Plan will provide for payment of all expenses involved in administering the Chapter 11 Case, and for a distribution to all other creditors. Absent the DIP Loan, Debtor will not be able to confirm the Plan.

22. Here, Debtor's decision to enter into the DIP Loan represents a reasonable exercise of business judgment. As demonstrated by the Initial Cash Budget, Debtor has an immediate need for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm its Plan. Debtor and Lender negotiated the terms of the proposed DIP Loan at arms' length in good faith, and Lender was represented by independent counsel.

23. Lender is willing to provide the DIP Loan on acceptable terms. Debtor anticipates that its Plan will provide for payment in full of administrative expense creditors and a distribution to all

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150042422.1

other creditors. Such a Plan will benefit creditors and further establishes the sound business judgment of Debtor in entering into the proposed DIP Loan.

24. Without the DIP Loan, Debtor would not be able to fund the costs of administering its Chapter 11 Case and proceed with any plan of reorganization. Instead, Debtor would be faced with the potential for administrative insolvency followed by a liquidation.

25. The terms of the DIP Agreement are similar to those often included in complex financing arrangements. Indeed, the DIP Agreement and the proposed Interim Order reflect the give and take that result from complex financing negotiations.

26. As noted above, the terms of the DIP Agreement are favorable under the circumstances. This is not a case where an over-reaching (and/or oversecured) pre-petition lender seeks to enhance its collateral package at the expense of unsecured creditors. In fact, the DIP Loan does not have a commitment fee, is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the Effective Date of a Lender Approved Plan. The Lender simply requested reasonable protections to secure repayment of the DIP Loan.

27. Similarly, the interest rate of ten percent (10%) is reflective of the competitive rates available in the market for financing secured by a lien on assets that may not be readily convertible to cash.

28. The Events of Default and conditions to borrowing are customary in postpetition financings, as is Lender's ability to exercise remedies upon the occurrence of an Event of Default. Lender does not unduly seek to control or restrict Debtor's ability to prosecute the Chapter 11 Case. Given Debtor's circumstances, Debtor believes the terms of the DIP Loan are fair, reasonable and adequate, under the circumstances.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief. Dated this 3rd day of October, 2023.

/s/ Jason Verona
Jason Verona

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

5

150042422.1

EXHIBIT 1

(*Debtor-In-Possession Credit Agreement*)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150042422.1

## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This DEBTOR-IN-POSSESSION CREDIT AGREEMENT ("DIP Credit Agreement"), dated as of September 18 2023, ("Agreement") between BLITZ NV, LLC, a Nevada limited-liability company ("Borrower" or "Debtor"), debtor-in-possession in a case pending under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"), on the one hand; and INTERNATIONAL INVESTMENTS, LTD., a company registered in St. Kitts (the "Lender" and, together with the Borrower, collectively referred to as the "Parties"), on the other hand. Capitalized terms used, but not immediately defined, in this Agreement shall have the meanings ascribed to such terms later or elsewhere in this Agreement.

### RECITALS

WHEREAS, on September 6, 2023 ("Petition Date"), Borrower filed a voluntary petition with the Bankruptcy Court initiating a Subchapter V Chapter 11 Case, Case No. 21-14823-nmc (the "Bankruptcy Case"). Borrower continues to operate its business and is in the possession of its assets and in the management of its business pursuant to 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code") Sections 1107 and 1108;

WHEREAS, Borrower has requested that the Lender provide a secured credit facility to Borrower in the principal amount of Three Thousand Dollars ($300,000) (the "DIP Loan") to fund, among other things, working capital during the pendency of the Bankruptcy Case;

WHEREAS, the Lender is willing to make the DIP Loan to the Borrower upon the terms and conditions set forth herein;

WHEREAS, all exhibits hereto or expressly identified in this Agreement, are incorporated herein by reference, and taken together, shall constitute a single agreement.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter contained, and for other good and valuable consideration, the Parties hereto agree as follows:

149418482.2

# ARTICLE I.

# DEFINITIONS

**1.1    Defined Terms.**

Capitalized terms used in this Agreement and the other Loan Documents shall have (unless otherwise provided elsewhere in the Loan Documents) the following respective meanings and all section references in the following definitions shall refer to Sections of the Agreement:

"Affiliate" shall mean, as to any Person, any other Persons which, directly or indirectly, through one or more intermediaries, is in control of, is controlled by, or is under common control with, such Person.  For purposes of this definition, "control" of a Person shall mean the power, directly or indirectly, either (a) to vote a majority of the outstanding equity securities having ordinary voting power for the election of directors of such Person or (b) to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"Agreement" shall mean this DIP Credit Agreement, as the same may from time to time be amended, modified or supplemented.

"Avoidance Actions" shall mean any actions commenced, or that may be commenced before or after the Effective Date, pursuant to section 544, 545, 547, 548, 550 or 551 of the Bankruptcy Code, and all proceeds thereof.

"Bankruptcy Case" shall have the meaning provided in the Recitals to this DIP Credit Agreement.

"Bankruptcy Code" shall mean 11 U.S.C. §§ 101, et seq., as amended.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nevada, or such other court as is exercising jurisdiction over the Bankruptcy Case or any part thereof.

149418482.2

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Bankruptcy Case.

"Borrower" shall have the meaning ascribed thereto in the Preamble.

"Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in Nevada are authorized or required by law to close.

"Carve-Out" shall mean (i) the Subchapter V Trustee Fees; and (ii) an amount not exceeding $75,000.00 in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Borrower that are allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses Lender waives any right to disgorgement).

"Change of Control" shall mean such time as:

(a)      The purchase or other acquisition of the equity interests in Borrower that constitutes more than 25% of the total combined value or total combined voting power of all equity interests issued by Borrower;

(b)      A change in the officers, directors or senior management of Borrower; or

The direct or indirect sale, transfer, conveyance or other disposition, in one or a series of related transactions, of any material part of the properties or assets of the Borrower to any Person.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing Date" shall mean the date of entry of the Final DIP Order by the Bankruptcy Court and execution by all Parties of this Agreement and all other Loan Documents.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated and rulings issued thereunder.

149418482.2

"Collateral" shall mean all Property of the Borrower and the Estate on which Lender is granted a Lien under the Loan Documents, but specifically excluding Avoidance Actions.

"Commitment Amount" shall mean $300,000.00, comprised of the First Installment and the Second Installment.

"Confirmation Order" shall mean the Final Order entered by the Bankruptcy Court (unless the requirement of a Final Order has been waived pursuant to applicable terms and conditions), together with all extensions, modifications and amendments thereto, confirming a Reorganization Plan.

"Default" shall mean any of the events specified herein that would result in an Event of Default, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"Default Interest" shall have the meaning provided in Section 2.4(c) of this DIP Credit Agreement.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Effective Date" shall mean the date that any Reorganization Plan, which has been confirmed pursuant to a Bankruptcy Court order, becomes effective in accordance with its terms, or the occurrence of the "Effective Date" as defined in any Reorganization Plan which has been confirmed by a Bankruptcy Court order.

"Estate" shall mean the estate of Debtor that was created by the commencement of the Bankruptcy Case pursuant to Bankruptcy Code §541, and shall be deemed to include any and all privileges and incorporeal hereditaments of Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that

149418482.2

Debtor or the Estate shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code §§ 544, 545, 546, 547, 548, 549 or 550 or otherwise.

"Event of Default" shall have the meaning ascribed thereto hereinafter.

"Final DIP Order" shall mean the Final Order of the Bankruptcy Court entered after a final hearing, upon an application of the Borrower satisfactory in form and substance to the Lender in its sole discretion, under Bankruptcy Rule 4001(c), or such other procedures as approved by the Bankruptcy Court, and assuming satisfaction of the standards prescribed in section 364 of the Bankruptcy Code, together with all extensions, modifications and amendments thereto, which order shall be satisfactory in form and substance to Lender in its sole discretion, which, among other matters but not by way of limitation, (i) approves, on a final basis, the transactions contemplated in this Agreement, (ii) authorizes, on a final basis, the Borrower to enter this Agreement and obtain credit, incur indebtedness, provide Lender with the Liens to secure payment of the Obligations in accordance herewith, (iii) includes a finding that the Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e); and is in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner opposed by Lender. The Final DIP Order shall also provide that all amounts owing by the Borrower under the Loan will, at all times, be secured by a fully perfected first priority Lien on the Collateral as provided in this Agreement including Section 2.4(f), subject only to the Carve-Out.

"Final Order" means an order or judgment entered by the Bankruptcy Court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, or otherwise modified in a manner opposed by Lender, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review,

149418482.2

reargument, stay or rehearing has expired including by the Bankruptcy Court ordering that the order is not subject to a stay and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending, provided, however, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order or judgment.

"First Loan Installment" shall mean a maximum of $100,000.00.

"Interim DIP Order" shall mean an interim order of the Bankruptcy Court entered after a hearing, upon an application of the Borrower satisfactory in form and substance to the Lender in its sole discretion, under Bankruptcy Rule 4001(c), or such other procedures as approved by the Bankruptcy Court, and assuming satisfaction of the standards prescribed in section 364 of the Bankruptcy Code, together with all extensions, modifications and amendments thereto, which order shall be satisfactory in form and substance to Lender in its sole discretion, which, among other matters but not by way of limitation, (i) approves, on an interim basis, the transactions contemplated in this Agreement, (ii) authorizes, on an interim basis, the Borrower to enter this Agreement and obtain credit in the amount of the First Installment, provide Lender with the Liens to secure payment of the First Installment in accordance herewith,  (iii) includes a finding that the

Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e); and is in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner opposed by Lender.  The Interim DIP Order shall also provide that all amounts owing by the Borrower under the Loan will, at all times, be secured by a fully perfected first priority Lien on the Collateral as provided in this Agreement including Section 2.4(f), subject only to the Carve-Out.

"Initial Cash Budget" shall mean the budget attached as **Exhibit B** hereto, and as referenced in Debtor's financing motion filed with the Bankruptcy Court.

"Lender" shall have the meaning ascribed thereto in the Preamble.

"Lender Approved Reorganization Plan" shall mean a Reorganization Plan, as the same may from time to time be amended, restated,  modified or supplemented by mutual agreement of the Parties that is otherwise acceptable in form and substance to Lender in its sole and absolute discretion.

"Lender Approved Plan's Effective Date" shall mean the date a Lender Approved Reorganization Plan, which has been confirmed pursuant to the Plan Confirmation Order, becomes effective in accordance with its terms, or the occurrence of the "Effective Date" as defined in a Lender Approved Reorganization Plan which has been confirmed by the Plan Confirmation Order.

"Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation, including (a) any mortgage, deed of trust, pledge, statutory deemed trust, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement and any financing lease having substantially the

149418482.2

same economic effect as any of the foregoing and the filing of any financing statement under the Uniform Commercial Code (other than the filing of any such financing statement which states therein that such filing is a precautionary filing only and is filed in connection with "true leases" only) or comparable law of any jurisdiction), (b) any arrangement or agreement which prohibits Borrower from creating any mortgage, pledge, hypothecation, deposit arrangement, encumbrance, lien, charge or other security interest, or from entering into any agreement or arrangement described in clause (a) of this definition, or (c) the sale, assignment, pledge or transfer for security of any accounts, general intangibles or chattel paper of Borrower with or without recourse.

"Litigation" shall have the meaning ascribed thereto hereinafter.

"Loan" shall mean the loan made pursuant to this Agreement.

"Loan Documents" shall mean this Agreement, and such additional documents, instruments, and agreements as required under this Agreement and/or as may be reasonably required by the Lender to implement the terms or effectuate the purposes of this Agreement, the Final DIP Order, including, without limitation, the Note, security agreement, deed of trust, assignment of rents and all other agreements, instruments, financing statements, documents and certificates executed and delivered to, or in favor of, Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of Borrower in connection with the Agreement or the transactions contemplated hereby.  Any reference in this Agreement or any other Loan Document to a Loan Document shall include all exhibits thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to this Agreement as the same may be in effect at any and all times such reference becomes operative.

149418482.2

"Material Adverse Effect" shall mean a material adverse effect on (a) the ability of the Borrower to fully and timely perform its Obligations, or (b) the legality, validity, priority or enforceability of this Agreement, the Note or any of the other Loan Documents, or (d) the rights, remedies and benefits available to or conferred upon the Lender hereunder or thereunder.

"Maturity Date" shall mean either: (a) the date that is the fifth anniversary of the Lender Approved Plan's Effective Date; or (b) such other date agreed in writing by Lender and Borrower.

"Note" shall mean the Note issued pursuant to this Agreement.

"Obligations" shall mean the unpaid principal of and interest (including, without limitation, interest accruing after the maturity of the Loan) on the Note and pursuant to this Agreement.

"Other Loan Related Claims" shall mean any reimbursement obligations, commitment or other fees, indemnities, costs, expenses or other claims to which the Lender is entitled under this Agreement, Note or any other Loan Documents.

"Organizational Documents" means, with respect to any Person (other than an individual), such Person's Articles (Certificate) of Incorporation, operating agreement or equivalent formation documents, and regulations (bylaws), or equivalent governing documents, and any amendments to any of the foregoing.

"Orders" means the Final DIP Order and any Final Order.

"Plan Confirmation Order" shall mean the Final Order entered by the Bankruptcy Court (unless Lender waives the requirement of a Final Order), satisfactory in form and substance to Lender, together with all extensions, modifications and amendments thereto confirming a Lender Approved Reorganization Plan.

149418482.2

"Person" shall mean an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Petition Date" shall have the meaning ascribed thereto in the Recitals.

"Pre-Petition" means anytime or date prior to the Petition Date.

"Professional" shall mean any Person or Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fees" shall mean all reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

"Professional Fee Claims" shall mean any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code or as otherwise provided in a Reorganization Plan.

"Property" shall mean all assets and properties of any kind and nature of the Borrower and the Estate, including without limitation, equity security interests, real property and personal property, all deposit accounts and securities accounts, cash, accounts receivable, chattel paper, inventory, equipment, rolling stock, general intangibles, but specifically excluding Avoidance Actions.

"Reorganized Debtor" shall mean on or after the Effective Date, the Debtor, as reorganized debtor.

149418482.2

"Reorganization Plan" shall mean a plan of reorganization or liquidation filed by the Debtor in the Bankruptcy Case.

"Requirement of Law" as to any Person shall mean the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Second Loan Installment" shall mean a maximum of $200,000.00.

"Subchapter V Trustee" shall mean Mr. Brian Shapiro.

"Subchapter V Trustee Fees" shall mean all fees payable to the Subchapter V Trustee.

"Subsidiary" or "Subsidiaries" of a Person shall mean a corporation, partnership or other entity of which shares of stock or other ownership interests having ordinary voting power (other than stock or such other ownership interests having such power only by reason of the occurrence of a contingency) to elect a majority of the board of directors or other managers of such corporation, partnership or other entity are at the time owned, or the management of which is otherwise controlled, directly or indirectly through one or more intermediaries, or both, by such Person. Unless otherwise indicated, all references to Subsidiaries are to the Subsidiaries of Borrower.

"Termination Date" shall mean the earliest of (a) the Maturity Date, and (b) the acceleration of the Loan in accordance with the terms hereof.

"US Trustee" shall mean the United States Trustee for the District of Nevada.

149418482.2

**1.2    Other Definitional Provisions.**

(a)    Unless otherwise specified therein, all terms defined in this Agreement shall have their respective defined meanings when used in the Note or other document made or delivered pursuant hereto.

(b)    As used herein, in the Note or any other Loan Document made or delivered pursuant to this Agreement, accounting terms relating to Borrower and accounting terms partly defined in Section 1.1, to the extent not defined, shall have the respective meanings given to them under normal and customary use.

(c)    The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole, including all exhibits, as the same may from time to time be amended, restated, modified or supplemented, and not to any particular section, subsection or clause contained in this Agreement or any such exhibit.  The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(d)    Unless the context otherwise requires, each reference herein to any agreement, document or instrument (including the Loan Documents) shall be deemed a reference to such agreement, document or instrument as amended, restated, supplemented or otherwise modified from time to time.

(e)    The term "includes" and "including" shall not be construed to imply any limitation.

(f)    In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding."  Periods of days referred to in this Agreement shall be counted in calendar days unless Business Days are expressly prescribed.  Any period determined hereunder by reference to a month or months or year or years shall end on the day in the relevant calendar

149418482.2

month in the relevant year, if applicable, immediately preceding the date numerically corresponding to the first day of such period, provided that if such period commences on the last day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month during which such period is to end), such period shall, unless otherwise expressly required by the other provisions of this Agreement, end on the last day of the calendar month.

**1.3     Payment Terms; References to Money.**

Except as expressly set forth herein to the contrary, (a) all payments made by the Borrower shall be made in Dollars in respect of principal and interest on the Loan, and (b) to the extent not otherwise indicated, all amounts of money referenced herein shall mean and be references to amounts of money denominated in Dollars.

**ARTICLE II.**

**AMOUNT AND TERMS OF LOAN**

**2.1     Loan in Two Installments.**

The Loan shall be made by the Lender to the Borrower in two installments.  The First Installment shall be made upon entry of the Interim Order; the Second Installment shall be made upon entry of the Final Order.

**2.2     Note.**

The Loan shall be evidenced by a promissory note issued by the Borrower made payable to the order of Lender substantially in the form of **Exhibit A** (the "Note").  The Note shall (i) be dated as of its date of issuance, (ii) be stated to mature on the Maturity Date or such earlier date the Loan shall be due and payable in full, whether by acceleration or otherwise, pursuant to the terms of this Agreement and (iii) provide for the payment of all principal, accrued interest and any Other Loan Related Claims.

**2.3    Procedure for Payment.**

Except as otherwise provided in this Agreement, including in Section 2.9, the Loan (including all interest and Other Loan Related Claims, capitalized and added to the principal balance of the Loan) shall be paid in full on or prior to the Termination Date, pursuant to the terms herein.

**2.4    Interest Rates, Commitment Fee, Payment Date and Priority/Security.**

(a)    The Loan (and all amounts capitalized and added to the principal balance of the Loan) shall bear interest at a rate per annum of 10 percent (10%).

(b)    There shall be no commitment fee for the Loan provided under this Agreement.

(c)    Notwithstanding the foregoing, in the event any Event of Default has occurred and is continuing, the Loan shall bear interest at a rate per annum of twelve percent (12%) ("Default Interest") from the date of occurrence of such Event of Default until the date such Event of Default is cured or waived (after as well as before and after judgment).

(d)    Except as otherwise provided in this Agreement and other Loan Documents, accrued interest is due and payable on the Maturity Date. Accrued interest on the Loan not paid on the Interest Payment Date will be capitalized and added to the outstanding principal balance of the Loan as of each Interest Payment Date.

(e)    Other Loan Related Claims will be capitalized and added to the outstanding principal balance of the Loan as of the date such Other Loan Related Claims becomes due.

(f)    As shall be ordered by the Bankruptcy Court in the Final DIP Order, pursuant to Bankruptcy Code § 364(c)(2), the Loan shall be secured by valid and duly perfected first priority Liens on all Property, subject and subordinate only to the Carve-Out.

149418482.2

**2.5     Computation of Interest.**

(a)     Interest shall be calculated for the actual number of days elapsed on the basis of a hypothetical year of 365 days, compounded monthly.

(b)     Each determination of an interest rate pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower and the Lender in the absence of manifest error. Any payment of interest on the Loan shall be subject to any applicable withholding taxes and any amount withheld shall be treated as having been paid by the Borrower to the Lender.

**2.6     Prepayments.**

(a)     Optional Prepayment.  Borrower may, at any time and from time to time prepay the Loan, in whole or in part, without premium or penalty, upon irrevocable written notice to the Lender by 11:00 a.m. (Nevada time) on such date of prepayment, in each case specifying the date and amount of prepayment.  If any such notice is given, the amount specified in such notice shall be due and payable on the date specified therein, together with any amounts payable, accrued interest to such date on the amount prepaid and any outstanding fees and expenses then due and owing.  Any prepayment shall be applied in the following order of priority (a) first, to the payment of all Other Loan Related Claims due and payable to the Lender on such date under and in respect of the Loan; and (b) second, to the payment of the outstanding principal amount of the Note that is due and payable to the Lender on such date, together with all accrued and unpaid interest thereon.

**2.7     Use of Proceeds.**

The Borrower shall utilize the proceeds of the Loan solely to pay general and administrative disbursements (as referred to in the Initial Cash Budget) including, without limitation, Professional Fees, all consistent with the Final DIP Order and the Initial Cash Budget attached as **Exhibit B**.  Borrower shall not be permitted to use the proceeds of the Loan: (i) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation

149418482.2

of any type adverse to the interests of Lender or its rights and remedies under this Agreement, the other Loan Documents, or the Final DIP Order, (ii) to finance the payment of, or application for authority to pay, any Prepetition Claim, without the Lender's prior written consent, and (iii) to make any payment in settlement of any Claim, action or proceeding, before any court, arbitrator or other governmental body.

**2.8    Payment of Obligations.**

Except as otherwise provided in this Agreement, upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

**2.9    No Discharge; Survival of Claims.**

Borrower agrees that, except as otherwise provided in this Agreement, to the extent the Obligations hereunder are not satisfied in full, such Obligations shall not be discharged by the entry of an order confirming a Reorganization Plan (and the Borrower, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge and this Section 2.9 shall be deemed to be a written waiver pursuant to Section 1141(d)(4) of the Bankruptcy Code).

**ARTICLE III.**

**REPRESENTATIONS AND WARRANTIES**

To induce Lender to make the Loan, Borrower hereby makes the following representations and warranties to Lender with respect to Borrower, as of the date of the entry of Final DIP Order, which shall survive the execution and delivery of this Agreement:

**3.1    Corporate Existence; Compliance with Law.**

Borrower (a) is duly organized, validly existing and in good standing under the laws of Nevada; (b) is duly qualified and authorized to do business as a foreign corporation and is in good

149418482.2

standing under the laws of each jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect; (c) subject to the entry of the Final DIP Order by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to effect the transactions contemplated hereby and by the other Loan Documents to which they are parties; (d) subject to the entry of the Final DIP Order by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates and to conduct its business as now, heretofore and proposed to be conducted; and (e) is in compliance with all Requirements of Law except to the extent that the failure to comply therewith could not reasonably be expected to have a Material Adverse Effect.

**3.2** **Corporate Power, Authorization, Enforceable Obligations.**

Upon, and subject to, entry of the Final DIP Order, (a) Borrower has the corporate power and authority, and the legal right, to make, deliver and perform the Loan Documents to which it is a party and to authorize the execution, delivery and performance of the Loan Documents to which it is a party, (b) Borrower has the appropriate power and authority to borrow hereunder and has taken all necessary corporate actions to authorize the borrowings on the terms and conditions set forth in this Agreement and in the Note, (c) the Agreement, and each other Loan Document to which it is a party will be duly executed and delivered on behalf of Borrower, and (d) this Agreement, and each other Loan Document to which Borrower is a party, when executed and delivered, will constitute, a legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, (whether enforcement is sought by proceedings in equity or at law).

149418482.2

### 3.3     No Legal Bar.

Borrower hereby represents and warrants that except for the effect of the filing of the Bankruptcy Case, and subject to the entry of the Final DIP Order, the execution, delivery and performance of the Loan Documents to which Borrower is a party, the borrowings by Borrower hereunder and the use of the proceeds of the Loan (a) will not violate any Requirement of Law or material contractual obligation of Borrower, (b) will not accelerate or result in the acceleration of any payment obligations of Borrower, and (c) will not result in, or require, the creation or imposition of any Lien on any of the respective properties or revenues of the Borrower pursuant to any such Requirement of Law or material contractual obligation.

### 3.4     Purpose of Loan.

The Borrower shall not use the proceeds of the Loan hereunder other than in accordance with this Agreement.

### 3.5     Accuracy and Completeness of Information.

All information, reports and other papers and data with respect to the Borrower (other than projections) furnished to the Lender by or on behalf of Borrower, were, at the time furnished, complete and correct in all material respects, or have been subsequently supplemented by other information, reports or other papers or data, to the extent necessary to give the Lender a true and accurate knowledge of the subject matter in all material respects other than as set forth in this Agreement, there is no fact known to Borrower which has, or could reasonably be expected to have, a Material Adverse Effect.

### 3.6     The Required Orders.

Borrower hereby represents and warrants that on or prior to the date of the making of the Loan hereunder, the Final DIP Order shall have been entered and shall not have been stayed, amended (without the Lender's prior written consent), vacated, reversed, rescinded or otherwise

149418482.2

modified in any respect. Furthermore, Borrower hereby agrees and acknowledges that, except as otherwise provided in this Agreement, upon the maturity (whether by the acceleration or otherwise) of any of the Obligations of the Borrower hereunder and under the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations, and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

**3.7    Reorganization Matters.**

(a)    The Bankruptcy Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof and the proper notice for the hearing for the approval of the Final DIP Order has been or will be given.

(b)    The Final DIP Order is or will be in full force and effect and has not been reversed, stayed, modified or amended.

(c)    Notwithstanding the provisions of Section 362 of the Bankruptcy Code, Borrower hereby agrees and acknowledges, upon the maturity (whether by acceleration or otherwise) of any of the Obligations, except as otherwise provided in this Agreement Lender shall be entitled to immediate payment of such Obligations and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

**3.8    Title to Assets.**

Borrower has good title to and ownership of the Property, which property is free and clear of all Liens.

**3.9    No Material Adverse Effect.**

There exists no present condition or state of facts or circumstances that would have a Material Adverse Effect.

149418482.2

**3.10    Consents or Approvals.**

Except for the entry of the Orders, no consent, approval or authorization of, or filing, registration or qualification with, any other Person is required to be obtained or completed by Borrower in connection with the execution, delivery or performance of any of the Loan Documents, that has not already been obtained or completed.

**3.11    Accurate and Complete Statements.**

The Loan Documents and the written statements made by Borrower in connection with any of the Loan Documents do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein or in the Loan Documents not misleading.  After due inquiry by Borrower, there is no known fact that Borrower has not disclosed to Lender that has or is likely to have a Material Adverse Effect.

**ARTICLE IV.**

**CONDITIONS PRECEDENT**

**4.1    Loan Conditioned Upon Entry of the Final DIP Order.**

The obligations of the Lender to make the Loan on and after the Closing Date, or to take, fulfill, or perform any other action hereunder is subject to the satisfaction of the following conditions precedent:

(a)    Bankruptcy Court Orders.  The Final DIP Order shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not have been stayed, reversed, vacated or rescinded or, without the written consent of the Lender, conditioned  or delayed, modified or amended in any respect not acceptable to Lender and, if the order is the subject of a pending appeal in any respect, neither the making of such Loan nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

149418482.2

(b)　　Loan Documents.  The Lender shall have received this Agreement, the Note and all other Loan Documents, each other agreement, documents and instruments relating to the Loan and other credit transactions contemplated by this Agreement, each duly executed where appropriate and in form and substance satisfactory to the Lender in its sole discretion.

(c)　　No Material Adverse Effect.  No Material Adverse Effect shall have occurred with respect to Borrower between the Petition Date and the date of making the Loan, other than those which customarily occur as a result of the pendency of the Bankruptcy Case.

(d)　　Litigation.  No litigation, action, suit, or proceeding, shall have been commenced or be pending which has not been stayed by the commencement of the Bankruptcy Case and which, if successful, would have a Material Adverse Effect on Borrower, its ability to repay the Loan or which would challenge this Agreement, the Final DIP Order or the transactions contemplated thereby.

(e)　　No Default.  No Default or Event of Default shall then exist or exist immediately after the making of a Loan.

(f)　　Representations.  Each of the representations and warranties contained in Article III hereof shall be true in all material respects as if made on and as of the date of the Loan, at all times prior to the Closing Date, and as of the Closing Date, except to the extent that any representation or warranty expressly relate to an earlier date, or to the extent the facts and circumstances existing at the time of the Loan cause such representation or warranty unable to be true.

(g)　　Cash Budget.  Borrower shall have prepared and delivered to Lender the Initial Cash Budget and Lender shall have approved the Initial Cash Budget and any modifications thereof, in its sole and absolute discretion.

149418482.2

(h)     Approval of Uses of Funds.  Borrower shall have prepared and delivered to Lender a schedule of the uses of the proceeds of the Loan together with invoices or other evidence of the uses of such proceeds, and Lender shall have approved such schedule and support documents in its sole and absolute discretion; provided, however, that Lender will not unreasonably withhold its approval from any use of the proceeds of the Loan that is included in the Initial Budget or any subsequent budget approved by Lender in writing or which use was previously approved by Lender in writing.

(i)     Certificate.  Borrower shall have delivered to Lender an officer's certificate certifying that, as of the Closing Date: (i) all conditions precedent set forth in this Article IV have been satisfied; and (ii) no Default or Event of Default exists nor immediately after the Loan will exist.

**ARTICLE V.**

**NEGATIVE COVENANTS**

**5.1     Negative Covenants.**

From the date hereof and for so long as this Agreement remains in effect, the Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower hereby agrees that it will not without the written consent of the Lender:

(a)     Filings.  Seek Bankruptcy Court authority to: propose, file, solicit votes for, support, consent to or prosecute : (i) a Reorganization Plan for the Borrower that is not a Lender Approved Reorganization Plan or otherwise acceptable to Lender, in form and substance or (ii) any motion, pleading, or other document with the Bankruptcy Court seeking relief that is inconsistent with the Lender Approved Reorganization Plan;

(b)     Indebtedness.  The Borrower shall not create, incur or assume any indebtedness other than customary trade payables incurred in the ordinary course of the Borrower's business;

149418482.2

(c)      Liens.  Except as allowed as a Permitted Lien, the Borrower shall not create or permit to exist any lien affecting, or otherwise encumbering, any of the assets of Borrower.

(d)      Transfers.  Sell, transfer or otherwise alienate any of the assets of the Borrower other than in the ordinary course of the Borrower's business.

(e)      Operations.  Engage in any business activities substantially different than those in which the Borrower is presently contemplating to be engaged in or cease operations, liquidate, merge or consolidate with any other entity or dissolve.

(f)      Other Agreements.  Enter into any agreement containing any provision that would be violated or breached by the performance of its obligations hereunder or under any instrument or document delivered or to be delivered by it hereunder or in connection herewith.

(g)      Distributions.  The Borrower shall not make any distributions to its equity interest holders.  For purposes of this provision, the term "distribution" includes (i) all cash distributions paid to the equity interest holders of the Borrower; and (ii) the value of all non-cash distributions made to the equity interest holders of the Borrower;

(h)      Loan, Acquisitions and Guaranties.  Loan, invest in or advance money to any other Person other than in the ordinary course of business;

(i)      Change of Control.  Effect a Change of Control except as provided in the Lender Approved Reorganization Plan; or

(j)      Affiliate Transactions.  Sell, lease, lend, assign or otherwise transfer any material amount of its properties or assets (or any interests therein) to, or purchase, lease, or otherwise acquire any material amount of properties or assets from, any of its Affiliates.

149418482.2

## ARTICLE VI.

## AFFIRMATIVE COVENANTS

From the date hereof and for so long as the Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower shall perform or be subject to the following:

**6.1    Monthly Operating Reports.**

Borrower shall provide Lender with a copy of the Monthly Operating Reports prepared by Borrower and filed with the Bankruptcy Court in accordance with US Trustee guidelines, contemporaneously with such reports filing with the Bankruptcy Court.

**6.2    Other US Trustee Reports.**

Borrower shall provide Lender with a copy of the any other reports or information mandated or requested by the U.S. Trustee in accordance with US Trustee guidelines, contemporaneously with the Borrower providing such reports to the US Trustee.

**6.3    Other Requirements.**

Borrower will:

(a)    deliver to the Lender all financial statements and other reporting reasonably requested by the Lender showing actual financial performance compared to the Initial Cash Budget;

(b)    promptly provide written notice to the Lender of the receipt of any notice of

(i)    the commencement of any material litigation against or involving the Borrower (including any insolvency, administration, liquidation, or similar proceeding relating to the Borrower) other than with respect to proceedings brought in the Bankruptcy Case or in any adversary proceeding related to the Bankruptcy Case,

(ii)    termination of or default under any material contract, and

149418482.2

(iii)    noncompliance with any rule, statute, law, permit or license that could reasonably be expected to have a Material Adverse Effect;

(c)    maintain adequate insurance; and

(d)    provide the Lender, and its advisors, with reasonable access to all of the Borrower's books and records, facilities employees and, contractors  and offices for the purposes of reviewing the business operations and assets of the Borrower.

**6.4    Borrower and Lender Covenant Regarding Lender Approved Reorganization Plan.**

Lender and Borrower shall both act with diligence and in good faith to prepare and seek confirmation of a Lender Approved Reorganization Plan consistent with the Term Sheet previously executed by Lender and Borrower.

**6.5    Additional Reports.**

Borrower will maintain and provide the Lender with weekly historical cashflow performance, any revisions to the Initial Cashflow Budget, including any changes in the forecasted periods.

**ARTICLE VII.**

**TERMINATION**

**7.1    Termination.**

Except as otherwise provided in the Loan Documents:

(a)    The Loan and all other Obligations shall be automatically due and payable in full on the Termination Date.

(b)    Borrower shall pay the entire Obligations owing to the Lender under this Agreement and other Loan Documents, on the Effective Date of any confirmed Reorganization Plan that is not a Lender Approved Reorganization Plan in cash (immediately available funds).

149418482.2

(c)     In the event that a Reorganization Plan is not confirmed and/or the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code, or dismissed, then the entire Obligations owing to Lender under this Agreement and other Loan Documents shall be fully paid to Lender in cash (immediately available funds) upon the entry of any order (i) converting either Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code or (ii) dismissing the Bankruptcy Case.

**7.2     Survival of Obligations Upon Termination of Financing Arrangements.**

Except as otherwise expressly provided for in the Loan Documents, no termination or cancellation (regardless of cause or procedure) of any financing arrangement under this Agreement shall in any way affect or impair the obligations, duties and liabilities of the Borrower or the rights of Lender relating to any unpaid portion of the Loan or any other Obligations, due or not due, liquidated, contingent or unliquidated or any transaction or event occurring prior to such termination, or any transaction or event, the performance of which is required after the Termination Date.   Except as otherwise expressly provided herein or in any other Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Borrower, and all rights of Lender, all as contained in the Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect after the Termination Date.

## ARTICLE VIII.

## EVENTS OF DEFAULT; RIGHTS AND REMEDIES

**8.1     Events of Default.**

Notwithstanding the provisions of section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court or any notice to Borrower, and subject to Section

149418482.2

8.2, the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

(a)    (i)    Borrower shall fail to pay any principal of the Note when due in accordance with the terms thereof or hereof, (ii) Borrower shall fail to pay interest on the Note, any other Obligation or any other amount payable hereunder, within three (3) Business Days after any such interest or other amount becomes due in accordance with the terms thereof or hereof, or (iii) Borrower shall fail to perform any of the terms and provisions of this Agreement or of any other Loan Document; or (iv) any representation, warranty or statement made in or pursuant to this Agreement or any other Loan Document or any other material information furnished by Borrower to Lender shall not be true, correct, or complete, in all material respects; or

(b)    Proceeds of the Loan made hereunder are used to make a payment that is not in strict compliance with this Agreement, including in accordance with any use of proceeds approved by Lender, unless agreed to in writing by the Lender (provided, that it shall not be an Event of Default if the use of proceeds in violation of this Section 8.1(b) is, in the aggregate, less than ten thousand dollars ($10,000)); or

(c)    The occurrence of any additional "Event of Default" identified in any of the Loan Documents,  or the Final DIP Order not identified herein; or

(d)    The occurrence of any of the following in the Bankruptcy Case:

(i)    the dismissal of the Bankruptcy Case, or the conversion of the Bankruptcy Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code, or Borrower shall file a motion or other pleading seeking the dismissal of its Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise;

149418482.2

(ii)     the appointment of a trustee (other than a subchapter V trustee) in the Bankruptcy Case or the appointment of an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Borrower under Bankruptcy Code section 1106(b);

(iii)     the entry of an order of competent jurisdiction (1) reversing, staying, vacating or rescinding the Final DIP Order or either order otherwise ceases to be in full force and effect or (2) materially amending, supplementing or otherwise modifying the Final DIP Order without the written consent of the Lender;

(iv)     Borrower materially violates or breaches the Final DIP Order or files any pleadings seeking, joining in, or otherwise consenting to any material violation or breach of the Final DIP Order;

(v)     the entry of an order in the Bankruptcy Case granting any other Lien equal or superior to that granted to the Lender on the Collateral;

(vi)     the entry of an order in the Bankruptcy Case avoiding or requiring repayment or return of any portion of the payments made on account of the Obligations owing under this Agreement;

(vii)     the entry of an order in the Bankruptcy Case confirming a Reorganization Plan(s) that is not a Lender Approved Reorganization Plan;

(viii)     the entry of an order in the Bankruptcy Case granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code to permit one or more creditors to execute upon, enforce or perfect a Lien on the Collateral;

149418482.2

(ix)    the entry of an order in the Bankruptcy Case authorizing the sale or other disposition of all or substantially all of the assets of the Borrower to a party other than Lender under Section 363 of the Bankruptcy Code;

(x)    the payment by Borrower of, or application by Borrower for authority to pay, any prepetition Claim other than pursuant to a Lender Approved Reorganization Plan, without the Lender's prior written consent, or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement.

**8.2    Remedies.**

Upon the occurrence and during the continuance of an Event of Default, and without further order of or application to the Bankruptcy Court, the Lender shall, by three (3) Business Days' prior written notice to the Borrower (with a copy to the US Trustee and the Subchapter V Trustee), take one or more of the following actions, at the same or different times:

(i)    declare the Loan or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loan together with accrued interest thereon and any Other Loan Related Claims and all other liabilities of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; and

(ii)    take any other action or exercise any and all other rights or remedies under the Loan Documents, and under applicable law available to the Lender.  For purposes of the Lender's exercise of any and all of its remedial rights upon the occurrence and during the continuation of an Event of Default, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be automatically vacated and modified following three (3) Business Days' prior written notice to Borrower, US Trustee, and the Subchapter V Trustee; provided that Lender

149418482.2

consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall remain in effect pending such a hearing if requested by Debtor prior to the expiration of the stay notice period.

## ARTICLE IX.

## MISCELLANEOUS

**9.1    Amendments and Waivers.**

Neither this Agreement, nor the Note or any other Loan Document, nor any terms hereof or thereof may be amended, restated, supplemented or modified except in writing signed by each of the Parties hereto

**9.2    No Waiver; Cumulative Remedies.**

No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

**9.3    Survival of Representations and Warranties.**

All representations and warranties made hereunder, in the other Loan Documents and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Note and the making of the Loan hereunder.

149418482.2

**9.4    Successors and Assigns; Participations and Assignments.**

(a)    This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case, or upon conversion of this case to a case under Chapter 7, a trustee appointed or elected therein.

**9.5    Counterparts.**

This Agreement may be executed by one or more of the Parties on any number of separate counterparts (including by telecopy or email), and all said counterparts taken together shall be deemed to constitute one and the same instrument.  A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Lender.

**9.6    Severability.**

Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**9.7    Governing Law.**

THIS AGREEMENT AND THE NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEVADA.

149418482.2

Submission To Jurisdiction; Waivers. Borrower and Lender hereby irrevocably and unconditionally: (a) submit for themselves and their property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the jurisdiction of the Bankruptcy Court; (b) consent that any such action or proceeding may be brought in the Bankruptcy Court and waive any objection that they may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same; (c) agree that nothing contained herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and (d) waive, to the maximum extent not prohibited by law, any right they may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

**9.8     No Waiver.**

No failure on the part of Lender to exercise, and no delay in exercising, any right, power or remedy hereunder or any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

**9.9     Notices.**

All notices, requests, demands and other communications provided for hereunder shall be in writing (including email), mailed or delivered to the recipient party, addressed to the address of the applicable party specified on the signature pages of this Agreement, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All notices, statements, requests, demands and other communications provided for hereunder shall be

149418482.2

deemed to be given or made when hand delivered, delivered by overnight courier or two (2) Business Days after being deposited in the mails with postage prepaid by registered or certified mail, addressed as aforesaid.  Notice sent via email shall be deemed to have been received when sent by the sending party with confirmation of delivery (if delivered during a Business Day, otherwise the following Business Day).

**9.10     Sole Discretion of Lender.**

Unless otherwise provided in this Agreement, whenever the consent or approval of Lender is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and the decision of Lender shall be final and conclusive.

**9.11     Costs and Expenses.**

In the event of an action or other proceeding to enforce any rights arising under this Agreement, the party prevailing in such action or proceeding shall be paid all reasonable costs and attorneys' fees by the other party.  For purposes of this Agreement, "prevailing party" means the party that prevails (whether affirmatively or by means of a successful defense) with respect to claims having the greatest value of importance as reasonably determined by the court or other tribunal determining the matter.

[SIGNATURES FOLLOW ON NEXT PAGE]

149418482.2

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

**BORROWER**:

BLITZ NV, LLC

By: _____ *Jason Verona*

Name:  Jason Verona

Title:  COO

**LENDER**:

INTERNATIONAL INVESTMENTS, LTD.

By: _____ *Greg Gilpin-Payne*

Name:  Greg Gilpin-Payne

Title:  Director

149418482.2

**EXHIBIT A**

## CREDIT NOTE

<u>$300,000.00</u>                                                                  September 18, 2023

FOR VALUE RECEIVED, the undersigned, **BLITZ NV LLC,** a Nevada limited-liability company (the "Borrower"), promises to pay to the order of **INTERNATIONAL INVESTMENTS, LTD.**, company registered in St. Kitts (the "Lender"), on the Maturity Date, if not sooner paid, the principal sum of **300 HUNDRED THOUSAND DOLLARS** ($300,000.00) pursuant to the terms of that certain Debtor-in-Possession Credit Agreement between the Borrower and the Lender dated as of September __, 2023, as such agreement may be amended, modified or supplemented from time to time (the "Loan Agreement"). The Borrower further promises to pay to the order of the Lender interest on the unpaid principal amount of this Note from time to time outstanding at the rate or rates per annum determined or as otherwise provided in, the Loan Agreement, and with such amounts being payable on the dates set forth in the Loan Agreement.

All payments and prepayments to be made in respect of principal, interest or other amounts due from the Borrower under this Note shall be payable at 12:00 noon Las Vegas time, on the day when due. The Borrower expressly waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, and an action for any amounts due and unpaid shall therefore accrue immediately.

This Note is the "Note" referred to in, and is entitled to the benefits of, the Loan Agreement. This Note is secured by, and is entitled to the benefits of, certain other Loan Documents, as each of them may be amended, modified or supplemented from time to time. Capitalized terms used in this Note that are defined in the Loan Agreement have the meanings assigned to them in the Loan Agreement unless otherwise expressly defined in this Note.

This Note is governed by, and will be construed and enforced in accordance with, the laws of the State of Nevada. The Borrower consents to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the District of Nevada located in Las Vegas, Nevada with respect to any suit arising out of, relating to, or mentioning this Note.

IN WITNESS WHEREOF, and intending to be legally bound, the Borrower has executed, issued and delivered this Note as of September 18, 2023.

**BORROWER**:

BLITZ NV, LLC

By: _Jason Verona_____
Name: Jason Verona
Title: COO

149418482.2

**EXHIBIT B**

[Initial Cash Budget]

149418482.2

# BLITZ PROJECTED CASH FLOW - 13 WEEKS

Case 23-13871-nmc   Doc 42   Entered 10/03/23 18:10:01   Page 43 of 43

| Vendor | Description | September 24 days | October 31 days | November 30 days | December 6 days | Total | Notes |
|---|---|---|---|---|---|---|---|
| Promotional Income | | $ 3,437.00 | $ 4,296.00 | $ 4,296.00 | $ 859.00 | $ 12,888.00 | |
| | **Total Income** | **$ 3,437.00** | **$ 4,296.00** | **$ 4,296.00** | **$ 859.00** | **$ 12,888.00** | |
| Subchapter V trustee fees | | | | | $ 10,000.00 | $ 10,000.00 | |
| Legal | Bankruptcy Legal Fees & Costs | | $ 20,000.00 | $ 20,000.00 | | $ 40,000.00 | |
| Salient Consulting | Security | $ 8,129.04 | $ 10,500.01 | $ 10,161.30 | $ 2,032.26 | $ 30,822.61 | |
| Mountain Pine Landscape Services | Landscape maintenance | $ - | $ 3,250.00 | $ 3,250.00 | $ 3,250.00 | $ 9,750.00 | September paid in full; Decemeber will need to be paid in full |
| United Healthcare | Employee vision/dental coverage | $ 333.52 | $ 333.52 | $ 333.52 | $ 333.52 | $ 1,334.08 | have to pay one month in advance of when coverage begins |
| Sierra Healthcare | Employees health coverage | $ 3,455.71 | $ 3,455.71 | $ 3,455.71 | $ 3,455.71 | $ 13,822.84 | have to pay one month in advance of when coverage begins |
| Paychex payrolls | Employees bi-weekly payroll | $ 22,500.00 | $ 45,000.00 | $ 67,500.00 | $ - | $ 135,000.00 | 6 payrolls |
| | **Total Expenses** | **$ 34,418.27** | **$ 82,539.24** | **$ 104,700.53** | **$ 19,071.49** | **$ 240,729.53** | |
| | **Cash Deficit** | **$ (30,981.27)** | **$ (78,243.24)** | **$ (100,404.53)** | **$ (18,212.49)** | **$ (227,841.53)** | |
| | DIP Funding | | $ 100,000.00 | $ 200,000.00 | | $ 300,000.00 | |
| | **Cumulative Cash Position** | **(30,981.27)** | **(9,224.51)** | **90,370.96** | **72,158.47** | **72,158.47** | |