BRIAN D. SHAPIRO, TRUSTEE
510 S. 8th Street
Las Vegas, Nevada 89101
Phone: (702) 386-8600
brian@trusteeshapiro.com
+
*Brian D. Shapiro, Chapter 7 Trustee*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>BLITZ NV, LLC,<br><br>                Debtor. | Case No. 23-13871-nmc<br>Chapter 7<br><br><br>Hearing Date:  May 20, 2025<br>Hearing Time: 2:00 p.m. |

### MOTION TO SELL DEBTOR'S ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND GRANTING BID PROTECTIONS

Brian D. Shapiro ("Trustee"), the Chapter 7 trustee for the estate of Blitz NV, LLC (the "Debtor") hereby submits this motion (the "Motion") pursuant to Sections[1] 105(a) and 363, Bankruptcy Rules 1015, 2002, 6004, 9007, and 9014, and Local Rule 6004.  Through the Motion, the Trustee seeks to sell all of Debtor's non-cash assets to Ignite International, Ltd., a Wyoming corporation, or its assignee ("Ignite") on an "as-is," "where-as" basis for $600,000 in accordance with the terms of the Purchase and Sale Agreement (the "PSA")[2] attached hereto as **Exhibit 1,** free and clear of all liens, claims, and encumbrances.

This Motion is based on the Memorandum of Points and Authorities below; the pleadings and papers on file in this case; the Declaration of Brian D. Shapiro ("Shapiro Decl.") filed herewith; the attached exhibits; and any oral arguments made at hearing.

---

[1] All Chapter and Section references are to Title 11 of the U.S. Code (the "Bankruptcy Code"), Bankruptcy Rule references are to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and references to Local Rule references are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

[2] All capitalized, undefined terms shall have the meanings ascribed in the PSA.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.  BACKGROUND FACTS

**A.     The Property Being.**

1.      On September 6, 2023 (the "Petition Date"), Debtor filed for bankruptcy protection under Chapter 11, Subchapter V of the Bankruptcy Code, thereby commencing case no. 23-13871-nmc (the "Bankruptcy Case," and the bankruptcy estate in the Bankruptcy Case, the "Estate").

2.      On December 19, 2023, the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code and on December 21, 2023, the Trustee was appointed as the Chapter 7 trustee in the Bankruptcy Case.  ECF Nos. 135 and 139.

3.      The Debtor's schedules filed in the Bankruptcy Case identify the following assets: (a) $34,011.65 held in four separate bank accounts; (b) office furniture and equipment; (c) the trademark for "Dan Bilzerian"; (d) internet domains (www.blitznv.com and www.danbilzerian.com); (e) royalties from the song by T-Pain titled "Dan Bilzerian"; and (f) litigation claims and counterclaims.  ECF No. 29, at Schedule A/B.

4.      The Debtor's schedules value the office furniture and equipment at $4,100 and the other non-cash assets as having an "unknown" value.  *Id.*

5.      Since his appointment, the Trustee has been investigating the Debtor's assets, including the viability of potential litigation claims.  This investigation has included, among other actions, informal discovery, discussions with Debtor's prior management and creditors, as well as conducting the 2004 examination of Daniel Bilzerian.  *See* Shapiro Decl. ¶ 3.

6.      The Trustee does not have possession of certain of the personal property described in the schedules and Debtor's former principals assert that they have no knowledge as to the location of the missing personal property and/or have acknowledged that certain of the property that had become inoperable had been disposed of prior to the Trustee's appointment.  *See id.* ¶ 4.

7.      Additionally, the Trustee's investigation has revealed that there are disputes over the extent of Debtor's interest in certain of the assets identified on Schedule A/B, as well as the

viability of the potential litigation claims held by the Estate, decreasing the value of these assets. *See id.*, ¶ 5.

8. The Debtor's Estate has a total of $26,340.03 in cash as of the submission of this Motion, thereby rendering the Estate administratively insolvent without a sale and negatively impacting the ability to pursue potential litigation claims. *See id.*, ¶ 6.

9. Accordingly, a sale of Debtor's non-cash assets is in the best interest of the Estate and its creditors. *Id.*, ¶ 7.

**B.    Proposed Sale.**

10. In late 2024, Ignite expressed an interest in purchasing Debtor's assets, subject to completing due diligence. Negotiations ensued over several months, which culminated in the PSA providing for Ignite's purchase of the non-cash assets for $600,000 "as is," "where as," subject to the terms of the PSA. *See id.*, ¶ 8.

11. The PSA provides for the sale of all of Debtor's assets "as-is," "where-as" in Sections 2.1, 2.2, and 5.1(b) of the PSA, which provide as follows:

**Section 2.1    Sale and Purchase.** Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing, Seller agrees to sell, assign, transfer, convey and deliver to Ignite, and Ignite agrees to purchase from Seller, all of Debtor and the Estate's right, title, interest and benefit in and to any and all of the assets, properties, interests and rights, real and personal, tangible and intangible, including without limitation the assets identified in subparagraphs (a) through (d) of this Section 2.1 (the "**Property**"), and solely excluding the property specifically identified in Section 2.2 (the "**Excluded Property**"):

(a)    all tangible personal property, including without limitation all office furniture, equipment, deposits, prepaid expenses, and refunds;

(b)    all rights in and to the trademarks, trade names, service marks, copyrights, domain names, royalties, goodwill, computer software, jingles, slogans, logos, Facebook, Instagram, TikTok and other social media accounts, and all general intangibles and all records related thereto, including without limitation the trademark for "Dan Bilzerian," internet domains www.blitznv.com and www.danblizerian.com, and royalties from the song by T-Pain titled "Dan Bilzerian";

(c)    all and every manner of claims, counterclaims, acts and actions, demands, cause and causes of action, at law, in equity or otherwise, whether known or unknown, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, including without limitation: (i) all fraudulent transfer and other claims against Bilzerian Entertainment, LLC, a California corporation; Goat Airways, LLC, a California corporation; and Uninclusive Agency, LLC; (ii) all claims against any entity owned, managed, or controlled by Dan Bilzerian or any of his Affiliates or Insiders; and (iii) all claims against any entity owned, managed, or controlled by Ignite or any of its Affiliates

or Insiders; and

(d)     all rights in and to all the files, documents, records, and books of account (or copies thereof) relating to the Property.

**Section 2.2     Excluded Property.**  The property that constitutes "Excluded Property" is Debtor's right, title, interest and benefit in and to the sum of Twenty-Six Thousand Three Hundred Forty and 03/100 Dollars ($26,340.03).

***

**[Section 5.1(b)]    As-Is, Where-As.**  Seller makes no representations or warranties with respect to the title, condition or completeness of the Property.  The Property is being sold on an "as is," "where is" and "with all faults" basis without representation or warranty of any kind, either express or implied, including, but not limited to, any warranties as to title, merchantability, fitness or usability.  Except for the express representations and warranties contained herein, Seller makes no other express or implied representation or warranty with respect to the Property.

12.     The following table sets forth a summary of the material terms and conditions the PSA and addresses the disclosures required by Local Rule 6004:[3]

| Term (Agreement Citation) | Detail |
|---|---|
| Seller | Trustee for the Debtor's Bankruptcy Estate |
| Stalking Horse Purchaser | Ignite International, Ltd., a Wyoming corporation, or its assignee |
| Purchased Assets<br><br>Sections 2.1, 2.2, and 5.1(b) of the PSA | All of the Property described above solely excluding the Excluded Property, on an "as-is," "where as" basis. |
| Purchase Price<br><br>Section 2.3 of the PSA | $600,000 |
| Deposit | Ignite has tendered the $600,000 Purchase Price to its attorney's trust account, who have verified receipt. |
| Stalking Horse Protections<br><br>Section 3.2 of the PSA | In the event the Court rejects a private sale and someone bids at the Sale Hearing, the PSA provides the following stalking horse protections:<br><br>• Break-Up Fee of $250,000<br><br>• A competing bid must be at least $900,000, be paid in cash at closing, and on no less favorable terms than the PSA. |

---

[3] The following table is intended to be a summary of the material terms of the PSA. To the extent the terms as listed below differ from the terms contained in the PSA, the terms of the PSA are controlling.

| Interim Agreements<br><br>Section 5.07(a) of the PSA | There are no interim agreements or arrangements between the Trustee and Ignite. |
|---|---|
| Closing Deadlines<br><br>Section 3.2 of the PSA | The Sale Order must be entered by May 30, 2025, and the closing must occur by June 21, 2025. |
| Sale Free and Clear<br><br>Sections 3.1 and 4.2 of the PSA | The sale shall be free and clear of all liens, claims, and encumbrances. |
| Insider, Releases, & Waiver of Claims | Ignite is not an insider.  The PSA does not include any releases or waiver of claims.<br><br>The Sale Order includes language limiting successor liability as well as injunctions against violating the terms of the Sale Order. |
| Agreements to Employ | Not applicable. There are no employees. |
| Treatment of Sale Proceeds | The sale proceeds shall be held by the Trustee pending further order of the Court. |
| Waiver of Fed. R. Bankr. P. 6004(h) & Closing<br><br>Sections 3.1 and 4.1 of the PSA | The Trustee has sought a waiver of Fed. R. Bankr. P. 6004(h). Assuming it is granted, the Closing will occur pursuant to the terms of the PSA seven (7) business days after the Sale Order becomes a final order. |
| Costs & Taxes<br><br>Section 4.4 of the PSA | Except as otherwise set forth in the PSA, the Trustee and Ignite will each bear their own expenses in connection with the PSA and the sale.  The Trustee shall pay all taxes arising from the sale of Debtor's assets. |

13.     Both before and during the negotiations with Ignite, the Trustee inquired whether either Dan Bilzerian or Steel Supplements, Inc.—the only two other parties that the Trustee expects may have an interest in the Debtor's assets—had any interest in making a bid to acquire the Property.  Mr. Bilzerian confirmed he has no interest.  Having provided more than adequate time for Steel Supplements, Inc. to make an offer, to date, Steel Supplements has not submitted an offer for the Property.  *See id.*, ¶ 9.

. . .

14. Accordingly, given the Trustee's investigation into the Debtor's assets, lack of possession of certain of the scheduled assets, and as no other offers having been received despite the Trustee's affirmative engagement of both Mr. Bilzerian and Steel Supplements, Inc., the Trustee submits that the $600,000 Purchase Price is the best price that can be obtained for the Property under the circumstances of this Bankruptcy Case and is therefore fair and reasonable consideration for the purchase of the Property. *See id.*, ¶ 10.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This contested matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O). Venue of the Debtor's Chapter 7 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a "core proceeding" over which the court has jurisdiction to render a decision.

The statutory bases for the relief sought herein arise from Sections 105(a) and 363, Bankruptcy Rules 1015, 2002, 6004, 9007, and 9014, and Local Rule 6004. Pursuant to Local Rule 9014.2, the Trustee consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

## III. LEGAL AUTHORITIES & ARGUMENT

By this Motion, the Trustee seeks approval of the sale of the Property as contemplated by and on the terms contained in the PSA.

A. **The Standard for Asset Sales - Section 363(b).**

Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The standard for approval of a sale of property of the estate under Section 363 is whether there exists some articulated business justification for the proposed transaction, and whether the sale is in the best interests of the debtor, creditors, and equity holders. *See Walter v. Sunwest Bank (In re Walter),* 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986). Stated otherwise, the decision to sell assets outside of the ordinary

course of business is based upon the sound business judgment of the trustee  *See Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 WL 1820326, at *10 (Bankr. D. Del. Apr. 2, 2001).

In making such a determination, courts may look to the following factors:

(a)     Whether a sound business justification exists for the sale;

(b)     Whether the assets are increasing or decreasing in value;

(c)     Whether the sale will produce a fair and reasonable price for the property;

(c)     Whether the assets have been given adequate marketing; and

(d)     Whether adequate and reasonable notice of the sale was given.

*See In re Work Recovery,* 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996); *and In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re Delaware & Hudson Ry.,* 124 B.R. at 176; *In re Phoenix Steel Corp.,* 82 B.R. 334, 335-36 (Bankr. D. Del. 1987); *In re United Healthcare Sys., Inc.,* No. 97-1159, 1997 WL 176574, at *4 and n.2 (D. N.J. Mar. 26, 1997).

**B.      Procedural Requirements - Rules 6004(f) and 2002(c)(1).**

Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by ***private sale*** or by public auction."  Fed. R. Bankr. P. 2002(c)(1) (emphasis added).  A trustee is entitled to broad discretion in determining the manner of a sale, including whether to sell property by public or private sale.  *See In re Frezzo,* 217 B.R. 985, 989 (Bankr. M.D. Pa. 1988) (citing *In re Canyon Partnership,* 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985)).

Bankruptcy Rule 2002(c)(1) provides that "notice of a proposed use, sale, or lease of property… shall include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections."

**C.      Sales "Free and Clear" - Section 363(f).**

Section 363(f) of the Bankruptcy Code provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interests in such property of an entity other than the estate, only if –

(1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;
(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4)  such interest is in bona fide dispute; or
(5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money judgment of such interest.

Section 365(f) is written in the disjunctive.  Thus, satisfaction of any one of the five conditions is sufficient to sell property free and clear of a lien.  *See In re Kellstrom Indus., Inc.,* 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions is met, the debtor has the authority to conduct the sale free and clear of all liens" (citing *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988)); *In re Dundee Equity Corp.,* No. 89-B-10233, 1992 WL 53743, at *4 (Bankr. S.D.N.Y. March 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met"); *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (holding that the court may approve the sale "free and clear" provided at least one of the subsections of Bankruptcy Code section 363(f) is met).

## IV.  LEGAL ARGUMENT

### A.    The Sale of the Majority of Debtor's Assets Should Be Approved.

A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors, or interest holders.  *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983).  In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Food Barn Stores, Inc.,* 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.,* 147 B.R. 650, 659 (Bankr. S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . [Trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate" (quoting *In re Atlanta Packaging Prods., Inc.,* 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

Bankruptcy courts routinely defer to the trustee's business judgment on business decisions. *See Group of Inst'l Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990); *see also In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985) (noting that authority to operate the business "necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters."); *see also In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (concurring with the premise "that business judgments should be left to the board room . . ."); *see also In re Curlew Valley Assoc.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (declining to second-guess a trustee's business judgment when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code.") (footnotes omitted). In general, a bankruptcy court should defer to a trustee's business judgment unless such decision is arbitrary and capricious. *See id.*, 14 B.R. at 511-13.

The business judgment rule is satisfied where "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted), *rev'd on other grounds*, 801 F.2d 60 (2d Cir. 1986); *see also In re Weiss Multi-Strategy Advisers LLC,* 665 B.R. 578, 590 (Bankr. S.D.N.Y. 2024) (collecting cases confirming that "Courts have made clear that a debtor's business judgment is entitled to great deference" and approving a private sale); *In re Frantz*, 534 B.R. 378, 387 (Bankr. D. Idaho 2015) (discussing how a trustee's determination to proceed with a private sale is committed to the trustee's business judgment and given deference).

As described above, the scheduled value of Debtor's assets as valued by its then—management was $4,100 for the furniture and equipment and "unknown" for the balance of the intellectual property and potential litigation claims. *See* ECF No. 29. Additionally, certain of these assets were disposed of prior to the Trustee's appointment, or not turned over to the Trustee. *See* Shapiro Decl. ¶ 11. There are also disputes as to the ownership of certain of the intellectual property and no funds to prosecute the litigation claims, which are uncertain and would be hotly contested by the potential defendants. *Id.* ¶ 12. Accordingly, there is a very limited market for the Property, with the Trustee determining that Daniel Bilzerian, Steel Supplements, Inc., and Ignite being the only likely purchasers. *Id.* ¶ 13. Having engaged both Mr. Bilzerian and Steel Supplements, Inc. to determine their lack of interest in acquiring the Property, the sale to Ignite through a private sale is not only in the best interest of the Estate and creditors, it is likely the only possible sale option. *Id.* ¶ 14.

Based on the foregoing, in addition to the fact that this Motion will be served on Debtor's full matrix with an opportunity for objection, the Trustee respectfully submits that the sale satisfies the requirements of Section 363(b) and should be approved.

**B.      The Sale Should Be Made "Free and Clear."**

Pursuant to Section 363(f), the sale may be free and clear of liens, claims, and encumbrances. The Debtor's schedules do not identify any secured claims and the Trustee is not aware of any valid liens. *See* Shapiro Decl. ¶ 15; ECF No. 29, Sch. D. Further, to the extent there are any valid liens, the liens will attach to the sale proceeds. Accordingly, the Debtor's assets may be sold fee and clear of all liens, claims, and encumbrances pursuant to Section 363(f).

**C.      Ignite Is Entitled to a Good Faith Finding.**

Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

The sale to Ignite is the result of arms-length, good faith negotiations. The PSA was negotiated and entered into by Ignite and the Trustee in good faith, without collusion, and from arms-length bargaining positions. Shapiro Decl. ¶ 16. Accordingly, the Trustee requests that the Court make a finding that Ignite has purchased the Debtor's assets in good faith and is entitled to the full protections of Section 363(m).

**D.     Stalking Horse Protections.**

Break-up fees and other forms of bidding protections are a normal and, in many cases, necessary component of significant sales conducted pursuant to Section 363. *In re Integrated Resources*, 147 B.R. 650, 659-60 (S.D.N.Y. 1992) ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtors' assets . . . . In fact, because the . . . corporation has a duty to encourage bidding, Break-Up Fees can be necessary to discharge [such] duties to maximize value."). Bid protections "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989); *see also Integrated Resources*, 147 B.R. at 660-61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus, Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence."). As a result, courts routinely approve bid protections similar to the bid protections proposed here in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3rd Cir. 1999).

The stalking horse protections include (i) a break-up fee of $250,000 should Ignite not be selected as the buyer, which shall be paid at closing of the sale from the sale proceeds and entitled to administrative expense priority; and (ii) that the Trustee shall not accept any competing bid for the Property unless the break-up fee is paid to Ignite at Closing and the competing bid (A) is in an amount of at least Nine Hundred Thousand Dollars ($900,000.00), (B)

provides for payment in full in cash at Closing, and (C) is no less favorable than the terms of this Agreement.  *See* Exhibit 1, PSA § 3.2.

The Trustee and Ignite negotiated and agreed to a private sale.  However, out of an abundance of caution, Ignite has also required stalking horse protections in the event that a bidder appears at the Sale Hearing and the Court considers the bid.  Ignite has been abundantly clear that it would not make any offer to purchase the Property if these stalking horse protections were not agreed to as part of the PSA.  *See* Shapiro Decl. ¶ 17.  Prior to filing the Motion, the Trustee sought to obtain offers from both Daniel Bilzerian and Steel Supplements, both of whom declined.  *Id.*  Accordingly, were someone to appear at the Sale Hearing and bid, it would only be as a result of Ignite's offer in the PSA and therefore, the Trustee submits that the stalking horse protections are reasonable, appropriate, and in the best interest of the estate and creditors. *Id.* ¶ 18.

**E.      Notice of the Motion Is Appropriate.**

Bankruptcy Rule 6004(a) provides that "[n]otice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the Code."  *See* FED. R. BANKR. P. 6004(a).  Bankruptcy Rule 2002(a)(2) requires at least twenty-one days' notice by mail to the debtor, the trustee, all creditors, and indenture trustees of a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice.  *See* FED. R. BANKR. P. 2002(a)(2).  Last, Bankruptcy Rule 2002(c)(1) begins with:

> Subject to Rule 6004, the notice of a proposed use, sale, or lease of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property. . . .

FED. R. BANKR. P. 2002(c)(1).

Here, the Trustee submits that notice of the Motion and the relief requested therein is appropriate under the circumstances, as this Motion is filed in the ordinary course and will be

heard on the Court's regular law and motion calendar.  Therefore, the Trustee submits that notice of the Motion and relief requested is appropriate and no further notice should be required.

**F.    Waiver of the Fourteen-Day Stay Afforded By Bankruptcy Rule 6004 Is Appropriate**

Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  *See* FED. R. BANKR. P. 6004(h).  In accordance with the terms of the PSA, the Trustee requests that this Court waive the fourteen day "stay" under Bankruptcy Rule 6004(h).

## V.  CONCLUSION

Based on the foregoing, the Trustee respectfully requests the Court enter the Sale Order, in substantially the form attached hereto as **Exhibit 2**, thereby authorizing the Trustee to effectuate the sale contemplated by the PSA.  In the event another bidder appears at the Sale Hearing and is considered by the Court, the Trustee requests approval and enforcement of the stalking horse protections set forth herein.

DATED this 21st day of April, 2025.

*/s/ Brian D. Shapiro, Trustee*
BRIAN D. SHAPIRO, TRUSTEE.
510 S. 8th Street
Las Vegas, Nevada 89101