BRIAN D. SHAPIRO, TRUSTEE
510 S. 8th Street
Las Vegas, Nevada 89101
Phone: (702) 386-8600
brian@trusteeshapiro.com
*Brian D. Shapiro, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No. 23-13871-nmc |
| | Chapter 7 |
| BLITZ NV, LLC, | |
| Debtor. | Sale Hearing: |
| | Hearing Date:  May 20, 2025 |
| | Hearing Time: 2:00 p.m. |

**DECLARATION OF BRIAN D. SHAPIRO, CHAPTER 7 TRUSTEE, IN SUPPORT OF THE MOTION TO SELL DEBTOR'S ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS AND GRANTING BID PROTECTIONS**

I, Brian D. Shapiro, Esq., hereby declare as follows:

1.      I am over the age of 18 and mentally competent.  I have personal knowledge of the facts in this matter and if called upon to testify, could and would do so.  I make this declaration in support of the *Motion to Sell Debtor's Assets Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* (the "Motion").[1]

2.      I am the Chapter 7 trustee ("Trustee") in the above-captioned bankruptcy case.

3.      Since my appointment, I have been investigating the Debtor's assets, including the viability of potential litigation claims.  This investigation has included, among other actions, informal discovery, discussions with Debtor's prior management and creditors, as well as causng my counsel to conduct the 2004 examination of Daniel Bilzerian.

---

[1] Unless otherwise expressly stated herein, all undefined, capitalized terms shall have the meanings ascribed to them in the Motion.

4.    I do not have possession of certain of the personal property described in the schedules and Debtor's former principals assert that they have no knowledge as to the location of the missing personal property and/or have acknowledged that certain of the property that had become inoperable had been disposed of prior to my appointment as trustee.

5.    Additionally, my investigation has revealed that there are disputes over the extent of Debtor's interest in certain of the assets identified on Schedule A/B, as well as the viability of the potential litigation claims held by the Estate, thereby decreasing the value of these assets.

6.    The Debtor's Estates has a total of $26,340.03 in cash as of the submission of the Motion, thereby rendering the Estate administratively insolvent without a sale and negatively impacting the ability to pursue potential litigation claims.

7.    In my business judgment, a sale of Debtor's non-cash assets is in the best interest of the Estate and its creditors.

8.    In late 2024, Ignite expressed an interest in purchasing Debtor's assets, subject to completing due diligence.  Negotiations ensued over several months, which culminated in the PSA providing for Ignite's purchase of the non-cash assets for $600,000 "as is," "where as," subject to the terms of the PSA.

9.    Both before and during the negotiations with Ignite, I, by and through my counsel, inquired whether either Dan Bilzerian or Steel Supplements, Inc.—the only two other parties that may have an interest in the Debtor's assets—had any interest in making a bid to acquire the Property.  Mr. Bilzerian confirmed he has no interest.  Having provided more than adequate time for Steel Supplements, Inc. to make an offer, to date, Steel Supplements has not submitted an offer for the Property and knowing that they previously declined to make an offer, it is my belief that it has no interest.

10. Given my investigation into the Debtor's assets, lack of possession of certain of the scheduled assets, and as no other offers having been received despite the my affirmative engagement of both Mr. Bilzerian and Steel Supplements, Inc., I submit that the $600,000 Purchase Price is the best price that can be obtained for the Property under the circumstances of this Bankruptcy Case and is therefore fair and reasonable consideration for the purchase of the Property.

11. The scheduled value of Debtor's assets as valued by its then-management was $4,100 for the furniture and equipment and "unknown" for the balance of the intellectual property and potential litigation claims. *See* ECF No. 29. I have been advised that certain of these assets were disposed of prior to the my appointment, or were otherwise not turned over to me.

12. There are disputes as to the ownership of certain of the intellectual property and no funds to prosecute the litigation claims, which are uncertain and would be hotly contested by the potential defendants.

13. Based on my investigation and in my business judgment, there is a limited market for the Property, with Daniel Bilzerian, Steel Supplements, Inc., and Ignite being the only likely purchasers.

14. Having engaged both Mr. Bilzerian and Steel Supplements, Inc. to determine their lack of interest in acquiring the Property, in my business judgment, the sale to Ignite through a private sale is not only in the best interest of the Estate and creditors, it is likely the only possible sale option.

15. The Debtor's schedules do not identify any secured claims and I am not aware of any valid liens.

16. The sale to Ignite is the result of arms-length, good faith negotiations. The PSA was negotiated and entered into by Ignite in good faith, without collusion, and from arms-length bargaining positions.

3

17.    Ignite and I negotiated and agreed to a private sale.  However, out of an abundance of caution, Ignite has also required stalking horse protections in the event that a bidder appears at the Sale Hearing and the Court considers the bid.  Ignite has been abundantly clear that it would not make any offer to purchase the Property if the stalking horse protections were not agreed to as part of the PSA.

18.    Prior to filing the Motion, I sought to obtain offers from both Daniel Bilzerian and Steel Supplements, both of whom declined.  Accordingly, were someone to appear at the Sale Hearing and bid, it would only be as a result of Ignite's offer in the PSA and therefore, I submit that the stalking horse protections are reasonable, appropriate, and in the best interest of the estate and creditors.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

DATED this 21st  day of April 2025.

/s/ Brian D. Shapiro
BRIAN D. SHAPIRO