**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Email:  ccarlyon@carlyoncica.com
 dcica@carlyoncica.com

*Co-Counsel for STEEL Supplements, Inc.*

**SMITH, GAMBRELL & RUSSELL, LLP**
JASON P. STEARNS, ESQ
*(Pro Hac Vice)*
SARAH A. GOTTLIEB, ESQ
*(Pro Hac Vice)*
201 North Franklin Street, Suite 3550
Tampa, FL 33602
Phone: 813-488-2920
Telephone 813-488-2920
Email: jstearns@sgrlaw.com
sgottlieb@sgrlaw.com

*Co-Counsel for STEEL Supplements, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. BK-S-23-13871-NMC |
| BLITZ NV, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | **RESPONSE IN OPPOSITION TO MOTION TO SELL DEBTOR'S ASSETS** |
| | **Hearing Date:** May 20, 2025 <br> **Hearing Time:** 2:00 pm |

STEEL Supplements, Inc., ("STEEL") by and through its undersigned counsel, responds in opposition to the *Debtor's Motion to Sell Debtor's Assets Outside of the Ordinary Course of Business Free and Clear of All Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* [Doc. 214] (the "Motion to Sell").

This Opposition is made and based upon the Points and Authorities filed herewith, the

CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

pleadings, papers and records on file in this action,[1] and any oral argument the Court may entertain at the time of the hearing on the Motion.

Pursuant to LR 9014.2(b), STEEL consents to the entry of final relief by the Bankruptcy Court in the event that the Bankruptcy Court lacks jurisdiction to issue a final order with respect to the Motion.

Respectfully submitted this 13th day of May 2025.

**CARLYON CICA CHTD.**

By: /s/  *Candace Carlyon*
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
*Co-Counsel for STEEL Supplements, Inc.*

---

[1]  Pursuant to FRE 201, STEEL requests that the Court take judicial notice of the pleadings and Court dockets referenced herein pursuant to FRE 201.  *See, e.g.*, *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020) (court may take judicial notice of orders and filings, including  proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue); *Bank of Am., N.A. v. CD-04, Inc.* (*In re Owner Mgmt. Serv., LLC Trustee Corps.*), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

2

**POINTS AND AUTHORITIES**

**I.   FACTS**

1.    The Debtor, Blitz NV, LLC (the "Debtor"), was in the business of being Dan Bilzerian, a professional gambler, social-medial "influencer," and all-around gadabout. A long sordid history brought this case into Chapter 7. Now, the Chapter 7 Trustee seeks to sell all of the Debtor's assets to an entity called Ignite International, Ltd. ("Ignite"), a suspected Debtor affiliate, under proposed procedures that offer unreasonable bid protections—including a 40% break-up fee and a 33% topping-bid requirement. STEEL proposes to buy the Debtor's assets under better terms that would produce a better outcome for the estate and its constituents.

2.    STEEL, which markets and sells body-building supplements, is the Debtor's sole unsecured creditor, with a filed claim of $2,887,783.87 for damages arising from the Debtor's breach of an exclusive sponsorship agreement. The Debtor initiated this case under Chapter 11 as part of its continuing efforts to avoid paying STEEL, and STEEL played an instrumental role in the conversion of this case to Chapter 7.

3.    STEEL opposes the Motion to Sell both because of the unreasonable bid protections contained in the Purchase and Sale Agreement (the "Ignite PSA") and because the Ignite PSA does not represent the highest and best offer to the estate.

4.    The Ignite PSA contains a proposed break-up fee of $250,000 (40% of the stalking-horse bid of $600,000) and a topping bid requirement of $900,00 (a 33% overbid of the stalking-horse bid). This is unreasonably high.

**II. LEGAL ANALYSIS**

**A. The Court Should Not Approve the Sale to Ignite in Light of STEEL's Higher Bid**

The Ignite sale does not represent the highest and best offer to the estate because STEEL proposes to purchase the Debtor's assets on substantially the same terms set forth in the Ignite PSA save for the proposed Purchase Price—STEEL offers more. In the Ignite PSA, Ignite proposes to purchase the Debtor's assets for $600,000. If this sale were consummated, the $600,000 purchase

3

price would go first to administrative claimants of the estate with the remainder paid to STEEL on its claim, in what would undoubtedly be a small, fractional distribution. Instead, STEEL offers to pay the estate in cash the total projected administrative expenses of the estate in full through the close of the case[2] (estimated to be no more than $250,000), plus a credit bid of $450,000 on its unsecured claim, for a total Purchase Price of $700,000, thereby topping the proposed Ignite Purchase Price by $100,000, or 16.6%. As the Trustee recognizes, "the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate." Motion p. 8.   Further, "It is a well established principle of bankruptcy law that the . . . [Trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate," *Id.* The STEEL offer is undeniably better. As noted by the Trustee, Section 363 requires that the Trustee "act to further the diverse interests of the debtor, creditors and equity holders, alike". *In re Walter*, 83 B.R. 14, 20 (B.A.P. 9th Cir. 1988), quoting *Institutional Creditors of Continental Airlines, Inc. (In re Continental Airlines, Inc.)*,780 F.2 d 1223, 1226 (5th Cir. 1986). *See* Motion p. 6.  Here, it is clear that the Debtor is insolvent, and thus the interests of STEEL, the sole creditor (other than the Trustee and his professionals) should, so long as such administrative claims are paid, be paramount.

### B.  The Court Should Not Approve the Proposed Topping Fee

There are "three questions for courts to consider in assessing break-up fees: (1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" *In re Integrated Res., Inc.,* 147 B.R. 650, 657 (S.D.N.Y. 1992)(cited in the Motion).

There are substantial issues with regard to Ignite's relationship to this case.  Ignite appears to be utilizing the logo owned by the estate, which is among the assets being sold.  *See* https://ignite.co/.  Apparently, Dan Bilzerian is the majority shareholder and former CEO of Ignite. *See*            https://www.reviewjournal.com/investigations/dan-bilzerian-sues-his-own-father-in-

---

[2] Including a trustee commission calculated as if the trustee collected and distributed the total purchase price of $700,000.

4

corporate-fight-3211860/ ("Ignite sells liquor, apparel and other products. Dan Bilzerian founded the company in 2017 and is the majority shareholder, though he was its "nominal CEO" and not directly involved in its operations, according to the complaint."[3])

Second, the proposed fee would hamper, not encourage, higher bidding.  Topping fees should be approved only after consideration of whether the proposed fee "will encourage rather than discourage the bidding, and whether it would enhance rather than detract from the ultimate maximum recovery to the estate." In re APP Plus, Inc., 223 B.R. 870, 875 (Bankr. E.D.N.Y. 1998). Here, there has been no separate motion to approve bidding procedures.  At the present time, the Trustee already has two active bidders for the assets, and the highest bid is that of STEEL.  There is no need to pay any fee to Ignite in order to take advantage of the higher recovery offered by the STEEL bid.

Finally, the proposed 40% topping fee is unreasonably high.  Under section 503(b) of the Bankruptcy Code, a break-up fee is only permissible to the extent "necessary to preserve the value of the estate." Break-up fees in bankruptcy cases generally run between 1% and 4% of the stalking-horse bid, not 40%. *See re Tama Beef Packing, Inc.,* 312 B.R. 192, 194 (Bankr. N.D. Iowa 2004) (containing a comprehensive survey of cases). The unreasonable break-up fee drives the unreasonable topping amount. A more reasonable break-up fee—assuming a break-up fee is appropriate here at all—would allow for a lower topping bid. Ultimately, STEEL's claim is large enough to provide a credit bid sufficient to top Ignite's bid in the current increment; however, requiring such a topping amount would only serve to chill any additional bidding from Ignite. Instead the court should consider a break-up fee, if at all, in a smaller amount consistent with the practice as outlined in *Tama Beef* and approve a topping bid in a commensurate amount.

### III.    CONCLUSION

As the sole unsecured creditor, and only stakeholder after payment of administrative expenses, STEEL should be permitted to credit bid its unsecured claim. After payment of

---

[3]   The referenced complaint filed by Dan Bilzerian is U.S. District Court Case #2:24-cv-02101-RFB-NJK,

administrative expenses, which STEEL is proposing to pay in cash—STEEL gets every penny of any sale proceeds until its claim is paid in full with interest. As such, STEEL should not be required to pay a full cash purchase price in an amount above what would come back to STEEL. Accordingly, STEEL's offer—a full payment of administrative expenses plus credit for any distribution it would receive—represents the highest and best offer to the estate.

WHEREFORE, STEEL respectfully requests that this Court deny the Motion to Sell and instead approve a sale to STEEL on the terms outlined above.

Respectfully submitted this 13th day of May, 2025.

**CARLYON CICA CHTD.**

By: /s/   *Candace Carlyon*
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
*Co-Counsel for STEEL Supplements, Inc.*

&

**SMITH, GAMBRELL & RUSSELL, LLP**
JASON P. STEARNS, ESQSARAH A. GOTTLIEB, ESQ 201 North Franklin Street, Suite 3550
Tampa, FL 33602
Phone: 813-488-2920
Email: jstearns@sgrlaw.com
sgottlieb@sgrlaw.com

BRIAN P. HALL
MICHAEL F. HOLBEIN
1105 W. Peachtree St. NE, Suite 1000
Atlanta, GA 30309
Phone: 404-815-3500
Email: bhall@sgrlaw.com
mholbein@sgrlaw.com

*Co-Counsel for STEEL Supplements, Inc.*

6

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

/s/  Nancy Arceneaux
An employee of Carlyon Cica Chtd.

SGR/6338703.1

7