Ryan J. Works, Esq. (NSBN 9224)
Emily M. Dennis, Esq. (NSBN 16396)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
edennis@mcdonaldcarano.com

*Attorneys for Ignite International, Ltd., Rohleder Inc.*
*and International Investments, Ltd.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>BLITZ NV, LLC,<br><br>　　　　　　Debtor. | Case No.: 23-13871-nmc<br>Chapter 11<br><br>**JOINT OPPOSITION TO STEEL SUPPLEMENTS, INC.'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA BY IGNITE INTERNATIONAL, LTD. AND INTERNATIONAL INVESTMENTS, LTD.**<br><br>**Hearing Date: August 14, 2025**<br>**Hearing Time: 11:30 a.m.** |

Ignite International, Ltd. ("Ignite") and International Investments, Ltd. ("II") (collectively, "Examinees") jointly submit this opposition ("Opposition") to *Steel Supplements, Inc.'s Motion to Compel Compliance with Subpoena by Ignite International, Ltd. and Request for Fees and Costs*[1] [ECF No. 281] and *Steel Supplements, Inc.'s Motion to Compel Compliance with Subpoena by International Investments, Ltd., and Request for Fees and Costs*[2] [ECF No. 286] (collectively, the "Motions to Compel") filed by Steel Supplements, Inc. ("Steel" or "Buyer").

---

[1] Steel's subpoena to Ignite contains 30 requests, seeking "all" Documents, Transactions, Communications and other overly broad, abusive, harassing and irrelevant information.

[2] Steel's subpoena to II contains 34 requests, seeking "all" Documents, Transactions, Communications and other overly broad, abusive, harassing and irrelevant information.

1

## I.    INTRODUCTION

Rule 2004 is a broad discovery tool only if used for legitimate purposes—the subpoenas underlying Steel's Motions to Compel were not propounded for such purposes. Instead, Steel inappropriately relies on Rule 2004 to conduct discovery for two illegitimate purposes unrelated to this bankruptcy proceeding: (1) conducting due diligence in advance of its planned purchase of the Debtor's assets at auction—due diligence for which it did not contract for in the related Purchase and Sale Agreement; and (2) advance an adversary case against the Debtor which it has not filed, apparently for the sole purpose of avoiding the Federal Rules of Civil Procedure and at the expense of non-parties Ignite and II.  There is no legitimate basis for the discovery requested by Steel at this juncture, on the eve of a proposed sale transaction with the Trustee, and absent any case or controversy between Steel and Examinees pending before this Court.

Because the Subpoenas violate these textbook limitations on Rule 2004, the Examinees ask that the Court deny Steel's Motions to Compel in their entirety or, alternatively, drastically limit the underlying subpoenas to match Steel's stated goals.

## II.    PROCEDURAL BACKGROUND

1.    On September 6, 2023, Blitz NV, LLC filed its voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code.  [ECF No. 1].  Trustee Brian Shapiro was appointed as the Subchapter V Trustee.

2.    On December 12, 2023 this Court converted the Debtor's case from Chapter 11 reorganization to Chapter 7 liquidation and the Subchapter V Trustee was appointed as the Chapter 7 Trustee.

3.    On April 21, 2025, the Chapter 7 Trustee filed its *Motion to Sell Debtor's Assets Outside of the Ordinary Free and Clear of all Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* [ECF No. 214] (the "Motion to Sell").

4.    The Motion to Sell proposed a sale of all Debtor's non-cash assets to Ignite on an "as-is" and "where-as" basis for $600,000 in accordance with the terms of the Purchase and Sale Agreement ("PSA") attached to the Motion to Sell.  [ECF No. 218, Exhibit 1].

5.    On June 18, 2025, the Chapter 7 Trustee filed a new *Motion to Sell Debtor's Assets*

2

*Outside of the Ordinary Free and Clear of all Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* [ECF No. 244] (the "Second Motion to Sell") on an "as-is" and "where-as" basis, this time to Steel Supplements, Inc. for $625,000. Steel apparently made this decision prior to conducting any due diligence which it now improperly seeks to complete through Rule 2004.

6. On June 12, 2025, Steel filed two Ex Parte Motions for 2004 Examinations of the Examinees, which the Court Clerk granted the next day. [ECF Nos. 236-39].

7. Steel then issued subpoenas ("Subpoenas") for document production to the Examinees on June 13, 2025. [ECF Nos. 240-41].[3]

8. The Examinees served their responses to the Subpoenas on July 3, 2025, objecting almost uniformly that the document requests therein sought irrelevant information and were overbroad and unduly burdensome, intended to annoy and harass the Examinees, and not within the scope of Rule 2004. [*See* ECF No. 281 at 208-54; ECF No. 286 at 213-23].

9. Counsel for the Examinees and Steel met and conferred on July 15, 23, and 28, 2025, in an effort to avoid motion practice, but Steel would not amend some of the most egregiously broad document requests. [*See* ECF No. 281 at 7; ECF No. 286 at 7 (both noting that Steel would not agree to change requests for "all Communications" between the Examinee and Daniel or Paul Bilzerian over an eleven-year span or a request for "all communications between [the Examinee] and the Debtor" without topic or temporal restrictions)].

10. On July 28, 2025, the same day as the parties' last meet-and-confer, Steel filed the Motions to Compel. [ECF Nos. 281 & 286], seeking an order shortening time for the hearing on these matters, despite the bankruptcy case being filed nearly two-years ago.

11. On the Examinees' motion, the hearing on the Motions to Compel was continued until August 14, 2025. [ECF Nos. 308, 319], with Examinee's opposition due today.

## III.    LEGAL ANALYSIS

While its scope of discovery may be broad, Rule 2004 "is not a license without restrictions."

---

[3] On July 3, 2025, International Investments, Ltd., filed an Ex Parte Motion for 2003 Examination of Steel's FRCP 30(b)(6) Designee, granted on July 7, 2025. [ECF Nos. 265, 266]. International Investments concurrently withdraws the resulting subpoena. [*See* ECF Nos. 275 & 276].

*In re Martelli*, No. 16-20983-PRW, 2017 WL 3098105 at *3 (W.D.N.Y. July 20, 2017). Steel's Subpoenas run headlong into two of those restrictions: (1) that a Rule 2004 examination cannot be used for abuse, harassment, or bad faith; and (2) that, if a propounding party alleges a basis to initiate a contested matter or adversary proceeding, it cannot put off filing an action so as to rely on Rule 2004, rather than the Federal Rules of Civil Procedure.

First, Steel already placed a $625,000 bid for the Debtor's assets, to be auctioned on August 28, 2025. Rule 2004 is not the appropriate venue to conduct due diligence that Steel could have executed in the normal course of an asset purchase. Second, Steel submitted evidence which, it alleges, purportedly confirms that the Bilzerians have used the Examinees to "shield [] assets," including intellectual property and a plane. [*See* ECF Nos. 281 & 286 at ¶¶ 6-17].  If Steel believes it already has documents supporting its theory, it should file a contested matter and subject itself to the Federal Rules of Civil Procedure rather than procrastinate filing so it can exploit Rule 2004.

For these reasons, the Examinees jointly ask the Court to deny Steel's Motions to Compel in their entirety, or substantially limit the overbroad requests for "all" Documents, Communications, Transactions and other materials going back more than a decade, which information Steel cannot justify in its Motions to Compel.

### 1. The Subpoenas Cannot be Used as a Substitute for Due Diligence.

At present, Steel is the purported winning bidder at the auction soon-to-be held on August 28, 2025 at 9:30 a.m.. [*See* ECF No. 320].  Should it prevail, there is no need for the underlying discovery.  Should it be outbid by a competing offer, there is no need for the underlying discovery. If Steel thought it needed due diligence prior to the sale of all Debtor's assets, it should have bargained for such a provision in the Purchase and Sale Agreement [ECF No. 244 at 17-34] ("PSA"). No such due diligence period was negotiated, and therefore Buyer is stuck with the rights it enjoys under the PSA.  Unfortunately, Steel may have put the cart before the horse, which may result in a breach and damages claim against it, should Steel now try and back out of the PSA and terminate the contract with the Chapter 7 Trustee.  In any event, it is too late for Steel to now seek due diligence in aid of its attempt to buy claims it believed existed as early as June 6, 2025.

4

## 2.    The Subpoenas Should be Quashed as Premature.

Clearly, Buyer is seeking to purchase claims that it already believes existed on behalf of the Debtor, and it intends to pursue those claims.  As such, Steel should file its adversary cases and proceed under the rules of civil procedure applicable to those cases.  *See* Rule 7001 et seq.  As it stands now, however, Steel's reliance on Rule 2004 is an impermissible abuse of judicial process. *See In re Georgetown of Kettering*, 17 B.R. 73, 75 (S.D. Ohio 1981) (noting that "abuse of propriety and the judicial process certainly was never contemplated" by the Federal Rules of Bankruptcy Procedure). Specifically, where the party seeking the examination "allege[s] that the information sought is necessary [to] determine whether to bring a complaint" but has already asserted evidence supporting that complaint, that party may not rely on Rule 2004 to "circumvent the procedural safeguards provided by a litigant by the Federal Rules of Civil Procedure." *In re GHR Energy Corp.*, 35 B.R. 534, 538 (D. Mass. 1983); *see In re Continental Forge Co., Inc.*, 73 B.R. 1005, 1006-07 (W.D. Pa. 1987) (noting that FRCP 45, applicable to subpoenas for Rule 2004 examinations, incorporates FRCP 26 and thereby prevents discovery on potential causes of action which have no relationship to "the discovery and collection of the assets of the debtor, nor the development of a plan for reorganization").

Here, the Motions to Compel entirely focus on Steel's allegations that the Debtor transferred intellectual property and other assets under "suspicious circumstances" and attach numerous exhibits to support those allegations. [*See* ECF No. 281 at 12:13-23; ECF No. 286 at 12:6-16]. If Steel believes it has assembled a good-faith basis to initiate a contested matter or adversarial proceeding against the Debtor, it must do so now rather than rely in bad faith on Rule 2004's more permissive standard to conduct discovery which would otherwise be cabined by the Federal Rules of Civil Procedure. *See In re GHR Energy Corp.*, 35 B.R. at 538. To exploit Rule 2004 now, particularly at the expense of nonparties, is an improper abuse of the judicial process and provides another basis to deny the Motions to Compel.

## 3.    The Subpoenas are Overbroad, Disproportional, Abusive and Harassing.

If a Rule 2004 examination targets a non-debtor and the non-debtor objects, "the party moving for the Rule 2004 examination must demonstrate good cause," for which "considerations of

proportionality are particularly important." *In re McClain Feed Yard, Inc.*, 661 B.R. 136, 142 (N.D. Tex. 2024) (quoting 9 *Collier on Bankruptcy* § 2004.01[6] (16th ed. 2024); *see In re Continental Forge*, 73 B.R. at 1006 (noting that Rule 2004 is not "a vehicle for gathering confidential information for which no reasonable need is shown"). Conversely, Rule 2004 examinations "may not be used for the purposes of abuse or harassment" or be "conducted in bad faith or for improper purposes." *In re Duratech Indus.*, 241 B.R. 291, 296 (E.D.N.Y. 1999); *In re Bakalis*, 199 B.R. 443, 448 (E.D.N.Y. 1996). Again, this concern is particularly salient for Rule 2004 examinations of third parties. *See In re Wilcher*, 56  B.R. 428, 434 (N.D. Ill. 1985) (noting that Rule 2004 "may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs"). Moreover, Rule 2004 incorporates FRCP 45, directing the Court to "quash or modify a subpoena" if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv).

Here, Steel's Subpoenas are so vastly overbroad and disproportionate to the needs of this action so as to constitute abuse and harassment and prevent Steel from demonstrating good cause. Moreover, the categories of documents requested confirm that Steel is using the Subpoenas to conduct due diligence that it could and should have conducted into the Debtor before placing a bid on its assets ahead of the auction scheduled for August 28, 2025.

First, while the Subpoenas may "set forth just eleven matters for examination," those eleven matters are not limited by time, scope, or in any other reasonable fashion. [*See, e.g.*, ECF No. 286 at 208 (listing topics including "your communications with the Debtor" and "all transactions between You and the Debtor")]. The Subpoenas' thirty-four (34) categories of document requests go even further, seeking, for example, "all Communications between" the Examinee and fourteen individuals or entities between 2014 and 2025; "all Documents evidencing each and every Transaction" between the Examinee and twelve individuals or entities over the same timespan; and eleven years of tax returns. [ECF No. 281 & 286 at 7-11]. The only factual allegations Steel uses to justify these requests begin in 2022—*eight years* after the time period sought by many of the requests. [ECF No. 281 & 286 at ¶1-17]. Moreover, while Steel asserts it is seeking "discovery of voidable transactions and . . . concealment," the categories are not so limited, even when Steel had the opportunity to impose those limitations during three meet-and-confers. [*See, e.g.*, ECF No. 281

6

at 10, Category 6 ("Produce all Communications between You and the Debtor"); Category 24 ("Produce all Documents evidencing each and every Transaction between You and the Debtor.")].

These categories are not proportional to Steel's stated needs for Rule 2004 discovery. *See In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (noting that good cause is established "if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests"). If Steel is truly only seeking discovery related to its allegations of concealed transfers, it should be willing to limit every category to that topic area and limit the relevant time period to the shorter three-year time period, from 2022 to 2024, giving rise to its factual allegations about the same.

Second, that Steel is seeking categories of documents much broader than those serving its stated goal indicates that Steel has an ulterior motive that is not related to the Debtor's proceeding in bankruptcy—investigating the Debtor's value in advance of the auction on August 28, 2025. That investigation is not, however, an appropriate use of Rule 2004. *See In Re GHR Energy Corp.,* 35 B.R. at 537 (noting that a Rule 2004 examination of a nonparty "may be had only of those persons possessing knowledge of a debtor's acts, conduct or financial ***affairs so far as this relates to a debtor's proceeding in bankruptcy***.")

Third, the Subpoenas place an undue burden on third parties to this action by forcing them to dig through more than a decade of financial information, communications, and reporting, even though Steel can only summon purported facts supporting allegations of suspicious transfers in several narrow sets of circumstances occurring over a three-year period.  Rule 9016, applying FRCP 45 to subpoenas enforcing Rule 2004, does not permit such discovery behavior. *See* Rule 2004(c).

Because the Subpoenas are vastly overbroad, the Examinees ask the Court to deny the Motions to Compel in their entirety or, alternatively, tailor the Subpoenas in time and topic to Steel's stated goals.

### 4. <u>Steel Is Not Entitled to Attorney Fees or Costs</u>

Without citation to authority, Steel asks the Court for an award of fees and costs incurred in making the Motions to Compel. [*See* ECF Nos. 281 & 286]. But even if Steel had grounds to compel compliance with the substantively and procedurally flawed Subpoenas to third parties (it does not),

7

FRCP 45 does not contain a fee-shifting provision and "[m]ost courts . . . have rejected arguments to apply [FRCP] 37's fee-shifting provisions in this setting because Rule 37 applies only to a *party's* failure to provide discovery." Rule 2004(c) (applying Rule 9016 to subpoenas compelling responses to Rule 2004 examinations, which in turn incorporates FRCP 45); Fed. R. Civ. P. 45(d)(2)(B)(i), (g); 2 Federal Rules of Civil Procedure, Rules and Commentary § 45:18. Therefore, Steel is not entitled to an award of fees and costs *even if* the Court grants the Motions to Compel, which it should not.

## IV.    CONCLUSION

Because Steel's subpoenas seek 64 requests, many going back more than a decade, and eleven generic topics for examination based on a narrow set of allegations regarding purportedly "suspicious" transfers, on the eve of Steel's purchase of the Debtor's assets, the Examinees ask the Court to deny the Motions to Compel in their entirety so that Steel cannot inappropriately rely on Rule 2004 to avoid normal due diligence or the Federal Rules of Civil Procedure. Alternatively, the Examinees ask the Court to limit the Subpoenas to the time and topics set forth in Steel's Motions to Compel.  Finally, the Examinees ask the Court to deny Steel's request for an award of fees and costs, regardless of the Motions' outcome, because FRCP 45 does not permit such an award.

DATED this 12th day of August, 2025.

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Emily M. Dennis, Esq. (NSBN 16396)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
edennis@mcdonaldcarano.com

*Attorneys for Ignite International, Ltd., Rohleder Inc. and International Investments, Ltd.*