**DIAMOND McCARTHY LLP**
Allan B. Diamond, Esq. (*pro hac vice*)
Christopher D. Johnson, Esq. (*pro hac vice*)
2200 Post Oak Boulevard, Suite 1000
Houston, Texas 77056
Phone: (713) 333-5100
adiamond@diamondmccarthy.com
chris.johnson@diamondmccarthy.com

*Attorneys for Brian D. Shapiro,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>BLITZ NV, LLC<br><br>Debtor. | Case No. 23-13871-nmc<br>Chapter 7<br><br>**BRIAN SHAPIRO, CHAPTER 7 TRUSTEE'S, OBJECTION TO CLAIM NO. 2 OF INTERNATIONAL INVESTMENTS, LTD.**<br><br>Hearing Date: December 9, 2025<br>Hearing Time: 9:30 a.m.<br><br>REMOTE HEARING<br><br>CALL IN NUMBER – 833-435-1820<br>MEETING ID – 161-166-2815<br>PASSCODE – 115788# |

Brian Shapiro, chapter 7 trustee (the "Trustee") in the above-captioned Chapter 7 case, files this Objection to Claim No. 2 of International Investments, Ltd. (the "Objection"). This Objection is based upon 11 U.S.C. §§ 105(a), 502, 503, and 726, Fed.R.Bankr. P. 3001 and 3007, and Local Rule 3007, the following Points and Authorities, the Declaration of Brian Shapiro (the "Shapiro Declaration"), the pleadings on file in this case, and any arguments entertained by the Court at any hearing pertaining to this matter.

**POINTS AND AUTHORITIES**

**I. Jurisdiction and Venue**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This

matter is a core proceeding within the meaning of 28 U.S.C. §157 (b)(2)(B).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  Factual Background

3. Blitz NV, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 6, 2023 [ECF 1].

4. The Debtor listed International Investments on its creditor matrix attached to its voluntary petition [ECF 1] and scheduled International Investments, Ltd. ("International Investments") on Schedule E/F as a creditor with an unsecured claim in the amount of $3,937,803.91 [ECF 29].

5. Shortly after filing, the Debtor filed its *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Liens; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Chapter 11 DIP Financing Motion") [ECF 41].  The Chapter 11 DIP Financing Motion sought permission to obtain up to $300,000 in post-petition senior secured financing from International Investments.  After hearing, this Court entered an order denying the Chapter 11 DIP Financing Motion [ECF 72].

6. Subsequently, on December 19, 2023, this Court entered an order converting the chapter 11 case to a case under chapter 7 [ECF 135].  On December 21, 2023, the Office of the United States Trustee appointed Brian Shapiro as the chapter 7 trustee [ECF138].

7. Pursuant to Bankruptcy Rule 3002(c), the deadline for filing a proof of claim in this case was February 27, 2024 (the "Bar Date").  On December 26, 2023, the Clerk of the Bankruptcy Court entered the *Notice of Chapter 7 Bankruptcy Cases – Proof of Claim Deadline Set* [ECF 141], giving notice to all creditors of the Bar Date.

8. Docket Entry 142 shows that on December 28, 2023, the Clerk of the Bankruptcy Court served the *Notice of Chapter 7 Bankruptcy Case – Proof of Claim Deadline Set* on International Investments by first class mail at 858 Zenway Blvd., Frigate Bay, St. Kitts., P.O. Box 2086, Basseterre, St. Kitts, **the same address** International Investments provided in POC 2 as the address to which payments to the

creditor should be sent, and which is shown as its address in the Commercial Line of Creditor and Promissory Note attached to POC 2.

9.     On April 21, 2025, the Trustee filed his *Motion to Sell Debtor's Assets Outside of the Ordinary Course of Business Free and Clear of all Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* (the "Ignite Sale Motion") [ECF 214].  The Ignite Sale Motion sought approval to sell substantially all the assets of the estate to Ignite International, Ltd. STEEL Supplements, Inc. ("STEEL") filed its *Response in Opposition to Motion to Sell Debtor's Assets* [ECF 226], objecting in part because STEEL was prepared to make a higher and better offer.

10.     On May 20, 2025, this Court conducted an initial hearing on the Ignite Sale Motion, declining to grant the sale motion based upon STEEL's stated intent to submit a higher and better offer.

11.     Ten days later, on May 30, 2025, International Investments filed a proof of claim in the unsecured amount of $3,972,111.11 ("POC 2").  See **Exhibit 1** attached hereto.  An attachment to POC 2 sets forth the basis of the claim, wherein International Investments alleges that it is owed the following: (i) $3,800,000.00 for money loaned to the Debtor, and (ii) accrued interest in the amount of $172,111.11. POC 2 states that it amends an informal proof of claim filed on 10/03/2023 and it attaches the International Investments asserts that POC 2 simply amends it previous "informal claim."  The informal claim to which International Investments refers is the Debtor's Motion for Interim and Final Orders:(I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Liens; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief.  A copy of that motion was attached to POC 2.

12.     Immediately after the May 20 hearing, the Trustee began discussions with both International Investments and STEEL regarding offers for the purchase of substantially all the Debtor's assets.  As a result of those discussions the Trustee filed a second (i) *Motion to Sell Debtor's Assets Outside of the Ordinary Court of Business Free and Clear of all Liens, Claims, Encumbrances, and Interests and Granting Bid Protections* (the "STEEL Sale Motion") [ECF 244], seeking authority to sell the Debtor's assets to STEEL,

subject to higher and better offers, and (ii) a *Motion for Entry of an Order (I) Scheduling a Hearing on the Approval of the Sale of Substantially all of the Debtor's Assets Free and Clear of all Encumbrances, (II) Approving Certain Bidding Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* (the "Bid Procedures Motion") [ECF 246] seeking *inter alia* approval to conduct an auction for the Debtor's assets, and designating STEEL as the stalking horse bidder.

13.    On June 13, 2025, STEEL filed a *Notice of Issuance of Subpoena for Document Production of International Investments LTD* [ECF 240] seeking certain documents from International Investments, including documents evidencing any consideration passing between International Investments and Blitz during the period October 1, 2014, through May 30, 2025.  In response to the subpoena, International Investments produced documents showing wire transfers from Rohleder, Inc. to Dan Bilzerian and Bilzerian Entertainment, LLC, from November 22, 2022, to September 20, 2023.  Attached as **Exhibit 2**, are true and correct copies of the documents produced by International Investments and BATES labeled "IntInv000059 – IntInv00066."  These documents consist of 8 outgoing wire confirmations showing 8 wire transfers totaling $3,800,000.  These outgoing wire confirmations correspond to the alleged loans from International Investments to Blitz. However, the wire transfers were not from International Investment nor were they paid to Blitz.  Rather, the wire transfers were from Rohleder, Inc. to Dan Bilzerian.  *Id.*

### III. Memorandum of Law

**General Unsecured Claims Under 11 U.S.C. § 502(a)**

9.    Section 502(a) provides that a proof of claim "is deemed allowed, unless a party in interest … objects."  *Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.),* 178 B.R. 222, 225 (B.A.P. 9th Cir. 1995) (citing *Whitney v. Dresser*, 200 U.S. 532, 534-35 (1906)).  Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time.  See *In re Consolidated Pioneer Mortg.,* 178 B.R. at 225 (citing *In re Thompson*, 965 F.2d 1136, 1147 (1st Cir. 1992), *In re Kolstad*, 928 F.2d 171, 174 (5th Cir. 1991), *cert. denied*, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439

4

(1991)).  Section 502 and Bankruptcy Rule 3007 permit a party in interest to object to a filed proof of claim.  An objection to a proof of claim initiates a contested matter.  *See* 11 U.S.C. § 502(b); Fed. R. Bankr. P. 3007(a); Local Rule 3007(c).

10.    The Ninth Circuit Court of Appeals has described the shifting burdens of proof with respect to objections to proofs of claim.

> Inasmuch as Rule 3001(f) and section 502(a) provide that a claim or interest as to which proof is filed is "deemed allowed," the burden of initially going forward with the evidence as to the validity and the amount of the claim is that of the objector to that claim.  In short, the allegations of the proof of claim are taken as true.  If those allegations set forth all the necessary facts to establish a claim and are not self-contradictory, they prima facie establish the claim.  Should objection be taken, the objector is then called upon to produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.  **But the ultimate burden of persuasion is always on the claimant.**

*Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy,* § 502.02, at 5502-22 (15th ed. 1991); footnotes omitted; emphasis added).  Stated another way, "[i]f the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consolidated Pioneer Mortg.,* 178 B.R. at 226.

11.    The Trustee objects to POC 2 as both untimely and not a valid claim against the Debtor or the Estate.

### POC 2 was filed more than a year after the Bar Date

12.    Section 502(b)(9) provides that a claim shall be allowed, "except to the extent that proof of such claim is not timely filed…."  There is no doubt that POC 2 was filed after the Bar Date.  POC 2 was filed on May 30, 2025 – more than 15 months after the Bar Date.

13.    There is also no doubt that International Investments had actual knowledge of the bankruptcy case well before the Bar Date.  No other evidence is required than the Chapter 11 DIP Financing Motion that International Investments attaches to POC 2.  The Chapter 11 DIP Financing Motion sought to approve a post-petition financing agreement between the Debtor and International

Investments.  Clearly, International Investments had knowledge of the bankruptcy case well before the Bar Date when they negotiated the proposed DIP financing.

14.      After this Court denied the Chapter 11 DIP Financing Motion, International Investments either intentionally chose not to file a proof of claim or was completely negligent.  This Court is not required to determine why International Investments did not timely file a proof of claim, but to simply find that they had actual knowledge and chose not to timely file a claim.

*The Chapter 11 DIP Financing Motion does not constitute an informal claim*

15.      Implicitly acknowledging that POC 2 was untimely, International Investments asserts that POC 2 simply amends it previous "informal claim."  The informal claim to which International Investments refers is the Debtor's Chapter 11 DIP Financing Motion.

16.      The Ninth Circuit recognizes that, when equity requires, certain documents may constitute an informal proof of claim.  *Dicker v. Dye (In re Edelman)*, 237 B.R. 146, 151-54 (9th Cir. BAP 1999).  For example, a creditor can make an informal claim through (1) a disclosure statement filed by the creditor describing how its claim would be paid by the debtor, *In re Holm*, 931 F.2d  at 623; (2) a complaint for relief with attachments, *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F2d 1374, 1381-82 (9th Cir. 1985); or (3) a district court complaint combined with a notification that the case would be removed to the bankruptcy court, *Sambo's Rests., Inc. v. Wheeler (In re Sambo's Rests., Inc.)*, 754 F.2d 811, 815-16 (9th Cir. 1985).  The focus is on the content of the document and whether the document could reasonably be construed to show that the Creditor has a claim against the estate and intends to hold the estate liable.   *Hodges v. Casey (In re Hero Nutritionals, LLC)*, No. CC-25-1024-CFS (B.A.P. 9th Cir. Aug. 13, 2025).

17.      The Ninth Circuit has two basic requirements for a creditor to make an informal proof of claim: (1) the document "must state an explicit demand showing the nature and amount of the claim against the estate," and (2) the document must "evidence an intent to hold the debtor liable." *In re Sambo's Rests., Inc.,* 754 F.2d at 815.  International Investments has not filed any document that meets

these requirements - the document it claims to be its informal proof of claim asserts no intent to hold the estate liable.

18.    The  Debtor's Chapter 11 DIP Financing Motion  falls well short of evidencing an intention by International Investments to hold the Debtor liable for its alleged claim.  The 14-page motion and the 8-page proposed order mention International Investments' alleged claim only once in paragraph 7 of the motion:

> "Debtor's current liabilities consist of accounts payable in the aggregate amount of approximately \$98,817 and amounts due on loans in the aggregate amount of approximately \$4,191,122, including a loan of \$3,937,803 owed to the Lender."

*Chapter 11 DIP Financing Motion,* p.6.

21.    The motion was filed by the Debtor – not International Investments.  That language fails to state an intention by International Investments to hold the estate liable.  In fact, the summary of material provisions of the proposed DIP loan attached to the motion state "N/A" in both sections regarding "Adequate protection for pre-petition claims" and "Determination re: pre-petition lien/claim."  International Investments chose not to assert or seek accommodations for its pre-petition claim in the Chapter 11 DIP Financing Motion.

*The Debtor's Schedules do not constitute an informal claim*

22.    The Debtor scheduled International Investments with an unsecured claim in the amount of \$3,937,803.91.  The Ninth Circuit has held that a debtor's schedules do not constitute an informal proof of claim because the schedules do not show an intent by the creditor to hold the debtor liable for the debt.  *Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189 (9th Cir. 2016).

23.    If all it takes is a statement by a debtor that a claim is owed to a creditor, every scheduled claim not identified as contingent, unliquidated or disputed would constitute an informal proof of claim. That cannot be true as it would nullify provisions of the Bankruptcy Code.

*International Investments' claims asserted in POC 2 are not valid against the Debtor*

24.    POC 2 is allegedly based upon money loaned by International Investments to the

Debtor. However, POC fails to attach any evidence of such. There is no evidence that International Investments loaned money to Blitz, and no evidence that Blitz ever received any money from International Investments. In fact, as shown in Exhibit 2, the documents International Investments produced to STEEL show that the money International Investments allegedly loaned to Blitz was in fact sent by a company called Rohleder Inc.[1] to Dan Bilzerian. The money was not sent by International Investments and was not received by Blitz.

25.    POC 2 lacks sufficient evidence to document a claim by International Investments against the Debtor and should therefore be denied.

**CONCLUSION**

26.    POC No. 2 should be disallowed in its entirety. International Investments waited more than fifteen (15) months after the bar date to file a proof of claim. Only after the Trustee filed an amended sale motion seeking approval to sell the Debtor's assets to STEEL did International Investments elect to file its claim. This delay underscores the lack of diligence and prejudice to the Estate.

27.    Moreover, International Investments' reliance on the doctrine of informal proof of claim is misplaced. It cannot identify any document that (i) asserts a claim against the Debtor, and (ii) demonstrates an intent to hold the Debtor liable for such a claim - both of which are required under controlling Ninth Circuit precedent.

28.    Finally, International Investments has failed to provide any competent evidence showing that it ever loaned funds to the Debtor or that any debt is owed. In the absence of credible documentation or proof, its purported claim lacks both factual and legal foundation and must therefore be denied.

---

[1] The wires from Rohleder Inc. to Dan Bilzerian were authorized by Scott Rohleder

8

## REQUEST FOR RELIEF

WHEREFORE, based upon the foregoing, the Trustee respectfully requests that this Court deny POC 2 in its entirety and grant the Trustee such other relief as this Court deems appropriate.

Dated this 6th day of November 2025

**DIAMOND MCCARTHY LLP**

 /s/ Christopher D. Johnson
ALLAN B. DIAMOND, ESQ.
(*pro hac vice admitted*)
CHRISTOPHER D. JOHNSON, ESQ.
(*pro hac vice admitted*)
2200 Post Oak Blvd., Suite 1000
Houston, Texas 77056

*Counsel for Brian Shapiro, the Chapter 7 Trustee*

9

### CERTIFICATE OF SERVICE

I hereby certify that pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the foregoing document was electronically filed on November 6, 2025, and served to all parties and attorneys who are registered to receive electronic notice in this case and by electronic transmission to counsel for International Investments, Ltd., Ryan Works at ryan@abwfirm.com.

_/s/ Christopher D. Johnson_

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1    BLITZ NV, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  District of Nevada

Case number   23-13871-NMC

Official Form 410

# Proof of Claim

04/25

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. **Who is the current creditor?** | International Investments, Ltd. |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. **Has this claim been acquired from someone else?** | ☑ No |
| --- | --- |
| | ☐ Yes.  From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Andersen Beede Weisenmiller | International Investments, Ltd. |
| Name | Name |
| 3199 E Warm Springs Rd., Ste 400 | 858 Zenway Blvd. |
| Number        Street | Number        Street |
| Las Vegas            NV        89120 | Frigate Bay, St Kitts |
| City                State              ZIP Code | City                State              ZIP Code |
| Contact phone  702-522-1992 | Contact phone |
| Contact email  ryan@abwfirm.com | Contact email |

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| 4. **Does this claim amend one already filed?** | ☐ No | | |
| --- | --- | --- | --- |
| | ☑ Yes.  Claim number on court claims registry (if known) __Informal__ | Filed on | 10/03/2023 |
| | | | MM / DD / YYYY |

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
| --- | --- |
| | ☐ Yes.  Who made the earlier filing? |

Official Form 410                              **Proof of Claim**                              page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____3,972,111.11 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | **Amount entitled to priority** |
| | ☐ Yes. *Check one:* | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐  I am the creditor.

☑  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    05/30/2025
                    MM / DD / YYYY

/s/ Ryan A. Andersen
Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Ryan A. Andersen, Esq. | | |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Andersen Beede Weisenmiller | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 3199 E Warm Springs Rd, Ste 400 | | |
| | Number        Street | | |
| | Las Vegas | NV | 89120 |
| | City | State | ZIP Code |
| Contact phone | 702-522-1992 | Email | ryan@abwfirm.com |

**International Investments, Ltd**
**Summary of Funds Advanced Under $4,000,000 Blitz Line of Credit**

Interest Rate:                10%

| Date | Amount | Days | Daily Interest | Accrued Interest | Total |
|---|---|---|---|---|---|
| 11/23/2022 | 500,000.00 | 287.00 | 138.89 | 39,861.11 | 539,861.11 |
| 1/5/2023 | 500,000.00 | 244.00 | 138.89 | 33,888.89 | 533,888.89 |
| 1/30/2023 | 500,000.00 | 219.00 | 138.89 | 30,416.67 | 530,416.67 |
| 3/22/2023 | 500,000.00 | 168.00 | 138.89 | 23,333.33 | 523,333.33 |
| 4/17/2023 | 500,000.00 | 142.00 | 138.89 | 19,722.22 | 519,722.22 |
| 5/17/2023 | 500,000.00 | 112.00 | 138.89 | 15,555.56 | 515,555.56 |
| 7/12/2023 | 600,000.00 | 56.00 | 166.67 | 9,333.33 | 609,333.33 |
| 9/23/2023 | 200,000.00 | - | 55.56 | - | 200,000.00 |
| **Total** | **$ 3,800,000.00** | | | **$ 172,111.11** | **$ 3,972,111.11** |

# Commercial Line of Credit and Promissory Note

**Loan Purpose:** Line of credit for working capital

**Loan Amount:** USD $4,000,000

**Loan Term:** 24 months

**Interest Rate:** 10% Fixed

**Effective Date:** January 1, 2023

**Place of Loan:** St. Kitts

**BORROWER :**
Blitz NV, LLC
5990 W. Patrick Lane
Las Vegas, NV 89118

**LENDER:**
International Investments, Ltd.
858 Zenway Blvd
Frigate Bay, St Kitts

**LINE OF CREDIT AGREEMENT AND NOTE.** This Commercial Line of Credit Agreement and Note will be referred to in this document as the "Agreement".

**LENDER.** "Lender" means **International Investments, Ltd.** whose address is **858 Zenway Blvd, Frigate Bay, St Kitts,** and its successors and assigns.

**BORROWER.** "Borrower" means each person or legal entity who signs this Agreement.

**PROMISE TO PAY.** For value received, receipt of which is hereby acknowledged, on or before the Maturity Date, the Borrower promises to pay the principal amount of **Four Million and 00/100 United States Dollars (US$4,000,000.00)** or such lesser amount as shall have been advanced by Lender, from time to time, to or on behalf of Borrower under this Agreement, and all interest and any other charges, including service charges, to the order of Lender at its office at the address noted above in St. Kitts. The Borrower will make all payments in Eastern Caribbean Dollars or United States Dollars at the option of Lender.

**PAYMENT SCHEDULE.** This Agreement will be paid according to the following required payment schedule:

Beginning one year after the first advance, Borrower share remit monthly payments of accrued interest. All payments received by the Lender from the Borrower for application to the



Line of Credit will be applied first to accrued interest and then to principle. The full amount of the balance shall be due on December 31, 2024.

**ADVANCES BY LENDER.** Advances of principal, repayment, and readvances may be made under this Agreement from time to time, but Lender, in its sole discretion and subject to provisions related to obligatory and discretionary advances, may refuse to make advances or readvances hereunder during any period(s) this Agreement is in default. All advances made will be charged to a loan account in Borrower's name on Lender's books, and the Lender shall debit such account for the amount of each advance made to, and credit to such account the amount of each repayment made by Borrower. If the Lender furnishes the Borrower with a statement of Borrower's loan account, such statement shall be deemed to be correct, accepted by, and binding upon Borrower, unless Lender receives a written statement exception from Borrower within 10 days after such statement has been furnished.

**INTEREST RATE AND SCHEDULED PAYMENT CHANGES.** The interest rate on this Agreement will be 10% per annum which is fixed for the entire term of the loan.

Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law. If, however, from any circumstances, Borrower pays interest at a greater rate than the maximum allowed by law, the obligation to be fulfilled will be reduced to an amount computed at the highest rate of interest permissible under applicable law and if, for any reason whatsoever, Lender ever receives interest in an amount which would be deemed unlawful under applicable law, such interest shall be automatically applied to amounts owed, in Lender's sole discretion, or as otherwise allowed by applicable law. An increase in the interest rates will result in a higher payment amount. Interest on this Agreement is calculated on a 365/360 day basis. The unpaid balance of this loan shall, while any Event of Default exists under this Agreement or any other agreement related to the loan, be subject to a Default Rate of interest equal to **15.00%** per annum, and after Maturity, whether by acceleration or otherwise, shall be subject to a Post-Maturity Rate of interest equal to **15.00%** per annum.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of 5% of the amount past due.

**LINE OF CREDIT TERMS.** This is an Obligatory Agreement. The Borrower and Lender agree that the Borrower may request an advance of all or part of the Line of Credit Limit if, at the time of the request, none of the following conditions exist.

- Maximum amount on this Agreement is outstanding.

- The Agreement or any other agreement relating thereto is in default.

- Undersigned makes a request for an advance after the Maturity Date cited above.

- The Lender has deemed itself insecure or there has been a material adverse change of conditions.



- The Lender is precluded by law from making the advance.

**Advances.** Borrower and Lender agree that Borrower may borrow up to the maximum amount of principal more than one time. Additional principal advances thereafter will be made to the Borrower subject to the following conditions:

- Advances of principal, repayment, and readvances may be made under this Agreement from time to time but Lender, in its sole discretion, may refuse to make advances or readvances hereunder during any period(s) this Agreement is in default.

- Advances under this Agreement may be requested orally or in writing by the Borrower or by an authorized person.

- The total of any advance requested plus unpaid principal cannot exceed **Four Million and 00/100 Dollars ($4,000,000.00).**

- All advances made will be charged to a loan account in Borrower's name on Lender's books, and the Lender shall debit such account the amount of each advance made to, and credit to such account the amount of each repayment made by Borrower. Lender shall provide to Borrower periodic statements of Borrower's loan account, which shall be deemed to be correct, accepted by, and binding upon Borrower unless Lender receives a written statement of exception from Borrower within 10 days after such statement is furnished.

**RIGHT OF SET OFF.** To the extent permitted by law, Borrower agrees that Lender has the right to set off any amount due and payable under this Agreement, whether matured or unmatured, against any amount owing by Lender to Borrower including any or all of Borrower's accounts with Lender. This shall include all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. Such right of setoff may be exercised by Lender against Borrower or against any assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor of Borrower, or against anyone else claiming through or against Borrower of such assignee for the benefit of creditors, receiver, or execution, judgment or attachment creditor, notwithstanding the fact that such right of setoff has not been exercised by Lender prior to the making, filing or issuance or service upon Lender of, or of notice of, assignment for the benefit of creditors, appointment or application for the appointment of a receiver, or issuance of execution, subpoena or order or warrant.

**DEFAULT.** Upon the occurrence of any one of the following events (each, an "Event of Default" or "default" or "event of default"), Lender's obligations, if any, to make any advances will, at Lender's option, immediately terminate and Lender, at its option, may declare all indebtedness of Borrower to Lender under this Agreement to be immediately due and payable without further notice of any kind notwithstanding anything to the contrary in this Agreement or any other agreement. (a) Borrower's failure to make any payment on time or in the amount due; (b) any



default by Borrower under the terms of this Agreement or any other agreement, security agreement executed in connection with this Agreement (individually, a "Loan Document" and collectively, the "Loan Documents"); (c) any default by Borrower under the terms of any other loan agreement, security agreement, mortgage or other document in favor of Lender,; (d) the death, dissolution, or termination of existence of Borrower or any guarantor; (e) Borrower is generally not paying Borrower's debts as such debts become due; (f) the commencement of any proceeding under bankruptcy or insolvency laws by or against Borrower or any guarantor or the appointment of a receiver; (g) any default under the terms of any other indebtedness of Borrower to any other creditor; (h) any writ of attachment, garnishment, execution, tax lien or similar instrument is issued against any collateral securing the loan, if any, or any of Borrower's property or any judgment is entered against Borrower or any guarantor; (i) any part of Borrower's business is sold to or merged with any other business, individual, or entity; (j) any representation or warranty made by Borrower to Lender in any of the Loan Documents or any financial statement delivered to Lender proves to have been false in any material respect as of the time when made or given; (k) if any guarantor, or any other party to any agreement or instrument with or in favor of Lender entered into or delivered in connection with the Loan terminates, attempts to terminate or defaults under any such agreement or instrument; (l) Lender has deemed itself insecure or there has been a material adverse change of condition of the financial prospects of Borrower or any collateral securing the obligations owing to Lender by Borrower.

**OTHER APPLICABLE AGREEMENTS.** If this Agreement is secured by a security agreement, mortgage, deed of trust, trust deed, security deed or loan agreement of even or previous date, it is subject to all the terms thereof.

**GENERAL WAIVERS.** To the extent permitted by law, the Borrower severally waives any required notice of presentment, demand, acceleration, intent to accelerate, protest and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Agreement is jointly and severally bound.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**SURVIVAL.** The rights and privileges of the Lender hereunder shall inure to the benefits of its successors and assigns, and this Agreement shall be binding on all heirs, executors, administrators, assigns and successors of Borrower.



**ASSIGNABILITY.** Lender may assign, pledge or otherwise transfer this Agreement or any of its rights and powers under this Agreement without notice, with all or any of the obligations owing to Lender by Borrower, and in such event the assignee shall have the same rights as if originally named herein in place of Lender. Borrower may not assign this Agreement or any benefit accruing to it hereunder without the express written consent of the Lender.

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**GOVERNING LAW AND VENUE.** This Agreement is governed by the laws of St. Kitts. Borrower agrees that it is borrowing funds in St. Kitts with repayment due in St. Kitts, and it stipulates to venue for any litigation arising hereunder to be in St. Kitts. Borrower consents to personal jurisdiction and stipulates to service of any summons or claim by email at **jason@blitznv.com**.

**HEADING AND GENDER.** The headings preceding text in this Agreement are for general convenience in identifying subject matter but have no limiting impact on the text which follows any particular heading. All words used in this Agreement shall be construed to be of such gender or number as the circumstances require.

**ATTORNEYS' FEES AND OTHER COSTS.** If legal proceedings are instituted to enforce the terms of this Agreement, Borrower agrees to pay all costs of the Lender in connection therewith, including reasonable attorneys' fees, to the extent permitted by law.

**By signing this Agreement, Borrower acknowledges reading, understanding, and agreeing to all its provisions and receipt thereof.**

BLITZ NV, LLC

By: Jason Verona
Its Chief Operating Officer

Date: January 1, 2023

INTERNATIONAL INVESTMENTS, LTD

By: GREG GILPIN-PAYNE
Its President

Date: January 1, 2023

BRETT A. AXELROD, ESQ., NV Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ., NV Bar No. 16264
JEANETTE E. McPHERSON, ESQ., NV Bar No. 5423
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
    nkoffroth@foxrothschild.com
    jmcpherson@foxrothschild.com

*[Proposed] Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No. BK-S-23-13871-NMC |
|---|---|
| BLITZ NV, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | **MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; (II) GRANTING LIENS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF** |
| | Hearing Date:  OST PENDING<br>Hearing Time: OST PENDING |

Blitz NV, LLC ("Blitz NV" or "Debtor"), debtor and debtor in possession in the above-captioned case filed under subchapter V of chapter 11 (the "Chapter 11 Case") of the Bankruptcy Code,[1] by and through its undersigned proposed counsel, Fox Rothschild LLP, respectfully submits this motion (the "Motion") for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to sections 105, 362, and 364 of title 11 of the United States Code, 11

---

[1] All references to "chapter" and "section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

1

149210094.3

FOX ROTHSCHILD LLP<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, Nevada 89135<br>(702) 262-6899<br>(702) 597-5503 (fax)

U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001(b) & (c) of the Local Rules of Bankruptcy Practice for the United States Bankruptcy Court, District of Nevada ("Local Rules"): (a) authorizing and approving, among other things, Debtor to: (i) obtain senior secured postpetition financing in the amount of up to $300,000 (the "DIP Loan") from Debtor's largest creditor, International Investments, Ltd. (the "Lender"), and (ii) grant Lender first priority liens on all of its Property (which specifically excludes Avoidance Actions); and (b) granting related relief.

Debtor seeks authorization for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm a plan of reorganization. A copy of the *Debtor-In-Possession Credit Agreement* (the "DIP Agreement"[2]) is attached as **Exhibit 1** to the *Declaration of Jason Verona* (the "Verona Declaration"), filed in support hereof. Debtor is seeking to use the DIP Loan pursuant to a cash budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to the DIP Agreement as **Exhibit B** thereto (the "Initial Cash Budget").

In compliance with Bankruptcy Rule 4001(c)(1)(B), Debtor provides the following additional information regarding the proposed DIP Loan. Nothing in the following summary alters or amends the terms of the DIP Agreement or the proposed Interim or Final Orders, and to the extent of any conflict between the following summary and the DIP Agreement or the proposed Interim or Final Orders, then the DIP Agreement, or the Interim or Final Orders, as applicable, shall control:

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[3] | MATERIAL PROVISIONS OF DIP LOAN |
| --- | --- |
| DIP Agreement, § 2.4(a) & (c) | **Interest Rate**: 10% per annum; Default Rate is 12% per annum. |
| DIP Agreement, § 1.1 (definition of "Maturity Date") | **Maturity**: 5 years after Effective Date of Lender Approved Plan |
| DIP Agreement, § 8.1 | **Events of Default**: include the following: |

[2] Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the DIP Agreement.

[3] The proposed Interim Order is attached hereto as **Exhibit 1**. The proposed Final Order will be submitted before the Final Hearing.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

149210094.3

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[3] | MATERIAL PROVISIONS OF DIP LOAN |
|---|---|
| | (a) Debtor fails to pay Obligations when due, fails to perform any term of DIP Agreement, or Debtor's representations, warranties or statements fail to be true;<br><br>(b) Debtor uses proceeds of Loan to make payments not in compliance with DIP Agreement;<br><br>(c) the occurrence of an "Event of Default" under the Loan Documents;<br><br>(d) the dismissal or conversion of Chapter 11 Case;<br><br>(e) the appointment of trustee (other than subchapter V trustee) or examiner;<br><br>(f) Debtor violates Interim DIP Order or Final DIP Order;<br><br>(g) the entry of an order granting any lien equal or superior to the Lien of the DIP Lender on the Collateral;<br><br>(h) entry of an order confirming a plan of reorganization that is not a Lender Approved Plan;<br><br>(i) entry of an order approving sale of substantially all of Debtor's assets to party other than Lender; and<br><br>(j) Debtor's payment of any prepetition claim other than pursuant to Lender Approved Plan. |
| DIP Agreement, § 2.4(f) Interim Order, ¶¶ 17-18 | **DIP Financing Liens**: Lender will have a lien, pursuant to Bankruptcy Code section 364(c), against all assets of Debtor, whether real or personal, except Avoidance Actions, subject only to the Carve-Out. |
| N/A | **DIP Superpriority Claim**: |
| DIP Agreement, §1.1 (definition of "Commitment Amount") | **Commitment Amount**: up to $300,000 in two Installments: $100,000 upon entry of Interim Order; $200,000 upon entry of Final Order |
| DIP Agreement, § 4.1 | **Borrowing Conditions**: include the following:<br><br>(a) entry of Interim DIP Order and Final DIP Order, as applicable, which remain unstayed;<br><br>(b) no Material Adverse Effect; |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

149210094.3

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[3] | MATERIAL PROVISIONS OF DIP LOAN |
|---|---|
| | (c) no Default upon making Loan; <br><br> (d) all representations and warranties are true; <br><br> (e) Lender has approved Initial Cash Budget; and <br><br> (f) Lender has approved use of Loan proceeds. |
| DIP Agreement, § 1.1 (definition of "Carve-Out") Interim Order, ¶ 19 | **Carve-Out**: means (i) the Subchapter V Trustee Fees; and (ii) an amount not exceeding $75,000, which may be used after Event of Default to pay the allowed fees and expenses of Debtor's retained professionals. |
| *Types of Provisions Identified in Bankruptcy Rules 4001(c)(1)(B)(i) through (xi)* | |
| DIP Agreement, § 2.4(f) Interim Order, ¶¶ 18-19 | **(i) Grant of priority/lien under 11 U.S.C. § 364(c) or (d)**: Lender will have a lien, pursuant to Bankruptcy Code section 364(c), against all assets of Debtor, whether real or personal, except Avoidance Actions, subject only to the Carve-Out. |
| N/A | **(ii) Adequate protection for pre-petition claims**: |
| N/A | **(iii) Determination re: pre-petition lien/claim**: |
| DIP Agreement, § 8.2(ii) Interim Order, ¶ 21 | **(iv) Waiver/modification of the automatic stay**: For purposes of the Lender's exercise of its remedial rights upon Event of Default, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be automatically vacated and modified following three (3) Business Days' prior written notice (the "Stay Notice Period") to Borrower, US Trustee, and the Subchapter V Trustee; provided that Lender consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall remain in effect pending such a hearing if requested by Debtor prior to the expiration of the Stay Notice Period. |
| DIP Agreement, § 8.1(d)(v) & (vii) | **(v) Waiver/modification of rights re: chapter 11 plan, cash collateral or post-petition financing**: Events of default include: (a) entry of an order confirming a plan of reorganization that is not a Lender Approved Plan; and (b) the entry of an order granting any lien equal or superior to the Lien of the DIP Lender on the Collateral. |
| N/A | **(vi) Confirmation/disclosure statement deadlines**: |
| N/A | **(vii) Wavier/modification of lien rights under non-bankruptcy law**: |
| N/A | **(viii) Release of estate cause of action**: |

4

149210094.3

| CITATION TO DIP AGREEMENT/ INTERIM ORDER[3] | MATERIAL PROVISIONS OF DIP LOAN |
|---|---|
| | |
| N/A | **(ix) Indemnification**: |
| | |
| N/A | **(x) 506(c) waiver**: |
| | |
| N/A | **(xi) Lien/claim on avoidance actions:** |

This Motion is made and based upon the following memorandum of points and authorities, the Verona Declaration, the papers and pleadings on file with the Court in the Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

Dated this 3rd day of October, 2023.

FOX ROTHSCHILD LLP

By: */s/ Brett A. Axelrod*
BRETT A. AXELROD, ESQ. (5859)
NICHOLAS A. KOFFROTH, ESQ. (16264)
JEANETTE E. MCPHERSON, ESQ. (5423)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

*[Proposed]Counsel for Debtor*

## POINTS AND AUTHORITIES

### I.  JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is Bankruptcy Code §§ 105, 362, and 364, Bankruptcy Rules 2002, 4001(c) and 9014, and Local Rules 4001(b) and (c).

4. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

/ / /

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

149210094.3

## II.     BACKGROUND

**A.     Debtor's Business And Events Leading Up To Bankruptcy**

5.     Debtor was formed in 2014 for the purpose of operating businesses related to its trademarks and to sell its marketing services to help promote its customers' products. Debtor has 6 employees, including a chief operating officer and accountant, most of whom have been with Debtor for many years. See Verona Declaration, ¶ 4.

6.     Debtor's current assets consist of cash in its bank accounts in the aggregate amount of approximately $34,011, trademarks and receivables due for loans to affiliated entities in the aggregate amount of approximately $9,374,909. Debtor's fixed assets consist of certain leasehold improvements in the aggregate amount of approximately $117,330, and investments in the aggregate amount of approximately $115,000. See Verona Declaration, ¶ 5.

7.     Debtor's current liabilities consist of accounts payable in the aggregate amount of approximately $98,817, and amounts due on loans in the aggregate amount of approximately $4,191,122, including a loan of $3,937,803 owed to the Lender. See Verona Declaration, ¶ 6.

8.     In March 2017, Debtor entered into an agreement (the "Steel Agreement") with Steel Supplements, Inc. ("Steel"), whereby Debtor would provide promotion, publicity and endorsement of Steel's products in exchange for ten percent (10%) of gross sales (bringing Debtor approximately $500,000 per month). On December 14, 2020, Steel filed a complaint against Debtor, alleging that Debtor had breached the Steel Agreement. Debtor answered and counterclaimed, asserting, among other things, that Steel had breached the Steel Agreement. The parties have been embroiled in litigation, costing Debtor over $1 million in legal fees and costs, depleting Debtor's cash resources and requiring Debtor to file the Chapter 11 Case to stay creditors from collection efforts until it has time to liquidate its claim against Steel and generate income from other business activities. See Verona Declaration, ¶ 7.

/ / /

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6

149210094.3

**B.      Debtor's Bankruptcy Filing**

9.      On September 6, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case in this Court. See Chapter 11 Case Docket.

10.      Debtor is continuing in possession of its property and is operating and managing its business as a debtor in possession, pursuant to Bankruptcy Code section 1184. See id.

11.      On September 11, 2023, the United States Trustee appointed Brian Shapiro as the Subchapter V Trustee. See Docket No. 11.

**C.      Debtor's Need for the DIP Loan**

12.      Debtor projects that it will not generate enough income to administer and preserve the value of its Chapter 11 Estate through confirmation of its plan of reorganization ("Plan"). See Verona Declaration, ¶ 8.

13.      Debtor approached six different institutions for a DIP loan, including Lendzi, Credibly, Funding Circle and Seek Capital. All of the institutions declined. Only the DIP Lender, International Investments, was willing to make a DIP loan, and in the amount that Debtor requires to be able to emerge from bankruptcy. See Verona Declaration, ¶ 9.

14.      As set forth in the Budget attached as Exhibit B to the DIP Agreement, Debtor requires the DIP loan to make payroll, pay employee health benefits, and cover security and landscape maintenance costs (in addition to the administrative costs of the bankruptcy). In the event that the DIP Loan is not approved, Debtor will be unable to make payroll and the employee benefits will be revoked, causing Debtor's employees to seek employment elsewhere. Debtor does not believe that it can replace its employees without great expense and delay. See Verona Declaration, ¶ 10.

### III.      RELIEF REQUESTED

15.      By this Motion, Debtor seeks authorization to obtain the DIP Loan from Lender pursuant to the DIP Agreement. The Lender is Debtor's largest creditor, with an unsecured claim of approximately $3,937,803. See Verona Declaration, ¶ 11.

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7

149210094.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16.     Debtor is seeking to use DIP Loan pursuant to the Initial Cash Budget, a copy of which (pertaining to the first 13-week period) is attached to the DIP Agreement as Exhibit B thereto.

17.     Debtor anticipates filing a Plan that will provide a distribution to all creditors.  As indicated by the Initial Cash Budget, Debtor projects that it will need to borrow up to $300,000 under the DIP Loan in order to confirm the Plan by the end of this year.  Accordingly, timely approval of the proposed DIP Loan is critical to Debtor's timely emergence from Chapter 11.  See Verona Declaration, ¶ 12.

## IV.     LEGAL ARGUMENT

**A.     Debtor Has Satisfied the Legal Requirements for Approval of the Loan Under Section 364(c) of the Bankruptcy Code.**

18.     Debtor proposes to obtain financing by providing the Lender with a first priority Lien on all of Debtor's Property (which is defined to specifically exclude Avoidance Actions), pursuant to section 364(c)(2) of the Bankruptcy Code.  All of Debtor's Property is currently unencumbered.  See Verona Declaration, ¶ 13.

19.     The statutory requirement for obtaining postpetition credit secured by liens on unencumbered property is a finding, made after notice and a hearing, that the debtor-in-possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c)(2).[4]

20.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

---

[4] Section 364(c) of the Bankruptcy Code provides that:

> (c)     If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under § 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
> (1)     with priority over any and all administrative expenses of the kind specified in § 503(b) or 507(b) of this title;
> (2)     secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3)     secured by a junior lien of property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

8

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

    a        the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

    b        the credit transaction is necessary to preserve the assets of the estate; and

    c        the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

*In re Ames Dept. Stores, Inc.,* 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hospital*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

21. Consistent with this authority, and for the reasons discussed below, Debtor respectfully submits that the Court should approve Debtor's decision to enter into the DIP Agreement.

    **1.    No Comparable Alternative To The Financing Provided Under the DIP Agreement Is Currently Available.**

22. As noted in the Verona Declaration, during the period following the Petition Date, Debtor attempted to identify other sources of post-petition financing to determine whether Debtor could obtain debtor in possession financing on better terms. However, given Debtor's current financial condition, Debtor has been unable to obtain financing on more favorable terms than those provided in the DIP Agreement. See Verona Declaration, ¶ 14.

23. In fact, Debtor has had contact with at least six other prospective lenders to try to obtain funding. In the end, the only (and best) offer received was the current proposed arrangement with the Lender. See Verona Declaration, ¶ 15.

24. The Lender was unwilling to extend unsecured credit in exchange for an administrative priority claim. See Verona Declaration, ¶ 16.

25. On the other hand, the Lender is not charging a commitment fee, and the DIP Loan is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the Effective Date of a Lender Approved Plan. See Verona Declaration, ¶ 17.

26. Notably, section 364 "imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re*

149210094.3

*Snowshoe Co., Inc.*), 789 F.2d 1085, 1088 (4th Cir. 1986) (affirming DIP loan priming lien where trustee had unsuccessfully sought financing from "other financial institutions in the immediate geographic area"); *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) ("Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."); *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (authorizing DIP loan priming lien where debtor contacted three other lenders; observing that "it would be unrealistic and unnecessary to require Debtor to conduct such an exhaustive search for financing"), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989); *In re Ames Dep't Stores*, 115 B.R. at 40 (authorizing DIP loan superpriority claim where debtor contacted four other lenders).

27. Debtor respectfully submits that, given the unsuccessful efforts made to seek attractive alternatives, it has demonstrated that post-petition financing is not available on a more favorable basis. See Verona Declaration, ¶ 18.

28. In summary, Debtor has made a concerted, good-faith effort to obtain credit on the most favorable terms that are available. As explained above, the required financing was not available on an unsecured basis, and the terms of the DIP Loan were, on the whole, the most favorable terms available to Debtor. The proposed terms of the DIP Loan are fair, reasonable and adequate given the current credit market and Debtor's circumstances, and the fact that such terms neither: (a) adversely impact the conduct of this Chapter 11 Case or prejudice the powers and rights that the Bankruptcy Code confers on Debtor for the benefit of all creditors; nor (b) prevent motions by parties-in-interest from being decided on their merits.

29. Likewise, the terms and conditions of the DIP Loan have been the subject of extensive negotiations conducted in good faith and at arm's length, and are fair and reasonable under the circumstances. See Verona Declaration, ¶ 19. Consequently, the Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of such agreement.

**2.      Approval of the DIP Loan Is In the Best Interests of Debtor's Estate.**

30. Moreover, without the DIP Loan, Debtor would be unable to fund the cost of administering its Chapter 11 Case or make any distribution to its existing creditors, likely eliminating its ability to reorganize altogether. See Verona Declaration, ¶ 20.

10

149210094.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

31. Debtor expects to file its Plan shortly. Among other things, Debtor anticipates that the Plan will provide for payment of all expenses involved in administering the Chapter 11 Case, and for a distribution to all other creditors. Absent the DIP Loan, Debtor will not be able to confirm the Plan. See Verona Declaration, ¶ 21.

32. The Court should approve the DIP Loan because: (i) Debtor is unable to obtain financing on an unsecured basis; (ii) the proposed financing is on market terms; and (iii) approval of the DIP Loan is in the best interests of Debtor's estate.

**3. Debtor's Decision to Enter into the DIP Agreement Is Supported by Sound Business Judgment.**

33. Courts generally give broad deference to the business decisions of a debtor. *See, e.g., Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). In particular, a bankruptcy court should defer to a debtor's reasonable business judgment regarding the need for funds, so long as the proposed financing agreement does not contain terms that either leverage the bankruptcy process or that benefit a third party rather than the bankruptcy estate. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that an interim loan, receivables facility and asset-based facility were approved because they "reflect[ed] sound and prudent business judgment . . . , [were] reasonable under the circumstances and in the best interest of [the debtor] and its creditors"). As explained by the bankruptcy court in *In re Ames Department Stores, Inc.*, 115 B.R. 34 (Bankr. S.D.N.Y. 1990):

> [A] court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.

*Id.* at 40.

34. Here, Debtor's decision to enter into the DIP Loan represents a reasonable exercise of business judgment. As demonstrated by the Initial Cash Budget, Debtor has an immediate need for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm its Plan. Debtor and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

11

Lender negotiated the terms of the proposed DIP Loan at arms' length in good faith, and Lender was represented by independent counsel. *See* Verona Declaration, ¶ 22. Lender is willing to provide the DIP Loan on acceptable terms. Debtor anticipates that its Plan will provide for payment in full of administrative expense creditors and a distribution to all other creditors. Such a Plan will benefit creditors and further establishes the sound business judgment of Debtor in entering into the proposed DIP Loan. See Verona Declaration, ¶ 23.

35. Without the DIP Loan, Debtor would not be able to fund the costs of administering its Chapter 11 Case and proceed with any plan of reorganization. Instead, Debtor would be faced with the potential for administrative insolvency followed by a liquidation. See Verona Declaration, ¶ 24. Given the choice between these two alternatives, Debtor prudently negotiated the DIP Agreement with Lender to ensure that Debtor would have the necessary funding to bring the Chapter 11 Case to a successful conclusion. Therefore, the Court should approve Debtor's decision to enter into the DIP Agreement as an exercise of sound business judgment.

**4. The Terms of the DIP Loan are Reasonable Under The Circumstances and Should be Approved.**

36. The terms of the DIP Agreement are similar to those often included in complex financing arrangements. Indeed, the DIP Agreement and the proposed Interim Order reflect the give and take that result from complex financing negotiations. *See* Verona Declaration, ¶ 25. Courts have recognized that a debtor often must make significant concessions in exchange for financing. *See, e.g., In re Ellingsen MacLean Oil Co.*, 65 B.R. 358, 365 (Bankr. W.D. Mich. 1986), aff'd, 834 F.2d 599 (6th Cir. 1987) (chapter 11 postpetition financing is "fraught with dangers for creditors"). Accordingly, courts recognize that a debtor may need to "enter into a hard bargain with a creditor in order to acquire the needed funds to complete reorganization." *Id.* at 365.

37. As noted above, the terms of the DIP Agreement are favorable under the circumstances. This is not a case where an over-reaching (and/or oversecured) pre-petition lender seeks to enhance its collateral package at the expense of unsecured creditors. In fact, the DIP Loan does not have a commitment fee, is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

12

Effective Date of a Lender Approved Plan. The Lender simply requested reasonable protections to secure repayment of the DIP Loan. *See* Verona Declaration, ¶ 26.

38. Similarly, the interest rate of ten percent (10%) is reflective of the competitive rates available in the market for financing secured by a lien on assets that may not be readily convertible to cash. See Verona Declaration, ¶ 27.

39. Furthermore, the DIP Agreement provides for a reasonable Carve-Out, which covers fees and expenses of professionals employed by Debtor. Lenders often agree to subordinate or "carve-out" from their collateral funds to pay professionals. *See Harvis Trien & Beck, P.C. v. Federal Home Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 187 B.R. 856, 860 (Bankr. E.D.N.Y. 1995) (court advised that if professionals really want to be paid they had best insist upon a "real carve out"); *In re Ames*, 115 B.R. at 40 (noting practice of district to insist on carve-out for fees in order to preserve adversary system).

40. The Events of Default and conditions to borrowing are customary in postpetition financings, as is Lender's ability to exercise remedies upon the occurrence of an Event of Default. Lender does not unduly seek to control or restrict Debtor's ability to prosecute the Chapter 11 Case. Given Debtor's circumstances, Debtor believes the terms of the DIP Loan are fair, reasonable and adequate, under the circumstances. *See* Verona Declaration, ¶ 28. The Court should approve the DIP Loan based on its fair and reasonable terms.

## V. NOTICE

41. Notice of this Motion is being given by either electronic mail, U.S. Mail or the Court's ECF noticing to the following parties or their counsel: (a) the Office of the United States Trustee for the District of Nevada; (b) the Subchapter V Trustee; (c) counsel to Lender; (d) Debtor's known twenty largest unsecured creditors; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Debtor respectfully submits that no further notice is necessary.

/ / /

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13

149210094.3

# VI. CONCLUSION

WHEREFORE, based upon all the foregoing, as set forth in this Memorandum, the Motion, the Verona Declaration and all other papers, documents, or other evidence submitted in support of the Motion, Debtor respectfully requests that the Court grant the Motion in its entirety and  enter the Interim Order authorizing Debtor to borrow on an interim basis under the terms of the Loan Documents (as Loan Documents are defined in the DIP Agreement), and grant to Debtor such other relief as the Court deems necessary and appropriate.

Dated this 3rd day of October 2023.

**FOX ROTHSCHILD LLP**

By: */s/ Brett A. Axelrod*

BRETT A. AXELROD, ESQ. (5859)
NICHOLAS A. KOFFROTH, ESQ. (16264)
JEANETTE E. MCPHERSON, ESQ. (5423)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

*[Proposed]Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

14

149210094.3

# EXHIBIT 1

## PROPOSED INTERIM ORDER

BRETT A. AXELROD, ESQ., NV Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ., NV Bar No. 16264
JEANETTE E. McPHERSON, ESQ., NV Bar No. 5423
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
　　　　nkoffroth@foxrothschild.com
　　　　jmcpherson@foxrothschild.com

*[Proposed] Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No. BK-S-23-13871-NMC |
|---|---|
| BLITZ NV, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | **INTERIM ORDER: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; (II) GRANTING LIENS (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF** |
| | Hearing Date:  OST PENDING |
| | Hearing Time: OST PENDING |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

149210094.3

The Court, having reviewed and considered the *Motion* (the "Motion"[1]) filed by Blitz NV, LLC ("Debtor") for entry of an interim order (the "Interim Order") and a final order (the "Final Order") pursuant to Bankruptcy Code §§ 105, 362, and 364, Bankruptcy Rules 2002, 4001(c) and 9014, and Local Rules 4001(b) and (c), authorizing and approving, among other things, Debtor to obtain postpetition financing (the "DIP Loan") from International Investments, Ltd. (the "Lender") on a secured basis pursuant to a *Debtor-In-Possession Credit Agreement* (the "DIP Agreement"), and the *Declaration of Jason Verona* filed in support of the Motion, and it appearing that the relief requested is in the best interests of Debtor's estate, creditors and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed and considered all other pleadings and evidence submitted by the parties in connection with the Motion; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having considered the oral arguments of counsel at the hearing held on _____ (the "Hearing"); and the Court having made findings of fact and conclusions of law on the record, which (to the extent not expressly set forth below) are incorporated herein pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Bankruptcy Rule 7052; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

**A.      Background, Jurisdiction and Notice.**

1.      On September 6, 2023 (the "Petition Date"), Debtor commenced the above-captioned bankruptcy case (the "Chapter 11 Case") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.  Debtor is continuing to operate its businesses as a debtor-in-

---

[1] Capitalized terms used, but not defined in this Order, shall have the meaning ascribed to such terms in the Motion.

149210094.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner, or statutory committee has been appointed (other than a subchapter V trustee).

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Debtor has complied with the requirements of Bankruptcy Rules 4001(c) and 4001(d), and Local Rules 4001(b), 4001(c) and 9006 by serving the Motion and providing notice of the Hearing to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) counsel to Lender; (iv) the federal and state governmental units required by Local Bankruptcy Rule 2002(b); (v) Debtor's known twenty largest unsecured creditors; and (vi) all other parties requesting notice pursuant to Bankruptcy Rule 2002. Given the nature of the relief sought in the Motion, the Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with Bankruptcy Rule 4001 in all respects.

**B.** **Findings Regarding the DIP Loan Based on the Record at the Hearing.**

4. Debtor's ability to obtain the DIP Loan is critical to its ability to fund the costs of administering the Chapter 11 Case and to confirm its Plan. Debtor's access to sufficient liquidity through the incurrence of the DIP Loan under the terms of this Interim Order is vital to Debtor's successful reorganization. Consequently, without the ability to obtain DIP Loan to the extent authorized pursuant to this Interim Order, Debtor and its estate would suffer immediate and irreparable harm.

5. Debtor is unable to obtain adequate unsecured credit allowable under Bankruptcy Code sections 364(b) and 503(b)(1). The DIP Loan reflects the most favorable terms available to Debtor. Debtor requires the DIP Loan to satisfy its postpetition liquidity needs.

6. Lender has indicated a willingness to provide Debtor with the DIP Loan, but solely on the terms and conditions set forth in this Interim Order and in the Loan Documents (as defined in the DIP Agreement). After considering all alternatives, Debtor has concluded, in an exercise of its sound business judgment, that the financing to be provided by Lender pursuant to the terms of this Interim Order and the Loan Documents represents the best financing presently available to Debtor.

149210094.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7. The security interests and liens granted pursuant to this Interim Order to Lender are appropriate under Bankruptcy Code section 364(c)(2).

8. Entry of this Interim Order is in the best interest of Debtor, the estate and creditors. The terms of the Loan Documents are fair and reasonable under the circumstances, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

9. Debtor and Lender have negotiated the terms and conditions of the Loan Documents and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to Debtor pursuant to this Interim Order shall be, and hereby is, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of Bankruptcy Code section 364(e).

10. Based on the foregoing, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor;

**C. Disposition.**

11. The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order. This Interim Order shall become effective immediately upon its entry. To the extent the terms of the Loan Documents differ in any material respect from the terms of this Interim Order, this Interim Order shall control.

**D. Authorization of the DIP Loan and Entry Into the Loan Documents.**

12. The terms and conditions of the DIP Agreement are hereby approved. Debtor is hereby authorized to enter into the Loan Documents, including the DIP Agreement and such additional documents, instruments and agreements as may be reasonably required by Lender to implement the terms or effectuate the purposes of this Interim Order. Immediately upon entry of this Interim Order, Debtor is hereby authorized to borrow under the Loan Documents a total of one hundred thousand dollars ($100,000.00), in accordance with this Interim Order, the DIP Agreement, and the other Loan Documents.

13. Debtor is hereby authorized to incur the Obligations solely in accordance with the terms and conditions set forth in the DIP Agreement and this Interim Order.

4

149210094.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**E.      Loan Obligations.**

14.      Upon execution and delivery of the Loan Documents, the Loan Documents shall constitute valid, binding and continuing obligations of Debtor, enforceable against Debtor in accordance with the terms thereof.  No obligation, payment, transfer or grant of security under the Loan Documents or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

15.      The Loan: (i) shall bear interest payable at the rates set forth in the DIP Agreement; (ii) shall be secured in the manner specified in Paragraph G below; (iii) shall be payable in accordance with the terms of the Loan Documents; and (iv) shall otherwise be governed by the terms set forth herein and in the Loan Documents.

**F.      Use of Loan Proceeds.**

16.      Debtor may use the Loan pursuant to the terms and conditions set forth in this Interim Order and in the Loan Documents.

**G.      Grant of Liens.**

17.      As security for the full and timely payment of the Obligations, Lender is hereby granted, subject to the Carve-Out, pursuant to Bankruptcy Code section 364(c): (i) valid and duly perfected senior Liens on all Property (collectively, the liens to be granted to Lender are referred to herein as the "DIP Lien" and the collateral subject to such DIP Lien is referred to herein as the "DIP Collateral"); provided that the DIP Lien shall in all instances and respects be subject and subordinate to the Carve-Out.  The DIP Lien shall attach to the DIP Collateral and be binding and enforceable with respect thereto upon entry this Interim Order without further action on the part of Debtor or Lender with respect to the aggregate amount of the Loan.

18.      The DIP Lien shall not be subject to challenge and shall attach and become valid, binding, continuing, enforceable, fully-perfected and non-avoidable by operation of law as of the Petition Date without any further action by Debtor, Lender, or any other person, and without the necessity of execution by Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, deeds of trust, assignment of rents, filings with the

5

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

U.S. Patent and Trademark Office, or other documents. Debtor, upon the request of Lender (i) shall authorize Lender to file and record such financing statements and fixture filings with respect to any DIP Collateral identified by Lender, and (ii) shall take any such other action as reasonably required by Lender with respect to DIP Collateral identified by Lender in order to perfect the DIP Liens granted herein. Lender is authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

**H. Carve-Out.**

19. The DIP Lien shall be subject to carve-out (the "Carve-Out") for: (i) the Subchapter V Trustee Fees; and (ii) an amount not exceeding $75,000.00 in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Borrower that are allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses Lender waives any right to disgorgement).

**I. 11 U.S.C. § 364(e) Protections.**

20. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any Obligations incurred pursuant to this Interim Order or the Loan Documents, or (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Loan Documents with respect to any Obligations. Notwithstanding any such reversal, modification, vacation or stay, any incurrence of Obligations by Debtor pursuant to this Interim Order shall be governed in all respects by the provisions of this Interim Order and the Loan Documents, and Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Bankruptcy Code section 364(e), this Interim Order, and the Loan Documents with respect to incurrence of the Obligations by Debtor.

**J. Vacation of the Automatic Stay.**

21. Notwithstanding Bankruptcy Code section 362, the automatic stay is hereby vacated and modified to the extent necessary to permit Lender, upon the occurrence and during the continuance of an Event of Default and following three (3) business days' prior notice thereof to

6

149210094.3

Debtor (with a copy to the United States Trustee for the District of Nevada, and to the Subchapter V Trustee), and without further order of or application to the Bankruptcy Court to: (i) declare the Obligations immediately due and payable, (ii) declare the Loan or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loan together with accrued interest thereon and any unpaid accrued fees and all other liabilities of Debtor under any Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by Debtor, anything contained herein or in any other Loan Document to the contrary notwithstanding, and (iii) after three (3) business days' prior notice (the "Stay Notice Period") to Debtor (with a copy to the United States Trustee for the District of Nevada, and to the Subchapter V Trustee), and absent order of the Bankruptcy Court to the contrary, exercise any and all remedial rights with respect to the DIP Collateral; *provided that* Lender consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall remain in effect pending such a hearing if requested by Debtor prior to the expiration of the Stay Notice Period.

**K.     Miscellaneous Provisions.**

22.     The provisions of this Interim Order shall be binding upon and inure to the benefit of Lender, Debtor, and their respective successors and assigns.  The provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in the Chapter 11 Case unless otherwise provided therein; (ii) converting the Chapter 11 Case to one under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of this Interim Order and the DIP Agreement.

23.     Debtor is hereby authorized, without further order of this Court, to enter into agreements with Lender providing for (a) non-material modifications to the DIP Agreement, or

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7

149210094.3

(b) any other modifications to the DIP Agreement necessary to conform the DIP Agreement to this Interim Order.

24. To the extent applicable, this Interim Order is not subject to the 14-day stay provision of Bankruptcy Rule 4001(a)(3).

**L. Scheduling Final Hearing.**

25. The Final Hearing will be held by this Court on _____, 2023 at _____ .m. (prevailing Pacific time). Debtor shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for special notice with this Court. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon Debtor's counsel and shall be filed with the Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later than _____.m. (prevailing Pacific time). All replies to objections shall be served on the objecting party and the Notice Parties, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later _____, 2023 at _____.m. (prevailing Pacific Time).

Prepared And Respectfully Submitted By:

**FOX ROTHSCHILD LLP**

By: _____
    BRETT A. AXELROD, ESQ. (5859)
    NICHOLAS A. KOFFROTH, ESQ. (16264)
    JEANETTE E. MCPHERSON, ESQ. (5423)
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135

*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

8

149210094.3

APPROVED/DISAPPROVED

By: _____

BRIAN SHAPIRO
510 S. 8th Street
Las Vegas, NV 89101

*Subchapter V Trustee*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

9

149210094.3

## CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐      The Court has waived the requirement of approval in LR 9021(b)(1).

☐      No party appeared at the hearing or filed an objection to the motion.

☐      I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

     Brian Shapiro               Approved / Disapproved
     Subchapter V Trustee

☐      I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### # #

10

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

149210094.3

BRETT A. AXELROD, ESQ., NV Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ., NV Bar No. 16264
JEANETTE E. McPHERSON, ESQ., NV Bar No. 5423
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: 702-262-6899 / Facsimile: 702-597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
        jmcpherson@foxrothschild.com

*[Proposed] Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-S-23-13871-NMC |
|---|---|
| BLITZ NV, LLC, | Chapter 11 (Subchapter V) |
| Debtor. | **DECLARATION OF JASON VERONA IN SUPPORT OF MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; (II) GRANTING LIENS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF** |
|  | Hearing Date: OST PENDING |
|  | Hearing Time: OST PENDING |

I, Jason Verona, declare as follows:

1.      I am the Chief Operating Officer of Blitz NV, LLC ("Debtor"), debtor and debtor in possession in the above captioned chapter 11 case (the "Chapter 11 Case").

2.      Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.      I make this Declaration in support of Debtor's *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Liens; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Motion"), seeking an order of the Court authorizing and approving, among other things, Debtor to: (i) obtain senior secured postpetition financing in the amount of up to $300,000 (the "DIP Loan")

1

150042422.1

from Debtor's largest creditor, International Investments, Ltd. (the "Lender"), and (ii) grant Lender first priority liens on all of its Property (which specifically excludes Avoidance Actions). Debtor seeks authorization for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm a plan of reorganization. A copy of the *Debtor-In-Possession Credit Agreement* (the "DIP Agreement") is attached as **Exhibit 1** hereto. Debtor is seeking to use the DIP Loan pursuant to a cash budget, a copy of which (pertaining to the first 13-week period following the Petition Date) is attached to the DIP Agreement as **Exhibit B** thereto (the "Initial Cash Budget").

4.      Debtor was formed in 2014 for the purpose of operating businesses related to its trademarks and to sell its marketing services to help promote its customers' products. Debtor has 6 employees, including a chief operating officer and accountant, most of whom have been with Debtor for many years.

5.      Debtor's current assets consist of cash in its bank accounts in the aggregate amount of approximately $34,011, trademarks and receivables due for loans to affiliated entities in the aggregate amount of approximately $9,374,909. Debtor's fixed assets consist of certain leasehold improvements in the aggregate amount of approximately $117,330, and investments in the aggregate amount of approximately $115,000.

6.      Debtor's current liabilities consist of accounts payable in the aggregate amount of approximately $98,817, and amounts due on loans in the aggregate amount of approximately $4,191,122, including a loan of $3,937,803 owed to the DIP Lender.

7.      In March 2017, Debtor entered into an agreement (the "Steel Agreement") with Steel Supplements, Inc. ("Steel"), whereby Debtor would provide promotion, publicity and endorsement of Steel's products in exchange for ten percent (10%) of gross sales (bringing Debtor approximately $500,000 per month). On December 14, 2020, Steel filed a complaint against Debtor, alleging that Debtor had breached the Steel Agreement. Debtor answered and counterclaimed, asserting, among other things, that Steel had breached the Steel Agreement. The parties have been embroiled in litigation, costing Debtor over $1 million in legal fees and costs, depleting Debtor's cash resources and requiring Debtor to file the Chapter 11 Case to stay creditors from collection efforts until it has time to liquidate its claim against Steel and generate income from other business activities.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2

150042422.1

8. Debtor projects that it will not generate enough income to administer and preserve the value of its Chapter 11 Estate through confirmation of its plan of reorganization ("Plan").

9. Debtor approached six different institutions for a DIP loan, including Lendzi, Credibly, Funding Circle and Seek Capital. All of the institutions declined. Only the DIP Lender, International Investments, was willing to make a DIP loan, and in the amount that Debtor requires to be able to emerge from bankruptcy.

10. As set forth in the Budget attached as Exhibit B to the DIP Agreement, Debtor requires the DIP loan to make payroll, pay employee health benefits, and cover security and landscape maintenance costs (in addition to the administrative costs of the bankruptcy). In the event that the DIP Loan is not approved, Debtor will be unable to make payroll and the employee benefits will be revoked, causing Debtor's employees to seek employment elsewhere. Debtor does not believe that it can replace its employees without great expense and delay.

11. By the Motion, Debtor seeks authorization to obtain the DIP Loan from Lender pursuant to the DIP Agreement. The Lender is Debtor's largest creditor, with an unsecured claim of approximately $3,937,803.

12. Debtor anticipates filing a Plan that will provide a distribution to all creditors. As indicated by the Initial Cash Budget, Debtor projects that it will need to borrow up to $300,000 under the DIP Loan in order to confirm the Plan by the end of this year. Accordingly, timely approval of the proposed DIP Loan is critical to Debtor's timely emergence from Chapter 11.

13. Debtor proposes to obtain financing by providing the Lender with a first priority Lien on all of Debtor's Property (which is defined to specifically exclude Avoidance Actions), pursuant to section 364(c)(2) of the Bankruptcy Code. All of Debtor's Property is currently unencumbered.

14. During the period following the Petition Date, Debtor attempted to identify other sources of post-petition financing to determine whether Debtor could obtain debtor in possession financing on better terms. However, given Debtor's current financial condition, Debtor has been unable to obtain financing on more favorable terms than those provided in the DIP Agreement.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3

15. In fact, Debtor has had contact with at least six other prospective lenders to try to obtain funding. In the end, the only (and best) offer received was the current proposed arrangement with the Lender.

16. The Lender was unwilling to extend unsecured credit in exchange for an administrative priority claim.

17. On the other hand, the Lender is not charging a commitment fee, and the DIP Loan is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the Effective Date of a Lender Approved Plan.

18. Debtor respectfully submits that, given the unsuccessful efforts made to seek attractive alternatives, it has demonstrated that post-petition financing is not available on a more favorable basis.

19. Likewise, the terms and conditions of the DIP Loan have been the subject of extensive negotiations conducted in good faith and at arm's length, and are fair and reasonable under the circumstances.

20. Moreover, without the DIP Loan, Debtor would be unable to fund the cost of administering its Chapter 11 Case or make any distribution to its existing creditors, likely eliminating its ability to reorganize altogether.

21. Debtor expects to file its Plan shortly. Among other things, Debtor anticipates that the Plan will provide for payment of all expenses involved in administering the Chapter 11 Case, and for a distribution to all other creditors. Absent the DIP Loan, Debtor will not be able to confirm the Plan.

22. Here, Debtor's decision to enter into the DIP Loan represents a reasonable exercise of business judgment. As demonstrated by the Initial Cash Budget, Debtor has an immediate need for the DIP Loan in order to fund the expenses of the Chapter 11 Case and confirm its Plan. Debtor and Lender negotiated the terms of the proposed DIP Loan at arms' length in good faith, and Lender was represented by independent counsel.

23. Lender is willing to provide the DIP Loan on acceptable terms. Debtor anticipates that its Plan will provide for payment in full of administrative expense creditors and a distribution to all

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4

150042422.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

other creditors. Such a Plan will benefit creditors and further establishes the sound business judgment of Debtor in entering into the proposed DIP Loan.

24. Without the DIP Loan, Debtor would not be able to fund the costs of administering its Chapter 11 Case and proceed with any plan of reorganization. Instead, Debtor would be faced with the potential for administrative insolvency followed by a liquidation.

25. The terms of the DIP Agreement are similar to those often included in complex financing arrangements. Indeed, the DIP Agreement and the proposed Interim Order reflect the give and take that result from complex financing negotiations.

26. As noted above, the terms of the DIP Agreement are favorable under the circumstances. This is not a case where an over-reaching (and/or oversecured) pre-petition lender seeks to enhance its collateral package at the expense of unsecured creditors. In fact, the DIP Loan does not have a commitment fee, is not secured by a Lien on Avoidance Actions, is not entitled to superpriority administrative claim status, and does not have to be repaid until five years after the Effective Date of a Lender Approved Plan. The Lender simply requested reasonable protections to secure repayment of the DIP Loan.

27. Similarly, the interest rate of ten percent (10%) is reflective of the competitive rates available in the market for financing secured by a lien on assets that may not be readily convertible to cash.

28. The Events of Default and conditions to borrowing are customary in postpetition financings, as is Lender's ability to exercise remedies upon the occurrence of an Event of Default. Lender does not unduly seek to control or restrict Debtor's ability to prosecute the Chapter 11 Case. Given Debtor's circumstances, Debtor believes the terms of the DIP Loan are fair, reasonable and adequate, under the circumstances.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief. Dated this 3rd day of October, 2023.

/s/ Jason Verona
Jason Verona

5

150042422.1

EXHIBIT 1

(*Debtor-In-Possession Credit Agreement*)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

150042422.1

## DEBTOR-IN-POSSESSION CREDIT AGREEMENT

This DEBTOR-IN-POSSESSION CREDIT AGREEMENT ("DIP Credit Agreement"), dated as of September 18 2023, ("Agreement") between BLITZ NV, LLC, a Nevada limited-liability company ("Borrower" or "Debtor"), debtor-in-possession in a case pending under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"), on the one hand; and INTERNATIONAL INVESTMENTS, LTD., a company registered in St. Kitts (the "Lender" and, together with the Borrower, collectively referred to as the "Parties"), on the other hand. Capitalized terms used, but not immediately defined, in this Agreement shall have the meanings ascribed to such terms later or elsewhere in this Agreement.

## RECITALS

WHEREAS, on September 6, 2023 ("Petition Date"), Borrower filed a voluntary petition with the Bankruptcy Court initiating a Subchapter V Chapter 11 Case, Case No. 21-14823-nmc (the "Bankruptcy Case"). Borrower continues to operate its business and is in the possession of its assets and in the management of its business pursuant to 11 U.S.C. §§ 101 et seq. ("Bankruptcy Code") Sections 1107 and 1108;

WHEREAS, Borrower has requested that the Lender provide a secured credit facility to Borrower in the principal amount of Three Thousand Dollars ($300,000) (the "DIP Loan") to fund, among other things, working capital during the pendency of the Bankruptcy Case;

WHEREAS, the Lender is willing to make the DIP Loan to the Borrower upon the terms and conditions set forth herein;

WHEREAS, all exhibits hereto or expressly identified in this Agreement, are incorporated herein by reference, and taken together, shall constitute a single agreement.

NOW, THEREFORE, in consideration of the mutual covenants hereinafter contained, and for other good and valuable consideration, the Parties hereto agree as follows:

149418482.2

# ARTICLE I.

# DEFINITIONS

## 1.1 Defined Terms.

Capitalized terms used in this Agreement and the other Loan Documents shall have (unless otherwise provided elsewhere in the Loan Documents) the following respective meanings and all section references in the following definitions shall refer to Sections of the Agreement:

"Affiliate" shall mean, as to any Person, any other Persons which, directly or indirectly, through one or more intermediaries, is in control of, is controlled by, or is under common control with, such Person. For purposes of this definition, "control" of a Person shall mean the power, directly or indirectly, either (a) to vote a majority of the outstanding equity securities having ordinary voting power for the election of directors of such Person or (b) to direct or cause the direction of the management and policies of such Person, whether by contract or otherwise.

"Agreement" shall mean this DIP Credit Agreement, as the same may from time to time be amended, modified or supplemented.

"Avoidance Actions" shall mean any actions commenced, or that may be commenced before or after the Effective Date, pursuant to section 544, 545, 547, 548, 550 or 551 of the Bankruptcy Code, and all proceeds thereof.

"Bankruptcy Case" shall have the meaning provided in the Recitals to this DIP Credit Agreement.

"Bankruptcy Code" shall mean 11 U.S.C. §§ 101, et seq., as amended.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nevada, or such other court as is exercising jurisdiction over the Bankruptcy Case or any part thereof.

149418482.2

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as the same may from time to time be in effect and applicable to the Bankruptcy Case.

"Borrower" shall have the meaning ascribed thereto in the Preamble.

"Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in Nevada are authorized or required by law to close.

"Carve-Out" shall mean (i) the Subchapter V Trustee Fees; and (ii) an amount not exceeding $75,000.00 in the aggregate, which amount may be used after the occurrence and during the continuation of an Event of Default, to pay the fees and expenses of professionals retained by Borrower that are allowed (or allowable) by the Bankruptcy Court (as to which allowed or allowable fees and expenses Lender waives any right to disgorgement).

"Change of Control" shall mean such time as:

(a)     The purchase or other acquisition of the equity interests in Borrower that constitutes more than 25% of the total combined value or total combined voting power of all equity interests issued by Borrower;

(b)     A change in the officers, directors or senior management of Borrower; or

The direct or indirect sale, transfer, conveyance or other disposition, in one or a series of related transactions, of any material part of the properties or assets of the Borrower to any Person.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing Date" shall mean the date of entry of the Final DIP Order by the Bankruptcy Court and execution by all Parties of this Agreement and all other Loan Documents.

"Code" shall mean the Internal Revenue Code of 1986, as amended from time to time, and the regulations promulgated and rulings issued thereunder.

149418482.2

"Collateral" shall mean all Property of the Borrower and the Estate on which Lender is granted a Lien under the Loan Documents, but specifically excluding Avoidance Actions.

"Commitment Amount" shall mean $300,000.00, comprised of the First Installment and the Second Installment.

"Confirmation Order" shall mean the Final Order entered by the Bankruptcy Court (unless the requirement of a Final Order has been waived pursuant to applicable terms and conditions), together with all extensions, modifications and amendments thereto, confirming a Reorganization Plan.

"Default" shall mean any of the events specified herein that would result in an Event of Default, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, has been satisfied.

"Default Interest" shall have the meaning provided in Section 2.4(c) of this DIP Credit Agreement.

"Dollars" or "$" shall mean lawful currency of the United States of America.

"Effective Date" shall mean the date that any Reorganization Plan, which has been confirmed pursuant to a Bankruptcy Court order, becomes effective in accordance with its terms, or the occurrence of the "Effective Date" as defined in any Reorganization Plan which has been confirmed by a Bankruptcy Court order.

"Estate" shall mean the estate of Debtor that was created by the commencement of the Bankruptcy Case pursuant to Bankruptcy Code §541, and shall be deemed to include any and all privileges and incorporeal hereditaments of Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that

149418482.2

Debtor or the Estate shall have had effective as of the Petition Date or thereafter, whether by virtue of Bankruptcy Code §§ 544, 545, 546, 547, 548, 549 or 550 or otherwise.

"Event of Default" shall have the meaning ascribed thereto hereinafter.

"Final DIP Order" shall mean the Final Order of the Bankruptcy Court entered after a final hearing, upon an application of the Borrower satisfactory in form and substance to the Lender in its sole discretion, under Bankruptcy Rule 4001(c), or such other procedures as approved by the Bankruptcy Court, and assuming satisfaction of the standards prescribed in section 364 of the Bankruptcy Code, together with all extensions, modifications and amendments thereto, which order shall be satisfactory in form and substance to Lender in its sole discretion, which, among other matters but not by way of limitation, (i) approves, on a final basis, the transactions contemplated in this Agreement, (ii) authorizes, on a final basis, the Borrower to enter this Agreement and obtain credit, incur indebtedness, provide Lender with the Liens to secure payment of the Obligations in accordance herewith, (iii) includes a finding that the Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e); and is in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner opposed by Lender. The Final DIP Order shall also provide that all amounts owing by the Borrower under the Loan will, at all times, be secured by a fully perfected first priority Lien on the Collateral as provided in this Agreement including Section 2.4(f), subject only to the Carve-Out.

"Final Order" means an order or judgment entered by the Bankruptcy Court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, or otherwise modified in a manner opposed by Lender, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review,

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B69382160B8

reargument, stay or rehearing has expired including by the Bankruptcy Court ordering that the order is not subject to a stay and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (ii) the time to appeal further or seek certiorari, review, reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending, provided, however, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order or judgment.

"First Loan Installment" shall mean a maximum of $100,000.00.

"Interim DIP Order" shall mean an interim order of the Bankruptcy Court entered after a hearing, upon an application of the Borrower satisfactory in form and substance to the Lender in its sole discretion, under Bankruptcy Rule 4001(c), or such other procedures as approved by the Bankruptcy Court, and assuming satisfaction of the standards prescribed in section 364 of the Bankruptcy Code, together with all extensions, modifications and amendments thereto, which order shall be satisfactory in form and substance to Lender in its sole discretion, which, among other matters but not by way of limitation, (i) approves, on an interim basis, the transactions contemplated in this Agreement, (ii) authorizes, on an interim basis, the Borrower to enter this Agreement and obtain credit in the amount of the First Installment, provide Lender with the Liens to secure payment of the First Installment in accordance herewith, (iii) includes a finding that the

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

Lender is extending credit to Borrower in good faith within the meaning of Bankruptcy Code § 364(e); and is in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner opposed by Lender. The Interim DIP Order shall also provide that all amounts owing by the Borrower under the Loan will, at all times, be secured by a fully perfected first priority Lien on the Collateral as provided in this Agreement including Section 2.4(f), subject only to the Carve-Out.

"Initial Cash Budget" shall mean the budget attached as **Exhibit B** hereto, and as referenced in Debtor's financing motion filed with the Bankruptcy Court.

"Lender" shall have the meaning ascribed thereto in the Preamble.

"Lender Approved Reorganization Plan" shall mean a Reorganization Plan, as the same may from time to time be amended, restated, modified or supplemented by mutual agreement of the Parties that is otherwise acceptable in form and substance to Lender in its sole and absolute discretion.

"Lender Approved Plan's Effective Date" shall mean the date a Lender Approved Reorganization Plan, which has been confirmed pursuant to the Plan Confirmation Order, becomes effective in accordance with its terms, or the occurrence of the "Effective Date" as defined in a Lender Approved Reorganization Plan which has been confirmed by the Plan Confirmation Order.

"Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation, including (a) any mortgage, deed of trust, pledge, statutory deemed trust, hypothecation, assignment, deposit arrangement, encumbrance, lien (statutory or other), charge or other security interest or any preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever (including, without limitation, any conditional sale or other title retention agreement and any financing lease having substantially the

149418482.2

same economic effect as any of the foregoing and the filing of any financing statement under the Uniform Commercial Code (other than the filing of any such financing statement which states therein that such filing is a precautionary filing only and is filed in connection with "true leases" only) or comparable law of any jurisdiction), (b) any arrangement or agreement which prohibits Borrower from creating any mortgage, pledge, hypothecation, deposit arrangement, encumbrance, lien, charge or other security interest, or from entering into any agreement or arrangement described in clause (a) of this definition, or (c) the sale, assignment, pledge or transfer for security of any accounts, general intangibles or chattel paper of Borrower with or without recourse.

"Litigation" shall have the meaning ascribed thereto hereinafter.

"Loan" shall mean the loan made pursuant to this Agreement.

"Loan Documents" shall mean this Agreement, and such additional documents, instruments, and agreements as required under this Agreement and/or as may be reasonably required by the Lender to implement the terms or effectuate the purposes of this Agreement, the Final DIP Order, including, without limitation, the Note, security agreement, deed of trust, assignment of rents and all other agreements, instruments, financing statements, documents and certificates executed and delivered to, or in favor of, Lender and including all other pledges, powers of attorney, consents, assignments, contracts, notices, and all other written matter whether heretofore, now or hereafter executed by or on behalf of Borrower in connection with the Agreement or the transactions contemplated hereby. Any reference in this Agreement or any other Loan Document to a Loan Document shall include all exhibits thereto, and all amendments, restatements, supplements or other modifications thereto, and shall refer to this Agreement as the same may be in effect at any and all times such reference becomes operative.

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

"Material Adverse Effect" shall mean a material adverse effect on (a) the ability of the Borrower to fully and timely perform its Obligations, or (b) the legality, validity, priority or enforceability of this Agreement, the Note or any of the other Loan Documents, or (d) the rights, remedies and benefits available to or conferred upon the Lender hereunder or thereunder.

"Maturity Date" shall mean either: (a) the date that is the fifth anniversary of the Lender Approved Plan's Effective Date; or (b) such other date agreed in writing by Lender and Borrower.

"Note" shall mean the Note issued pursuant to this Agreement.

"Obligations" shall mean the unpaid principal of and interest (including, without limitation, interest accruing after the maturity of the Loan) on the Note and pursuant to this Agreement.

"Other Loan Related Claims" shall mean any reimbursement obligations, commitment or other fees, indemnities, costs, expenses or other claims to which the Lender is entitled under this Agreement, Note or any other Loan Documents.

"Organizational Documents" means, with respect to any Person (other than an individual), such Person's Articles (Certificate) of Incorporation, operating agreement or equivalent formation documents, and regulations (bylaws), or equivalent governing documents, and any amendments to any of the foregoing.

"Orders" means the Final DIP Order and any Final Order.

"Plan Confirmation Order" shall mean the Final Order entered by the Bankruptcy Court (unless Lender waives the requirement of a Final Order), satisfactory in form and substance to Lender, together with all extensions, modifications and amendments thereto confirming a Lender Approved Reorganization Plan.

149418482.2

"Person" shall mean an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Petition Date" shall have the meaning ascribed thereto in the Recitals.

"Pre-Petition" means anytime or date prior to the Petition Date.

"Professional" shall mean any Person or Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"Professional Fees" shall mean all reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

"Professional Fee Claims" shall mean any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code or as otherwise provided in a Reorganization Plan.

"Property" shall mean all assets and properties of any kind and nature of the Borrower and the Estate, including without limitation, equity security interests, real property and personal property, all deposit accounts and securities accounts, cash, accounts receivable, chattel paper, inventory, equipment, rolling stock, general intangibles, but specifically excluding Avoidance Actions.

"Reorganized Debtor" shall mean on or after the Effective Date, the Debtor, as reorganized debtor.

149418482.2

"Reorganization Plan" shall mean a plan of reorganization or liquidation filed by the Debtor in the Bankruptcy Case.

"Requirement of Law" as to any Person shall mean the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"Second Loan Installment" shall mean a maximum of $200,000.00.

"Subchapter V Trustee" shall mean Mr. Brian Shapiro.

"Subchapter V Trustee Fees" shall mean all fees payable to the Subchapter V Trustee.

"Subsidiary" or "Subsidiaries" of a Person shall mean a corporation, partnership or other entity of which shares of stock or other ownership interests having ordinary voting power (other than stock or such other ownership interests having such power only by reason of the occurrence of a contingency) to elect a majority of the board of directors or other managers of such corporation, partnership or other entity are at the time owned, or the management of which is otherwise controlled, directly or indirectly through one or more intermediaries, or both, by such Person. Unless otherwise indicated, all references to Subsidiaries are to the Subsidiaries of Borrower.

"Termination Date" shall mean the earliest of (a) the Maturity Date, and (b) the acceleration of the Loan in accordance with the terms hereof.

"US Trustee" shall mean the United States Trustee for the District of Nevada.

149418482.2

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

**1.2** **Other Definitional Provisions.**

(a)      Unless otherwise specified therein, all terms defined in this Agreement shall have their respective defined meanings when used in the Note or other document made or delivered pursuant hereto.

(b)      As used herein, in the Note or any other Loan Document made or delivered pursuant to this Agreement, accounting terms relating to Borrower and accounting terms partly defined in Section 1.1, to the extent not defined, shall have the respective meanings given to them under normal and customary use.

(c)      The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole, including all exhibits, as the same may from time to time be amended, restated, modified or supplemented, and not to any particular section, subsection or clause contained in this Agreement or any such exhibit.  The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

(d)      Unless the context otherwise requires, each reference herein to any agreement, document or instrument (including the Loan Documents) shall be deemed a reference to such agreement, document or instrument as amended, restated, supplemented or otherwise modified from time to time.

(e)      The term "includes" and "including" shall not be construed to imply any limitation.

(f)      In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding."  Periods of days referred to in this Agreement shall be counted in calendar days unless Business Days are expressly prescribed.  Any period determined hereunder by reference to a month or months or year or years shall end on the day in the relevant calendar

month in the relevant year, if applicable, immediately preceding the date numerically corresponding to the first day of such period, provided that if such period commences on the last day of a calendar month (or on a day for which there is no numerically corresponding day in the calendar month during which such period is to end), such period shall, unless otherwise expressly required by the other provisions of this Agreement, end on the last day of the calendar month.

**1.3     Payment Terms; References to Money.**

Except as expressly set forth herein to the contrary, (a) all payments made by the Borrower shall be made in Dollars in respect of principal and interest on the Loan, and (b) to the extent not otherwise indicated, all amounts of money referenced herein shall mean and be references to amounts of money denominated in Dollars.

**ARTICLE II.**

**AMOUNT AND TERMS OF LOAN**

**2.1     Loan in Two Installments.**

The Loan shall be made by the Lender to the Borrower in two installments.  The First Installment shall be made upon entry of the Interim Order; the Second Installment shall be made upon entry of the Final Order.

**2.2     Note.**

The Loan shall be evidenced by a promissory note issued by the Borrower made payable to the order of Lender substantially in the form of **Exhibit A** (the "Note").  The Note shall (i) be dated as of its date of issuance, (ii) be stated to mature on the Maturity Date or such earlier date the Loan shall be due and payable in full, whether by acceleration or otherwise, pursuant to the terms of this Agreement and (iii) provide for the payment of all principal, accrued interest and any Other Loan Related Claims.

149418482.2

**2.3     Procedure for Payment.**

Except as otherwise provided in this Agreement, including in Section 2.9, the Loan (including all interest and Other Loan Related Claims, capitalized and added to the principal balance of the Loan) shall be paid in full on or prior to the Termination Date, pursuant to the terms herein.

**2.4     Interest Rates, Commitment Fee, Payment Date and Priority/Security.**

(a)     The Loan (and all amounts capitalized and added to the principal balance of the Loan) shall bear interest at a rate per annum of 10 percent (10%).

(b)     There shall be no commitment fee for the Loan provided under this Agreement.

(c)     Notwithstanding the foregoing, in the event any Event of Default has occurred and is continuing, the Loan shall bear interest at a rate per annum of twelve percent (12%) ("Default Interest") from the date of occurrence of such Event of Default until the date such Event of Default is cured or waived (after as well as before and after judgment).

(d)     Except as otherwise provided in this Agreement and other Loan Documents, accrued interest is due and payable on the Maturity Date. Accrued interest on the Loan not paid on the Interest Payment Date will be capitalized and added to the outstanding principal balance of the Loan as of each Interest Payment Date.

(e)     Other Loan Related Claims will be capitalized and added to the outstanding principal balance of the Loan as of the date such Other Loan Related Claims becomes due.

(f)     As shall be ordered by the Bankruptcy Court in the Final DIP Order, pursuant to Bankruptcy Code § 364(c)(2), the Loan shall be secured by valid and duly perfected first priority Liens on all Property, subject and subordinate only to the Carve-Out.

149418482.2

**2.5    Computation of Interest.**

(a)    Interest shall be calculated for the actual number of days elapsed on the basis of a hypothetical year of 365 days, compounded monthly.

(b)    Each determination of an interest rate pursuant to any provision of this Agreement shall be conclusive and binding on the Borrower and the Lender in the absence of manifest error. Any payment of interest on the Loan shall be subject to any applicable withholding taxes and any amount withheld shall be treated as having been paid by the Borrower to the Lender.

**2.6    Prepayments.**

(a)    Optional Prepayment.  Borrower may, at any time and from time to time prepay the Loan, in whole or in part, without premium or penalty, upon irrevocable written notice to the Lender by 11:00 a.m. (Nevada time) on such date of prepayment, in each case specifying the date and amount of prepayment.  If any such notice is given, the amount specified in such notice shall be due and payable on the date specified therein, together with any amounts payable, accrued interest to such date on the amount prepaid and any outstanding fees and expenses then due and owing.  Any prepayment shall be applied in the following order of priority (a) first, to the payment of all Other Loan Related Claims due and payable to the Lender on such date under and in respect of the Loan; and (b) second, to the payment of the outstanding principal amount of the Note that is due and payable to the Lender on such date, together with all accrued and unpaid interest thereon.

**2.7    Use of Proceeds.**

The Borrower shall utilize the proceeds of the Loan solely to pay general and administrative disbursements (as referred to in the Initial Cash Budget) including, without limitation, Professional Fees, all consistent with the Final DIP Order and the Initial Cash Budget attached as **Exhibit B**.  Borrower shall not be permitted to use the proceeds of the Loan: (i) to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation

149418482.2

of any type adverse to the interests of Lender or its rights and remedies under this Agreement, the other Loan Documents, or the Final DIP Order, (ii) to finance the payment of, or application for authority to pay, any Prepetition Claim, without the Lender's prior written consent, and (iii) to make any payment in settlement of any Claim, action or proceeding, before any court, arbitrator or other governmental body.

**2.8     Payment of Obligations.**

Except as otherwise provided in this Agreement, upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court.

**2.9     No Discharge; Survival of Claims.**

Borrower agrees that, except as otherwise provided in this Agreement, to the extent the Obligations hereunder are not satisfied in full, such Obligations shall not be discharged by the entry of an order confirming a Reorganization Plan (and the Borrower, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge and this Section 2.9 shall be deemed to be a written waiver pursuant to Section 1141(d)(4) of the Bankruptcy Code).

**ARTICLE III.**

**REPRESENTATIONS AND WARRANTIES**

To induce Lender to make the Loan, Borrower hereby makes the following representations and warranties to Lender with respect to Borrower, as of the date of the entry of Final DIP Order, which shall survive the execution and delivery of this Agreement:

**3.1     Corporate Existence; Compliance with Law.**

Borrower (a) is duly organized, validly existing and in good standing under the laws of Nevada; (b) is duly qualified and authorized to do business as a foreign corporation and is in good

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

standing under the laws of each jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect; (c) subject to the entry of the Final DIP Order by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to effect the transactions contemplated hereby and by the other Loan Documents to which they are parties; (d) subject to the entry of the Final DIP Order by the Bankruptcy Court, has the requisite corporate power and authority and the legal right to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates and to conduct its business as now, heretofore and proposed to be conducted; and (e) is in compliance with all Requirements of Law except to the extent that the failure to comply therewith could not reasonably be expected to have a Material Adverse Effect.

**3.2     Corporate Power, Authorization, Enforceable Obligations.**

Upon, and subject to, entry of the Final DIP Order, (a) Borrower has the corporate power and authority, and the legal right, to make, deliver and perform the Loan Documents to which it is a party and to authorize the execution, delivery and performance of the Loan Documents to which it is a party, (b) Borrower has the appropriate power and authority to borrow hereunder and has taken all necessary corporate actions to authorize the borrowings on the terms and conditions set forth in this Agreement and in the Note, (c) the Agreement, and each other Loan Document to which it is a party will be duly executed and delivered on behalf of Borrower, and (d) this Agreement, and each other Loan Document to which Borrower is a party, when executed and delivered, will constitute, a legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, (whether enforcement is sought by proceedings in equity or at law).

149418482.2

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

**3.3** **No Legal Bar.**

Borrower hereby represents and warrants that except for the effect of the filing of the Bankruptcy Case, and subject to the entry of the Final DIP Order, the execution, delivery and performance of the Loan Documents to which Borrower is a party, the borrowings by Borrower hereunder and the use of the proceeds of the Loan (a) will not violate any Requirement of Law or material contractual obligation of Borrower, (b) will not accelerate or result in the acceleration of any payment obligations of Borrower, and (c) will not result in, or require, the creation or imposition of any Lien on any of the respective properties or revenues of the Borrower pursuant to any such Requirement of Law or material contractual obligation.

**3.4** **Purpose of Loan.**

The Borrower shall not use the proceeds of the Loan hereunder other than in accordance with this Agreement.

**3.5** **Accuracy and Completeness of Information.**

All information, reports and other papers and data with respect to the Borrower (other than projections) furnished to the Lender by or on behalf of Borrower, were, at the time furnished, complete and correct in all material respects, or have been subsequently supplemented by other information, reports or other papers or data, to the extent necessary to give the Lender a true and accurate knowledge of the subject matter in all material respects other than as set forth in this Agreement, there is no fact known to Borrower which has, or could reasonably be expected to have, a Material Adverse Effect.

**3.6** **The Required Orders.**

Borrower hereby represents and warrants that on or prior to the date of the making of the Loan hereunder, the Final DIP Order shall have been entered and shall not have been stayed, amended (without the Lender's prior written consent), vacated, reversed, rescinded or otherwise

DocuSign Envelope ID: ABCCE3D1-DE3F-41B9-BD2A-A4B6938216D8

modified in any respect. Furthermore, Borrower hereby agrees and acknowledges that, except as otherwise provided in this Agreement, upon the maturity (whether by the acceleration or otherwise) of any of the Obligations of the Borrower hereunder and under the other Loan Documents, the Lender shall be entitled to immediate payment of such Obligations, and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

**3.7 Reorganization Matters.**

(a) The Bankruptcy Case was commenced on the Petition Date in accordance with applicable law and proper notice thereof and the proper notice for the hearing for the approval of the Final DIP Order has been or will be given.

(b) The Final DIP Order is or will be in full force and effect and has not been reversed, stayed, modified or amended.

(c) Notwithstanding the provisions of Section 362 of the Bankruptcy Code, Borrower hereby agrees and acknowledges, upon the maturity (whether by acceleration or otherwise) of any of the Obligations, except as otherwise provided in this Agreement Lender shall be entitled to immediate payment of such Obligations and to enforce the remedies provided for hereunder, without further application to or order by the Bankruptcy Court.

**3.8 Title to Assets.**

Borrower has good title to and ownership of the Property, which property is free and clear of all Liens.

**3.9 No Material Adverse Effect.**

There exists no present condition or state of facts or circumstances that would have a Material Adverse Effect.

149418482.2

**3.10    Consents or Approvals.**

Except for the entry of the Orders, no consent, approval or authorization of, or filing, registration or qualification with, any other Person is required to be obtained or completed by Borrower in connection with the execution, delivery or performance of any of the Loan Documents, that has not already been obtained or completed.

**3.11    Accurate and Complete Statements.**

The Loan Documents and the written statements made by Borrower in connection with any of the Loan Documents do not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein or in the Loan Documents not misleading.  After due inquiry by Borrower, there is no known fact that Borrower has not disclosed to Lender that has or is likely to have a Material Adverse Effect.

**ARTICLE IV.**

**CONDITIONS PRECEDENT**

**4.1    Loan Conditioned Upon Entry of the Final DIP Order.**

The obligations of the Lender to make the Loan on and after the Closing Date, or to take, fulfill, or perform any other action hereunder is subject to the satisfaction of the following conditions precedent:

(a)    <u>Bankruptcy Court Orders</u>.  The Final DIP Order shall have been entered by the Bankruptcy Court, shall be in full force and effect and shall not have been stayed, reversed, vacated or rescinded or, without the written consent of the Lender, conditioned  or delayed, modified or amended in any respect not acceptable to Lender and, if the order is the subject of a pending appeal in any respect, neither the making of such Loan nor the performance by the Borrower of any of its Obligations hereunder or under the Loan Documents or under any other instrument or agreement referred to herein shall be the subject of a presently effective stay pending appeal.

149418482.2

(b)     Loan Documents.  The Lender shall have received this Agreement, the Note and all other Loan Documents, each other agreement, documents and instruments relating to the Loan and other credit transactions contemplated by this Agreement, each duly executed where appropriate and in form and substance satisfactory to the Lender in its sole discretion.

(c)     No Material Adverse Effect.  No Material Adverse Effect shall have occurred with respect to Borrower between the Petition Date and the date of making the Loan, other than those which customarily occur as a result of the pendency of the Bankruptcy Case.

(d)     Litigation.  No litigation, action, suit, or proceeding, shall have been commenced or be pending which has not been stayed by the commencement of the Bankruptcy Case and which, if successful, would have a Material Adverse Effect on Borrower, its ability to repay the Loan or which would challenge this Agreement, the Final DIP Order or the transactions contemplated thereby.

(e)     No Default.  No Default or Event of Default shall then exist or exist immediately after the making of a Loan.

(f)     Representations.  Each of the representations and warranties contained in Article III hereof shall be true in all material respects as if made on and as of the date of the Loan, at all times prior to the Closing Date, and as of the Closing Date, except to the extent that any representation or warranty expressly relate to an earlier date, or to the extent the facts and circumstances existing at the time of the Loan cause such representation or warranty unable to be true.

(g)     Cash Budget.  Borrower shall have prepared and delivered to Lender the Initial Cash Budget and Lender shall have approved the Initial Cash Budget and any modifications thereof, in its sole and absolute discretion.

149418482.2

(h)     Approval of Uses of Funds.  Borrower shall have prepared and delivered to Lender a schedule of the uses of the proceeds of the Loan together with invoices or other evidence of the uses of such proceeds, and Lender shall have approved such schedule and support documents in its sole and absolute discretion; provided, however, that Lender will not unreasonably withhold its approval from any use of the proceeds of the Loan that is included in the Initial Budget or any subsequent budget approved by Lender in writing or which use was previously approved by Lender in writing.

(i)     Certificate.  Borrower shall have delivered to Lender an officer's certificate certifying that, as of the Closing Date: (i) all conditions precedent set forth in this Article IV have been satisfied; and (ii) no Default or Event of Default exists nor immediately after the Loan will exist.

## ARTICLE V.

## NEGATIVE COVENANTS

**5.1     Negative Covenants.**

From the date hereof and for so long as this Agreement remains in effect, the Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower hereby agrees that it will not without the written consent of the Lender:

(a)     Filings.  Seek Bankruptcy Court authority to: propose, file, solicit votes for, support, consent to or prosecute : (i) a Reorganization Plan for the Borrower that is not a Lender Approved Reorganization Plan or otherwise acceptable to Lender, in form and substance or (ii) any motion, pleading, or other document with the Bankruptcy Court seeking relief that is inconsistent with the Lender Approved Reorganization Plan;

(b)     Indebtedness.  The Borrower shall not create, incur or assume any indebtedness other than customary trade payables incurred in the ordinary course of the Borrower's business;

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

(c)     Liens.  Except as allowed as a Permitted Lien, the Borrower shall not create or permit to exist any lien affecting, or otherwise encumbering, any of the assets of Borrower.

(d)     Transfers.  Sell, transfer or otherwise alienate any of the assets of the Borrower other than in the ordinary course of the Borrower's business.

(e)     Operations.  Engage in any business activities substantially different than those in which the Borrower is presently contemplating to be engaged in or cease operations, liquidate, merge or consolidate with any other entity or dissolve.

(f)     Other Agreements.  Enter into any agreement containing any provision that would be violated or breached by the performance of its obligations hereunder or under any instrument or document delivered or to be delivered by it hereunder or in connection herewith.

(g)     Distributions.  The Borrower shall not make any distributions to its equity interest holders.  For purposes of this provision, the term "distribution" includes (i) all cash distributions paid to the equity interest holders of the Borrower; and (ii) the value of all non-cash distributions made to the equity interest holders of the Borrower;

(h)     Loan, Acquisitions and Guaranties.  Loan, invest in or advance money to any other Person other than in the ordinary course of business;

(i)     Change of Control.  Effect a Change of Control except as provided in the Lender Approved Reorganization Plan; or

(j)     Affiliate Transactions.  Sell, lease, lend, assign or otherwise transfer any material amount of its properties or assets (or any interests therein) to, or purchase, lease, or otherwise acquire any material amount of properties or assets from, any of its Affiliates.

149418482.2

## ARTICLE VI.

## AFFIRMATIVE COVENANTS

From the date hereof and for so long as the Note remains outstanding and unpaid or any Obligation is owing to the Lender hereunder, Borrower shall perform or be subject to the following:

**6.1  Monthly Operating Reports.**

Borrower shall provide Lender with a copy of the Monthly Operating Reports prepared by Borrower and filed with the Bankruptcy Court in accordance with US Trustee guidelines, contemporaneously with such reports filing with the Bankruptcy Court.

**6.2  Other US Trustee Reports.**

Borrower shall provide Lender with a copy of the any other reports or information mandated or requested by the U.S. Trustee in accordance with US Trustee guidelines, contemporaneously with the Borrower providing such reports to the US Trustee.

**6.3  Other Requirements.**

Borrower will:

(a)  deliver to the Lender all financial statements and other reporting reasonably requested by the Lender showing actual financial performance compared to the Initial Cash Budget;

(b)  promptly provide written notice to the Lender of the receipt of any notice of

(i)  the commencement of any material litigation against or involving the Borrower (including any insolvency, administration, liquidation, or similar proceeding relating to the Borrower) other than with respect to proceedings brought in the Bankruptcy Case or in any adversary proceeding related to the Bankruptcy Case,

(ii)  termination of or default under any material contract, and

149418482.2

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

(iii)     noncompliance with any rule, statute, law, permit or license that could reasonably be expected to have a Material Adverse Effect;

(c)     maintain adequate insurance; and

(d)     provide the Lender, and its advisors, with reasonable access to all of the Borrower's books and records, facilities employees and, contractors  and offices for the purposes of reviewing the business operations and assets of the Borrower.

**6.4     Borrower and Lender Covenant Regarding Lender Approved Reorganization Plan.**

Lender and Borrower shall both act with diligence and in good faith to prepare and seek confirmation of a Lender Approved Reorganization Plan consistent with the Term Sheet previously executed by Lender and Borrower.

**6.5     Additional Reports.**

Borrower will maintain and provide the Lender with weekly historical cashflow performance, any revisions to the Initial Cashflow Budget, including any changes in the forecasted periods.

**ARTICLE VII.**

**TERMINATION**

**7.1     Termination.**

Except as otherwise provided in the Loan Documents:

(a)     The Loan and all other Obligations shall be automatically due and payable in full on the Termination Date.

(b)     Borrower shall pay the entire Obligations owing to the Lender under this Agreement and other Loan Documents, on the Effective Date of any confirmed Reorganization Plan that is not a Lender Approved Reorganization Plan in cash (immediately available funds).

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

(c)     In the event that a Reorganization Plan is not confirmed and/or the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code, or dismissed, then the entire Obligations owing to Lender under this Agreement and other Loan Documents shall be fully paid to Lender in cash (immediately available funds) upon the entry of any order (i) converting either Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code or (ii) dismissing the Bankruptcy Case.

**7.2     Survival of Obligations Upon Termination of Financing Arrangements.**

Except as otherwise expressly provided for in the Loan Documents, no termination or cancellation (regardless of cause or procedure) of any financing arrangement under this Agreement shall in any way affect or impair the obligations, duties and liabilities of the Borrower or the rights of Lender relating to any unpaid portion of the Loan or any other Obligations, due or not due, liquidated, contingent or unliquidated or any transaction or event occurring prior to such termination, or any transaction or event, the performance of which is required after the Termination Date.   Except as otherwise expressly provided herein or in any other Loan Document, all undertakings, agreements, covenants, warranties and representations of or binding upon the Borrower, and all rights of Lender, all as contained in the Loan Documents, shall not terminate or expire, but rather shall survive any such termination or cancellation and shall continue in full force and effect after the Termination Date.

## ARTICLE VIII.

### EVENTS OF DEFAULT; RIGHTS AND REMEDIES

**8.1     Events of Default.**

Notwithstanding the provisions of section 362 of the Bankruptcy Code and without application or motion to the Bankruptcy Court or any notice to Borrower, and subject to Section

149418482.2

8.2, the occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder:

(a)     (i)     Borrower shall fail to pay any principal of the Note when due in accordance with the terms thereof or hereof, (ii) Borrower shall fail to pay interest on the Note, any other Obligation or any other amount payable hereunder, within three (3) Business Days after any such interest or other amount becomes due in accordance with the terms thereof or hereof, or (iii) Borrower shall fail to perform any of the terms and provisions of this Agreement or of any other Loan Document; or (iv) any representation, warranty or statement made in or pursuant to this Agreement or any other Loan Document or any other material information furnished by Borrower to Lender shall not be true, correct, or complete, in all material respects; or

(b)     Proceeds of the Loan made hereunder are used to make a payment that is not in strict compliance with this Agreement, including in accordance with any use of proceeds approved by Lender, unless agreed to in writing by the Lender (provided, that it shall not be an Event of Default if the use of proceeds in violation of this Section 8.1(b) is, in the aggregate, less than ten thousand dollars ($10,000)); or

(c)     The occurrence of any additional "Event of Default" identified in any of the Loan Documents,  or the Final DIP Order not identified herein; or

(d)     The occurrence of any of the following in the Bankruptcy Case:

(i)     the dismissal of the Bankruptcy Case, or the conversion of the Bankruptcy Case from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code, or Borrower shall file a motion or other pleading seeking the dismissal of its Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise;

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

(ii)     the appointment of a trustee (other than a subchapter V trustee) in the Bankruptcy Case or the appointment of an examiner with expanded powers (powers beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code) to operate, oversee or manage the financial affairs, the business, or reorganization of the Borrower under Bankruptcy Code section 1106(b);

(iii)    the entry of an order of competent jurisdiction (1) reversing, staying, vacating or rescinding the Final DIP Order or either order otherwise ceases to be in full force and effect or (2) materially amending, supplementing or otherwise modifying the Final DIP Order without the written consent of the Lender;

(iv)    Borrower materially violates or breaches the Final DIP Order or files any pleadings seeking, joining in, or otherwise consenting to any material violation or breach of the Final DIP Order;

(v)     the entry of an order in the Bankruptcy Case granting any other Lien equal or superior to that granted to the Lender on the Collateral;

(vi)    the entry of an order in the Bankruptcy Case avoiding or requiring repayment or return of any portion of the payments made on account of the Obligations owing under this Agreement;

(vii)   the entry of an order in the Bankruptcy Case confirming a Reorganization Plan(s) that is not a Lender Approved Reorganization Plan;

(viii)  the entry of an order in the Bankruptcy Case granting relief from or modifying the automatic stay applicable under Section 362 of the Bankruptcy Code to permit one or more creditors to execute upon, enforce or perfect a Lien on the Collateral;

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

   (ix) the entry of an order in the Bankruptcy Case authorizing the sale or other disposition of all or substantially all of the assets of the Borrower to a party other than Lender under Section 363 of the Bankruptcy Code;

   (x) the payment by Borrower of, or application by Borrower for authority to pay, any prepetition Claim other than pursuant to a Lender Approved Reorganization Plan, without the Lender's prior written consent, or pursuant to an order of the Bankruptcy Court after notice and hearing unless otherwise permitted under this Agreement.

**8.2 Remedies.**

Upon the occurrence and during the continuance of an Event of Default, and without further order of or application to the Bankruptcy Court, the Lender shall, by three (3) Business Days' prior written notice to the Borrower (with a copy to the US Trustee and the Subchapter V Trustee), take one or more of the following actions, at the same or different times:

   (i) declare the Loan or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loan together with accrued interest thereon and any Other Loan Related Claims and all other liabilities of the Borrower accrued hereunder and under any other Loan Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower, anything contained herein or in any other Loan Document to the contrary notwithstanding; and

   (ii) take any other action or exercise any and all other rights or remedies under the Loan Documents, and under applicable law available to the Lender. For purposes of the Lender's exercise of any and all of its remedial rights upon the occurrence and during the continuation of an Event of Default, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be automatically vacated and modified following three (3) Business Days' prior written notice to Borrower, US Trustee, and the Subchapter V Trustee; provided that Lender

149418482.2

consents to a hearing before the Bankruptcy Court with respect to the foregoing on such shortened time as may be available according to the Bankruptcy Court's calendar and the stay shall remain in effect pending such a hearing if requested by Debtor prior to the expiration of the stay notice period.

## ARTICLE IX.

## MISCELLANEOUS

**9.1     Amendments and Waivers.**

Neither this Agreement, nor the Note or any other Loan Document, nor any terms hereof or thereof may be amended, restated, supplemented or modified except in writing signed by each of the Parties hereto

**9.2     No Waiver; Cumulative Remedies.**

No failure to exercise and no delay in exercising, on the part of Lender, any right, remedy, power or privilege hereunder or under the other Loan Documents shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

**9.3     Survival of Representations and Warranties.**

All representations and warranties made hereunder, in the other Loan Documents and in any document, certificate or statement delivered pursuant hereto or in connection herewith shall survive the execution and delivery of this Agreement and the Note and the making of the Loan hereunder.

149418482.2

9.4     **Successors and Assigns; Participations and Assignments.**

(a)     This Agreement shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns, including any trustee appointed in this Bankruptcy Case, or upon conversion of this case to a case under Chapter 7, a trustee appointed or elected therein.

9.5     **Counterparts.**

This Agreement may be executed by one or more of the Parties on any number of separate counterparts (including by telecopy or email), and all said counterparts taken together shall be deemed to constitute one and the same instrument.  A set of the copies of this Agreement signed by all the parties shall be lodged with the Borrower and the Lender.

9.6     **Severability.**

Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

9.7     **Governing Law.**

THIS AGREEMENT AND THE NOTE AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES UNDER THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEVADA WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEVADA.

149418482.2

Submission To Jurisdiction; Waivers. Borrower and Lender hereby irrevocably and unconditionally: (a) submit for themselves and their property in any legal action or proceeding relating to this Agreement and the other Loan Documents to which it is a party, or for recognition and enforcement of any judgment in respect thereof, to the jurisdiction of the Bankruptcy Court; (b) consent that any such action or proceeding may be brought in the Bankruptcy Court and waive any objection that they may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same; (c) agree that nothing contained herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; and (d) waive, to the maximum extent not prohibited by law, any right they may have to claim or recover in any legal action or proceeding referred to in this Section any special, exemplary, punitive or consequential damages.

**9.8    No Waiver.**

No failure on the part of Lender to exercise, and no delay in exercising, any right, power or remedy hereunder or any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

**9.9    Notices.**

All notices, requests, demands and other communications provided for hereunder shall be in writing (including email), mailed or delivered to the recipient party, addressed to the address of the applicable party specified on the signature pages of this Agreement, or, as to each party, at such other address as shall be designated by such party in a written notice to the other party. All notices, statements, requests, demands and other communications provided for hereunder shall be

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938216D8

deemed to be given or made when hand delivered, delivered by overnight courier or two (2) Business Days after being deposited in the mails with postage prepaid by registered or certified mail, addressed as aforesaid. Notice sent via email shall be deemed to have been received when sent by the sending party with confirmation of delivery (if delivered during a Business Day, otherwise the following Business Day).

**9.10    Sole Discretion of Lender.**

Unless otherwise provided in this Agreement, whenever the consent or approval of Lender is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and the decision of Lender shall be final and conclusive.

**9.11    Costs and Expenses.**

In the event of an action or other proceeding to enforce any rights arising under this Agreement, the party prevailing in such action or proceeding shall be paid all reasonable costs and attorneys' fees by the other party. For purposes of this Agreement, "prevailing party" means the party that prevails (whether affirmatively or by means of a successful defense) with respect to claims having the greatest value of importance as reasonably determined by the court or other tribunal determining the matter.

[SIGNATURES FOLLOW ON NEXT PAGE]

149418482.2

DocuSign Envelope ID: ABCCE3D1-DE3E-41B9-BD2A-A4B6938216D8

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

**BORROWER**:

BLITZ NV, LLC

By: _____ Jason Verona _____

Name: Jason Verona

Title: COO

**LENDER**:

INTERNATIONAL INVESTMENTS, LTD.

By: _____ Greg Gilpin-Payne _____

Name: 

Title: Director

149418482.2

**EXHIBIT A**

## CREDIT NOTE

$300,000.00                                                          September 18, 2023

FOR VALUE RECEIVED, the undersigned, **BLITZ NV LLC,** a Nevada limited-liability company (the "Borrower"), promises to pay to the order of **INTERNATIONAL INVESTMENTS, LTD.**, company registered in St. Kitts (the "Lender"), on the Maturity Date, if not sooner paid, the principal sum of **300 HUNDRED THOUSAND DOLLARS** ($300,000.00) pursuant to the terms of that certain Debtor-in-Possession Credit Agreement between the Borrower and the Lender dated as of September __, 2023, as such agreement may be amended, modified or supplemented from time to time (the "Loan Agreement"). The Borrower further promises to pay to the order of the Lender interest on the unpaid principal amount of this Note from time to time outstanding at the rate or rates per annum determined or as otherwise provided in, the Loan Agreement, and with such amounts being payable on the dates set forth in the Loan Agreement.

All payments and prepayments to be made in respect of principal, interest or other amounts due from the Borrower under this Note shall be payable at 12:00 noon Las Vegas time, on the day when due. The Borrower expressly waives presentment, demand, notice, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note, and an action for any amounts due and unpaid shall therefore accrue immediately.

This Note is the "Note" referred to in, and is entitled to the benefits of, the Loan Agreement. This Note is secured by, and is entitled to the benefits of, certain other Loan Documents, as each of them may be amended, modified or supplemented from time to time. Capitalized terms used in this Note that are defined in the Loan Agreement have the meanings assigned to them in the Loan Agreement unless otherwise expressly defined in this Note.

This Note is governed by, and will be construed and enforced in accordance with, the laws of the State of Nevada. The Borrower consents to the exclusive jurisdiction and venue of the United States Bankruptcy Court for the District of Nevada located in Las Vegas, Nevada with respect to any suit arising out of, relating to, or mentioning this Note.

IN WITNESS WHEREOF, and intending to be legally bound, the Borrower has executed, issued and delivered this Note as of September 18, 2023.

**BORROWER**:

BLITZ NV, LLC

By: _____ Jason Verona _____
Name: Ja   C81768E8D1DC46C...
Title: COO

149418482.2

DocuSign Envelope ID: ABCCE3D1-DF3E-41B9-BD2A-A4B6938316D8

# EXHIBIT B

[Initial Cash Budget]

# BLITZ PROJECTED CASH FLOW - 13 WEEKS

| Vendor | Description | September 24 days | October 31 days | November 30 days | December 6 days | Total | Notes |
|---|---|---|---|---|---|---|---|
| Promotional Income | | $ 3,437.00 | $ 4,296.00 | $ 4,296.00 | $ 859.00 | $ 12,888.00 | |
| | **Total Income** | **$ 3,437.00** | **$ 4,296.00** | **$ 4,296.00** | **$ 859.00** | **$ 12,888.00** | |
| Subchapter V trustee fees | | | | | $ 10,000.00 | $ 10,000.00 | |
| Legal | Bankruptcy Legal Fees & Costs | | $ 20,000.00 | $ 20,000.00 | | $ 40,000.00 | |
| Salient Consulting | Security | $ 8,129.04 | $ 10,500.01 | $ 10,161.30 | $ 2,032.26 | $ 30,822.61 | |
| Mountain Pine Landscape Services | Landscape maintenance | $ - | $ 3,250.00 | $ 3,250.00 | $ 3,250.00 | $ 9,750.00 | September paid in full; Decemeber will need to be paid in full |
| United Healthcare | Employee vision/dental coverage | $ 333.52 | $ 333.52 | $ 333.52 | $ 333.52 | $ 1,334.08 | have to pay one month in advance of when coverage begins |
| Sierra Healthcare | Employees health coverage | $ 3,455.71 | $ 3,455.71 | $ 3,455.71 | $ 3,455.71 | $ 13,822.84 | have to pay one month in advance of when coverage begins |
| Paychex payrolls | Employees bi-weekly payroll | $ 22,500.00 | $ 45,000.00 | $ 67,500.00 | $ - | $ 135,000.00 | 6 payrolls |
| | **Total Expenses** | **$ 34,418.27** | **$ 82,539.24** | **$ 104,700.53** | **$ 19,071.49** | **$ 240,729.53** | |
| | **Cash Deficit** | **$ (30,981.27)** | **$ (78,243.24)** | **$ (100,404.53)** | **$ (18,212.49)** | **$ (227,841.53)** | |
| | DIP Funding | | $ 100,000.00 | $ 200,000.00 | | $ 300,000.00 | |
| | **Cumulative Cash Position** | **(30,981.27)** | **(9,224.51)** | **90,370.96** | **72,158.47** | **72,158.47** | |

# EXHIBIT 2

## First National Bank **Outgoing Wire Form**

Date of Input: **11/22/2022 3:05 PM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: $**500,000.00, America (United States) Dollars - USD**

CUSTOMER INFORMATION SECTION

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **SCOTT J ROHLEDER**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **08/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

BENEFICIARY INFORMATION SECTION

Beneficiary Bank ABA #: **122400724**

Beneficiary Bank Name: **BANK OF AMERICA**

Beneficiary Bank City: **NEW YORK**

Beneficiary Bank State: **NY**

Beneficiary Bank Authorized Account #: **229002909029**

Beneficiary Name: **DAN B BILZERIAN**

Beneficiary Street Address: **6005 LAS VEGAS BLVD SOUTH ST**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89119**

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:

CUSTOMER'S SIGNATURE

Sign:_____**SCOTT J ROHLEDER**

Sign:_____

WIRE REQUESTED BY

Date Requested: **11/22/2022 3:05 PM**

Approved By:_____**JOSEPH ORLANDODOBERT**

Verified By:_____**JANET BOWEN**

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt
of a copy signed by the above signed of this Payment Order and Agreement

IntInv000059

http://hmdirweblb/

11/22/2022

Outgoing Wire Form

 First National Bank **Outgoing Wire Form**

Date of Input: **1/5/2023 11:07 AM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: **$500,000.00, America (United States) Dollars - USD**

<u>CUSTOMER INFORMATION SECTION</u>

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **Scott J Rohleder**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **08/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

<u>BENEFICIARY INFORMATION SECTION</u>

Beneficiary Bank ABA #: **026009593**

Beneficiary Bank Name: **BANK OF AMERICA**

Beneficiary Bank City: **NEW YORK**

Beneficiary Bank State: **NY**

Beneficiary Bank Authorized Account #: **229002909029**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: **6005 LAS VEGAS BLVD SOUTH SU**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89119**

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:

<u>CUSTOMER'S SIGNATURE</u>

Sign:_____Scott J Rohleder

Sign:_____

<u>WIRE REQUESTED BY</u>

Date Requested: **1/5/2023 11:07 AM**

Approved By:_____JOSEPH ORLANDODOBERT

Verified By:_____JANET BOWEN

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt

of a copy signed by the above signed of this Payment Order and Agreement

IntInv000060



## First National Bank **Outgoing Wire Form**

Date of Input: **1/30/2023 2:39 PM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: **$500,000.00, America (United States) Dollars - USD**

CUSTOMER INFORMATION SECTION

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **Scott J Rohleder**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **09/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

BENEFICIARY INFORMATION SECTION

Beneficiary Bank ABA #: **121000248**

Beneficiary Bank Name: **WELLS FARGO**

Beneficiary Bank City: **SAN FRANCISCO**

Beneficiary Bank State: **CA**

Beneficiary Bank Authorized Account #: **2981245133**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: **6005 LAS VEGAS BLVD S 7**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89119**

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:

**He has know Dan for 15 years.  Does business with him on a regular basis.  Verified instructions with Dan.**

CUSTOMER'S SIGNATURE

Sign:_____**Scott J Rohleder**

Sign:_____

WIRE REQUESTED BY

Date Requested: **1/30/2023 2:39 PM**

Approved By:_____**JOSEPH ORLANDODOBERT**

Verified By:_____**JANET BOWEN**

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt
of a copy signed by the above signed of this Payment Order and Agreement

IntInv000061



## First National Bank **Outgoing Wire Form**

Date of Input: **3/22/2023 1:02 PM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: **$500,000.00, America (United States) Dollars - USD**

<u>CUSTOMER INFORMATION SECTION</u>

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **SCOTT J ROHLEDER**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of.Birth: **08/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **4155887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

<u>BENEFICIARY INFORMATION SECTION</u>

Beneficiary Bank ABA #: **026009593**

Beneficiary Bank Name: **BANK OF AMERICA**

Beneficiary Bank City: **NEW YORK**

Beneficiary Bank State: **NY**

Beneficiary Bank Authorized Account #: **229002909029**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: **6005 LAS VEGAS BLVD SOUTH SU**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89119**

Wire Reason: **OERATING FUNDS**

Further Credit To or Additional Information:


<u>CUSTOMER'S SIGNATURE</u>

Sign:_____**SCOTT J ROHLEDER**

Sign:_____

<u>WIRE REQUESTED BY</u>

Date Requested: **3/22/2023 1:02 PM**

Approved By:_____**JOSEPH ORLANDODOBERT**

Verified By:_____**JANET BOWEN**

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt
of a copy signed by the above signed of this Payment Order and Agreement

IntInv000062
3/22/2023

 **First National Bank** **Outgoing Wire Form**

Date of Input: **4/17/2023 2:58 PM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: **$500,000.00, America (United States) Dollars - USD**

CUSTOMER INFORMATION SECTION

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **Scott J Rohleder**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **09/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

BENEFICIARY INFORMATION SECTION

Beneficiary Bank ABA #: **121000248**

Beneficiary Bank Name: **WELLS FARGO**

Beneficiary Bank City: **SAN FRANCISICO**

Beneficiary Bank State: **CA**

Beneficiary Bank Authorized Account #: **2981245133**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: **5990 W PATRICK LANE**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89118**

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:

**HE HAS KNOWN DAN FOR 15 YEARS.  VERIFIED INSTRUCTIONS WITH DAN**

CUSTOMER'S SIGNATURE

Sign:_____**Scott J Rohleder**

Sign:_____

WIRE REQUESTED BY

Date Requested: **4/17/2023 2:58 PM**

Approved By:_____**JOSEPH ORLANDODOBERT**

Verified By:_____**JANET BOWEN**

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt
of a copy signed by the above signed of this Payment Order and Agreement



IntInv000063
4/17/2023

# First National Bank  Outgoing Wire Form

Date of Input: 5/17/2023 9:38 AM

Cost Center & Location: 1052, CARY PRESTON

Transfer Amount: $500,000.00, America (United States) Dollars - USD

CUSTOMER INFORMATION SECTION

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER, INC**

Signer's Name: **Scott J Rohleder**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **09/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **Drivers License**

State of Issuance: **NC**

BENEFICIARY INFORMATION SECTION

Beneficiary Bank ABA #: **121000248**

Beneficiary Bank Name: **WELLS FARGO**

Beneficiary Bank City: **SAN FRANCISCO**

Beneficiary Bank State: **CA**

Beneficiary Bank Authorized Account #: **2891245133**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: ~~6005 LAS VEGAS BLVD S~~  *5990 W. PATRICK Lane*

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV** ~~89119~~ *89118*

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:

CUSTOMER'S SIGNATURE

Sign:_____ Scott J Rohleder

Sign:_____

WIRE REQUESTED BY

Date Requested: **5/17/2023 9:38 AM**

Approved By:_____ JOSEPH ORLANDODOBERT

Verified By:_____ JANET BOWEN

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt
of a copy signed by the above signed of this Payment Order and Agreement





## First National Bank  Outgoing Wire Form

Date of Input: **7/12/2023 12:33 PM**

Cost Center & Location: **1052, CARY PRESTON**

Transfer Amount: **$600,000.00, America (United States) Dollars - USD**

CUSTOMER INFORMATION SECTION

Paid By: **Debit**

Authorized Account Number: **95862842**

Account Type: **Checking**

Customer's Name: **ROHLEDER INC**

Signer's Name: **SCOTT J ROHLEDER**

Customer's Street Address: **125 BENDING OAK WAY**

Customer's Street Address 2:

City, State & Zip: **MORRISVILLE, NC 27560**

Customer's Telephone Number: **813-416-8198**

Customer's Date of Birth: **09/28/1963**

Customer's Taxpayer's ID Number: **307724779**

Customer's DL No./Passport No.: **41555887**

Means of Identification: **DRIVERS LICENSE**

State of Issuance: **NC**

BENEFICIARY INFORMATION SECTION

Beneficiary Bank ABA #: **121000248**

Beneficiary Bank Name: **WELLS FARGO**

Beneficiary Bank City: **SAN FRANCISCO**

Beneficiary Bank State: **CA**

Beneficiary Bank Authorized Account #: **2981245133**

Beneficiary Name: **DAN BILZERIAN**

Beneficiary Street Address: **5990 W PATRICK LANE**

Beneficiary Street Address 2:

Beneficiary City, State & Zip: **LAS VEGAS, NV  89118**

Wire Reason: **OPERATING FUNDS**

Further Credit To or Additional Information:


CUSTOMER'S SIGNATURE

Sign:_____**SCOTT J ROHLEDER**

Sign:_____

WIRE REQUESTED BY

Date Requested: **7/12/2023 12:33 PM**

Approved By:_____**JOSEPH ORLANDODOBERT**

Verified By: _Judith Harris_ **JUDITH HARRIS**

I hereby authorized this transfer and accept the terms and conditions, and acknowledge receipt

of a copy signed by the above signed of this Payment Order and Agreement

IntInv000065

DocuSign Envelope ID: 24BB3F37-C302-404E-9D7D-EEF0CB456F63

# BAYFIRST

: **Outgoing Wire Transfer Request Form**
Email to the Wire Department at
Wires@bayfirstfinancial.com

Member
**FDIC**

## WIRING INSTRUCTIONS

The undersigned Customer ("Customer") hereby requests BayFirst to transfer funds subject to the following specific instructions and subject to the terms and conditions set forth in the Wire Transfer Agreement which the Customer has executed, if applicable.

| Type: | Cost: $22.00 | Cutoff Time: |
|---|---|---|
| Domestic Wire | | 4:30 p.m. |

## GENERAL INFORMATION

Requested Execution Date:   09/20/2023                   Wire Amount: $ 200,000.00

## SENDER INFORMATION

Authorized Sender: SCOTT ROHLEDER                 SSN/TIN: 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
Account Title:     ROHLEDER INC
Physical Address:  125 BENDING OAK WAY MORRISVILLE NC 27560
Account Number:    34007831                 ☐ Loan ☒ Checking ☐ Savings ☐ CD ☐ GL

## RECEIVING PARTY'S INFORMATION (Beneficiary)

Beneficiary (Person receiving funds): BILZERIAN ENTERTAINMENT, LLC         ☐ Individual ☒ Company
Beneficiary's Physical Address:       5990 W. PATRICK LANE
City, State, Zip:                     LAS VEGAS, NV 89118
Beneficiary's Account Number :        1022028821

## FINANCIAL INSTITUTION RECEIVING FUNDS (Beneficiary's Bank)

Bank Name:  ESQUIRE BANK                 Bank ABA #:  026073066
Bank Physical Address:  100 JERICHO QUADRANGLE, SUITE 100
City, State, Zip:       JERICHO, NY 11753

## INTERMEDIARY BANK INFORMATION (if applicable)

Bank Name: _____         Bank ABA #: _____
Bank Physical Address: _____
City, State, Zip: _____

## SPECIAL INSTRUCTIONS

Additional Information or Special Instructions:

1. This receipt is part of and is subject to all the provisions of this contract and said receipt is not negotiable.
2. Payment will be made subject to the rules and regulations of any governmental agencies, and banks or any other private agencies used in effecting payment, and BayFirst ("Bank") shall not be liable for any act or omission of any agency or correspondent employed to make such payment or for any loss or damage resulting therefrom or from the errors or delays on the part the originator or on the part of cable, radio or other communication companies in the transmission of any message relating to such payment nor for any delay in delivery or failure to deliver any such message or for any acts or loss or damage resulting from any laws, decrees, orders or regulations purporting to be effective where payment is to be made, or from any civil, military or war conditions, or from any cause beyond the control of the Bank.
3. Bank shall be held harmless if beneficiary's bank credits an account not in the intended beneficiary's name due to inconsistencies in the name or account or other identifying numbers specified in the payment order by customer.  Bank shall be liable only if it acts in a grossly negligent manner or if its acts constitute willful misconduct. Without limiting the foregoing, Bank shall not be liable for any loss arising directly or indirectly from: (a) The negligence or misconduct of customer or customer's agents, (b) any ambiguity in the instructions provided to Bank, or (c) The negligent act or omission of any third party.  In all cases, the Bank's liability for any act or failure to act pursuant to this authorization shall be limited to the resulting direct loss and not to any incidental, special or exemplary damages or for attorney's fees whether or not the likelihood of such damage was known or contemplated by the Bank and regardless of the legal or equitable theory of liability which customer may assert.
4. The Bank shall be under no obligation to obtain the receipt of the payee.  The Bank, on request, will use reasonable efforts to trace payment; no request for tracing shall be made prior to three months from date of the order on foreign remittances.
5. If for any reason the credit covered by the remittance herein is returned or recredited to the Bank, the remitter agrees to accept refund in the amount of the equivalence in United States dollars of the amount of the foreign money credit based on the current buying rate of the Bank's correspondent bank on the date of the refund less any charges and expenses of the Bank.
6. Subject to any service charges or taxes levied by sending agents.
7. Originator understands that after this request has been processed, the funds will have been permanently transferred to the beneficiary and that a stop payment order will not be possible.  This payment implements an agreement between the originator and the beneficiary.  The Bank is not a party of the agreement and has no obligations other than to process the wire transfer of funds request in accordance with conditions specified herein.  The originator understands that the Bank handles wire transfer requests expeditiously, but Bank cannot guarantee that requests will be completed in any specific time period.

DocuSigned by:

AUTHORIZED SIGNATURE:   x   SCOTT ROHLEDER
13765CD58851436...

IntInv000066