Ryan J. Works, Esq. (NSBN 9224)
Jonah Gavish, Esq. (NSBN 17197)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
jgavish@mcdonaldcarano.com

*Attorneys for Ignite International, Ltd., Rohleder Inc., and International Investments, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>BLITZ NV, LLC,<br><br>　　　　Debtor. | Case No. 23-13871-nmc<br>Chapter 7<br><br>**OPPOSITION TO TRUSTEE'S OBJECTION TO CLAIM NO. 2 OF INTERNATIONAL INVESTMENTS, LTD.**<br><br>**Hearing Date: December 9, 2025**<br>**Hearing Time: 9:30 a.m. Pacific Time** |

International Investments, Ltd. ("II"), by and through its undersigned counsel, the law firm of McDonald Carano LLP, hereby submits its Opposition (the "Opposition") to *Objection to Claim No. 2 of International Investments, Ltd.* [ECF No. 355] (the "Objection") filed by Trustee Brian Shapiro (the "Trustee") in the above captioned matter.

This Opposition is based on the following Memorandum of Points and Authorities, the declaration of Gregory Gilpin-Payne ("Payne Decl."), the pleadings, papers and records on file in this action, and any oral argument which may be presented at the time of the hearing of the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    JURISDICTION**

1.    The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be determined by the Court.

3.    Venue for this proceeding is proper in the United States Bankruptcy Court, District of Nevada, pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    Under the Local Rules of Bankruptcy Practice, for the United States Bankruptcy Court, District of Nevada ("LR"), this is a "contested matter" and II consents to entry of "final orders or judgments by the bankruptcy judge" with respect to this matter only.  *See* LR 9014.2.

## II.    FACTUAL BACKGROUND

1.    On September 6, 2023, Blitz NV, LLC ("Blitz" or "Debtor") filed its voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code.  [ECF No. 1].

2.    Also on September 6, 2023, an initial deadline for filing proof of claims was set for November 15, 2023.  [ECF No. 2].

3.    Trustee Brian Shapiro was appointed as the Subchapter V Trustee.  [ECF No. 11].

4.    On September 27, 2023, Blitz filed its Schedules and Statement of Financial Affairs – voluntarily listing II as a creditor holding the largest claim in the Chapter 11 Case.  [ECF No. 29, p. 2 of 24 and 10 of 24 at § 3.3].  The Schedules were signed by Jason Verona as true and correct and under penalty of perjury.  *Id.* at [ECF No. 29, p. 24 of 24].  Notably, the II unsecured claim was not listed as disputed, contingent or unliquidated.  *Id.*

5.    On October 03, 2023, Blitz filed its *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Secured Financing; (II) Granting Liens; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* (the "DIP Motion") [ECF No. 41]. The DIP Motion requested the Court to authorize Debtor to, among other things, "(i) obtain senior secured post-petition financing in the amount of up to $300,000 (the "DIP Loan") from Debtor's largest creditor, International Investments, Ltd. (the "Lender"), and (ii) grant Lender first priority liens on all of its Property." [ECF No. 41 at p. 2 of 24].

6.    Contained within the DIP Motion was a disclosure that II was a pre-petition creditor, owed $3,937,803.  [ECF No. 41 at p. 6 of 24].  At that time the Debtor and its counsel, the Subchapter V Trustee, and all other parties in interest had knowledge of II's pre-petition debt due and owing.

7.    Despite the Lender being proposed as the DIP Lender under the DIP Loan, it did not make an appearance in the Chapter 11 bankruptcy case, nor did it have counsel that appeared by ECF, or otherwise, and so it was not apprised of the various happenings after the DIP Motion was heard by the Court and denied. [ECF No. 72].

2

8. On December 19, 2023 this Court converted the Debtor's case from Chapter 11 reorganization to Chapter 7 liquidation. [ECF No. 135 & 136].

9. Brian Shapiro was the natural appointee as Chapter 7 Trustee [ECF No. 138 & 139].

10. The new deadline for filing proofs of claims in the Chapter 11, now converted to a Chapter 7, was set for February 27, 2024 (the "Chapter 7 Bar Date") by way of the *Notice of Chapter 7 Bankruptcy Case*. *See* at [ECF No. 141],

11. Because II did not make a formal appearance in the Chapter 11, did not have counsel representing it in the Chapter 11, and was merely proposed as the DIP Lender under the DIP Loan, it never received notice electronically of the conversion to chapter 7 or the Chapter 7 Bar Date. Payne Decl. at ¶ 9, 12; *see also* [ECF No. 142].

12. The Chapter 7 Trustee surmises that the Chapter 7 Bar Date notice was sent by the Bankruptcy Noticing Center (the "BNC") on December 28, 2023 via USPS (citing to ECF No. 141).[1]

13. But II never received the Notice of Chapter 7 Bankruptcy Case, or any other actual (or constructive) notice of the Chapter 7 Bar Date. Payne Decl. at ¶ 12.

14. The BNC's *Certificate of Notice* represents that the *Notice of Chapter 7 Bankruptcy Case* (and notice of the Chapter 7 Bar Date) was given as follows: "Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec. 28, 2023". [ECF No. 142 at p. 1 of 5].

15. The BNC goes on to represent that it sent the *Notice of Chapter 7 Bankruptcy Case* to 20 participant addresses by first class mail. *Id*. Upon close review of those 20 addresses, each includes a distinct + mark prior to the address, but II's address of "International Investments, Ltd., 858 Zenway Blvd., Frigate Bay, St. Kitts, P.O. Box 2076, Basseterre, St. Kitts" ***does not*** include this all important mark. *Id*.

16. The + mark has a legend at the top of page 1 of 5 that defines this symbol as follows:

---

[1] The *Certificate of Notice* is the operative document. *See* [ECF No. 142].

3

"Addresses marked '+' were corrected by *inserting* the ZIP[2], *adding* the last four digits to complete the zip +4, or *replacing an incorrect* ZIP.  USPS regulations require that automation-compatible mail display the correct ZIP."  *Id*. (emphasis added).

17.    Notably, the BNC did not *insert, add or replace* a ZIP code to the address for II.  *See* [ECF No. 142 at p. 1 of 5].  Indeed, the II address in the Certificate of Notice is bereft of any postal code, whatsoever.

18.    Moreover, St. Kitts does not use ZIP codes.  It uses an alpha-numeric postal code system with different codes for each postal zone.  For example, codes start with "KN" followed by four digits like KN0101 for the General Post Office in Basseterre or KN0602 for a delivery district in Cayon.  Payne Decl. at ¶ 11.

19.    Finally, mail delivery from overseas is quite unreliable in St. Kitts.  *See* Payne Decl. at ¶ 10.  In his declaration, Mr. Payne states that overseas mail is sometimes not delivered at all, and in many instances mail has been delivered several months or years after the date of mailing.  *Id*. at ¶10.

20.    Considering the BNC's failure to add an alpha-numeric postal code to the II address, and Mr. Payne's declaration regarding mail delivery difficulties in St. Kitts, it is clear that II did not receive notice of conversion of the Debtors' bankruptcy case from 11 to 7, and it did not know of the Chapter 7 Bar Date.  *Id*. at ¶10-12.

21.    II was made aware of the conversion to chapter 7 in 2025, after the Trustee reached out to Paul Bilzerian in late November 2024, who subsequently advised Mr. Payne, President of II, in 2025.  Payne Decl. at ¶14. However, the Chapter 7 Bar Date had long-passed at that time.

22.    On May 30, 2025, II filed its proof of claim [Claim No. 2-1] in the well-known amount of $3,972,111.11 due and owing by Blitz, which was voluntarily listed in the Debtor's schedules as

---

[2] "ZIP" refers to Zone Improvement Plan, an acronym chosen by the United States Postal Service ("USPS") to suggest that mail travels more efficiently and quickly, or "zips" along. The system was introduced in 1963 to help the USPS sort and deliver mail more efficiently.  The basic 5-digit ZIP code was extended to a ZIP+4 code, which includes four additional digits to further pinpoint a mail deliver location.  *See* uspsoig.gov, White Paper, April 1, 2013, Rept. No. RARC-WP-13-006 re Technology (last accessed 11/22/2025).

not contingent, unliquidated or disputed, and which was presented in the DIP Motion, DIP Loan and related filings.

A true and accurate copy of Claim No. 2-1, including all exhibits in support thereof, is attached to the Payne Decl. at Exhibit 1. Mr. Payne further testifies in his declaration that the documents are authentic business records of II, that they are true and accurate copies that were made contemporaneous with the events described therein, and that these documents are trustworthy. *Id*. at ¶16.

23. Claim No. 2-1 is well-supported. It includes several important exhibits that support II's claim.

24. Claim No. 2-1 included a statement itemizing each advance to the Debtor, including interest, fees, expenses, or other charges, detailing each loan advance, the number of days since loaned, the daily interest, the total accrued interest, and the total amount due under the prepetition debt.

25. The statement shows the first loan advance was made on 11/23/2022 and the last loan advance was made on 9/23/2023. The total principal amount due and owing was $3,800,000 at that time, and after interest, the amount Blitz owed to II was $3,972,111.11.

26. Claim No. 2-1 also included the Commercial Line of Credit and Promissory Note (the "Prepetition Note") showing a Loan Amount of $4,000,000, an interest rate of 10%, an effective date of January 1, 2023, including other standard and reasonable terms.

27. The Prepetition Note also clearly explained that the "full amount of the balance shall be due on December 31, 2024".

28. Claim No. 2-1 further included the DIP Motion, which clearly explains the Debtor's obligation to pay II $3,937,803 and further representing II's desire to pursue the Debtor for this debt.

**III.    ANALYSIS**

**A.    Legal Standard**

Section 502 of Title 11 of the United States Code (the "Bankruptcy Code") provides that any proof of claim is "deemed allowed, unless a party interest . . . objects." 11 U.S.C. § 502(a). Section

502(b) provides that if an objection to a claim is made, then the court, after notice and a hearing, shall determine the amount of the claim. 11 U.S.C. § 502(b).

A proof of claim that is properly executed and filed is sufficient evidence to establish *prima facie* proof that the debt is valid for purposes of distributing estate assets. *See* Fed. R. Bankr. P. 3001(f); *see also Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage)*, 178 B.R. 222, 225 (B.A.P. 9th Cir. 1995) (internal citation omitted). In *Heath*, the Ninth Circuit Bankruptcy Appellate Court ("BAP") discusses in detail the minority and majority split of courts as to when a proof of claim is entitled to *prima facie* validity under Rule 3001(c) and (f):

> We are not persuaded by the minority view . . . Section 502(b) states that if an objection to a claim is made, then the court "shall" determine the amount of such claim and "*shall allow* such claim" except to the extent that one of the limited grounds for disallowance is established. . .'Section 502(b) sets forth the *sole* grounds for objecting to a claim and directs the court to allow the claim unless one of the exceptions applies.'

*In re Heath*, 331 B.R. at 435 (internal citations omitted and emphasis in original).

When a party objects, the objection to claim is considered a contested matter within the meaning of Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 9014. *See* Adv. Comm. Notes to Fed. R. Bankr. R. 9014. The objecting party carries the burden of going forward with evidence concerning the validity and the amount of the claim. *See In re Allegheny Int'l, Inc.* 954 F.2d 167, 173 (3d Cir. 1992) (discussing the shifting of the burden from the objector only after production of evidence to refute at least one of the allegations essential to the claim's legal sufficiency). Stated another way, "[u]pon the filing of an objection, the objecting party 'must produce evidence tending to defeat the claim that is of probative force equal to that of the creditor's proof of claim." *In re Consolidated Pioneer Mortgage*, 178 B.R. at 226 (internal citation omitted). If the objecting party is successful in overcoming the *prima facie* effect given to the claim, then the ultimate burden ordinarily remains on the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re Harrison*, 987 F.2d 677, 680 (10th Cir. 1993).

While the substantive law applied to determine the origin and existence of a claim is state law, the bankruptcy court has sole jurisdiction and discretion under federal law to allow or disallow the

6

claim. *Bitters v. Networks Electronic Corp. (In re Network Electronics Corp),* 195 B.R. 92, (B.A.P. 9th Cir. 1996) (internal citations omitted).

**B.    International Investments Did Not Receive Notice of Conversion to Chapter 7 or the Chapter 7 Bar Date.**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). To that end, the "notice must be of such nature as reasonably to convey the required information." *Id.*

Due process and the Bankruptcy rules entitle creditors to formal notice of the bankruptcy and bar dates. *See In re First Magnus Financial Corp*, 415 B.R. 416, 422 (Bankr. D. Ariz. 2009); *see also* 11 USC 521. "The burden is on debtor to give formal notice. A creditor who is not given notice, even with actual knowledge of the case, does not have a duty to investigate and inject himself into the proceedings." 415 B.R. at 422. The court in *In re First Magnus Financial Corp.* held that a creditor's due process rights were violated when the creditor did not receive formal notice of the bankruptcy or the claims bar date. *Id.* The court found that the creditor established cause and excusable neglect for its failure to file a timely proof of claim. *Id.* at 423.

Similarly, in *In re Hardy*, the Bankruptcy Court for the District of Nevada allowed a creditor with actual knowledge of a Chapter 11 filing but no notice of the proof of claim bar date to file a late proof of claim. 33 B.R. 77, 79-80 (Bankr. D. Nev. 1983). The creditor acted in good faith and there was no prejudice to the debtor in allowing the claim to stand as filed. *Id.* at 79.

The Trustee argues that II had "actual knowledge" of the bankruptcy case based solely on its involvement in early debtor-in-possession financing discussions and filings. [ECF No. 355 at ¶13]. This is true. However, just because II had knowledge of the Chapter 11 bankruptcy case does not mean II had actual knowledge of the Chapter 7 conversion or Chapter 7 Bar Date, which it clearly did not.  *See* [ECF No. 142]; *see also* Payne Decl. at ¶12.  The Debtor filed its Chapter 11 Petition on September 6, 2023. [ECF No. 1] at which time II's claim was fully allowed and payable and there was nothing further that II needed to do.  As well, II and the Debtor entered into the DIP Loan on

September 18, 2023 at which time all parties in interest to these bankruptcy proceedings were well-aware of II's pre-petition debt.

The Chapter 7 Trustee next states that the Chapter 7 Bar Date notice was sent by the Bankruptcy Noticing Center (the "BNC") on December 28, 2023, via USPS (citing to ECF No. 141).[3] But II never received the Notice of Chapter 7 Bankruptcy Case, or any other actual (or constructive) notice of the Chapter 7 Bar Date.  Payne Decl. at ¶12.

The BNC's *Certificate of Notice* represents that the *Notice of Chapter 7 Bankruptcy Case* (and notice of the Chapter 7 Bar Date) was given as follows: "Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec. 28, 2023".  [ECF No. 142 at p. 1 of 5].  The BNC goes on to represent that it sent the *Notice of Chapter 7 Bankruptcy Case* to 20 participant addresses by first class mail.  *Id*.  Upon close review of those 20 addresses, each includes a distinct + mark prior to the address, but II's address of "International Investments, Ltd., 858 Zenway Blvd., Frigate Bay, St. Kitts, P.O. Box 2076, Basseterre, St. Kitts" ***does not*** include this all important mark.  *Id*.  The + mark has a legend at the top of page 1 of 5 that defines this symbol as follows: "Addresses marked '+' were corrected by *inserting* the ZIP[4], *adding* the last four digits to complete the zip +4, or *replacing an incorrect* ZIP.  USPS regulations require that automation-compatible mail display the correct ZIP."  *Id*. (emphasis added).  Notably, the BNC did not *insert, add or replace* a ZIP code to the address for II.  *See* [ECF No. 142 at p. 1 of 5].  Indeed, the II address in the Certificate of Notice is bereft of any postal code, whatsoever.

Moreover, St. Kitts does not use ZIP codes.  It uses an alpha-numeric postal code system with different codes for each postal zone.  For example, codes start with "KN" followed by four digits like KN0101 for the General Post Office in Basseterre or KN0602 for a delivery district in Cayon.  Payne Decl. at ¶11.

---

[3] The *Certificate of Notice* is the operative document.  *See* [ECF No. 142].

[4] "ZIP" refers to Zone Improvement Plan, an acronym chosen by the United States Postal Service ("USPS") to suggest that mail travels more efficiently and quickly, or "zips" along. The system was introduced in 1963 to help the USPS sort and deliver mail more efficiently.  The basic 5-digit ZIP code was extended to a ZIP+4 code, which includes four additional digits to further pinpoint a mail deliver location.  *See* uspsoig.gov, White Paper, April 1, 2013, Rept. No. RARC-WP-13-006 re Technology (last accessed 11/22/2025).

Finally, mail delivery is quite unreliable in St. Kitts. *See* Payne Decl. at ¶10. In his declaration, Mr. Payne states that overseas mail is sometimes not delivered at all, and in many instances mail has been delivered several months or years after the date of mailing. *Id*. at ¶10.

Considering the BNC's failure to add an alpha-numeric postal code to the II address, and Mr. Payne's declaration regarding mail delivery difficulties in St. Kitts, it is clear that II did not receive notice of conversion of the Debtors' bankruptcy case from 11 to 7, and it did not know of the Chapter 7 Bar Date. *Id*. at ¶10-12. II was made aware of the conversion to chapter 7 in 2025, because the Trustee reached out to Paul Bilzerian in late November 2024, who subsequently advised Mr. Payne in 2025. *Id*. at ¶14. However, the Chapter 7 Bar Date had long-passed at that time.

On May 30, 2025, II filed its proof of claim [Claim No. 2-1] in the well-known amount of $3,972,111.11 due and owing by Blitz, which was voluntarily listed in the Debtor's schedules as not contingent, unliquidated or disputed, and which was presented in the DIP Motion, DIP Loan and related filings.

Here, II never received actual notice of the claims bar date and had no reasonable opportunity to file a timely proof of claim. Disallowance of the claim on such grounds would violate due process. At a minimum, equity warrants allowance of the otherwise properly filed proof of claim given that (i) no prejudice would result to the estate, (ii) the movant acted promptly upon becoming aware of the necessity to file the claim, and (iii) all of the parties to these bankruptcy proceedings acknowledge that the debt is due and owing as reflected in the Debtor's own schedules – listed as non-contingent, not disputed and fully liquidated.

For the reasons set forth above, and pursuant the authority of *In re Hardy* and *In re First Magnus Financial Corp.*, II has demonstrated good cause and excusable neglect for this Court to deem its Claim No. 2-1 timely filed.

## C.      The Trustee Mischaracterizes the Loan Transaction

The Trustee contends that "International Investments has failed to provide any competent evidence showing that it ever loaned funds to the Debtor or that any debt is owed." [ECF No. 355 at ℙ 28]. This assertion misstates the record. The Trustee's own exhibit includes the Prepetition Note, which became effective as of January 1, 2023, and expressly identifies II as the Lender and the Debtor

as the Borrower. Moreover, the Court does not need to look further than the II Proof of Claim, which includes (i) the signature of II's creditor or authorized agent, (ii) the summary of funds advanced under the $4,000,000 line of credit, (iii) the corporate address and payment instructions, and (iv) the itemization of principal and accrued contractual interest. These materials constitute prima facie evidence of the validity and amount of II's claim.  A true and accurate copy of Claim No. 2-1, and all exhibits, is attached to the Payne Decl. at Exhibit 1.  Mr. Payne testifies in his declaration that the documents are authentic business records of II, that they are true and accurate copies that were made contemporaneous with the events contained therein, and that these documents are trustworthy.  *Id*. at ¶16.

To the extent the Trustee relies on underlying wire transfer confirmations and other documents attached to the Objection to challenge that evidence, such documents must themselves be properly introduced and authenticated under the Federal Rules of Evidence ("Fed. R. Evid.").  *See* Fed. R. Bankr. P. 9017. Accordingly, an evidentiary hearing may be required to resolve the purported factual dispute that the Trustee raises, and to allow for the authentication and admission of the documents cited in the Objection, including the wire transfer records and any related communications purporting to characterize the nature of the funding transactions. Without such a hearing, the Trustee's evidentiary challenges are premature and unsupported.[5]

The funds at issue in II's claim against the Estate were advanced as part of the financial relationship between II and the Debtor.  Despite that funds were directed by Scott Rohleder via his company Rohleder, Inc. to the Debtor's principal Dan Bilzerian, there can be no question that the funds were intended for Blitz, and used by Blitz, in its business operations. The transfer of funds through affiliated entities or person is not unusual with closely held companies. The relevant inquiry should be whether the Debtor received the benefit of the loans and not whether the internal funding pathway followed formal banking conventions.  In any event, it is irrelevant as the Debtor's own schedules admit that it owed II the money.

---

[5] Under LR 9014, the first hearing on this Objection is deemed non-evidentiary.  To the extent this Court does not overrule the Objection in its entirety, II requests an evidentiary hearing to present evidence of the pre-petition debt due and owing by the Debtor to II.

**II's Proof of Claim Properly Relates Back to the Informal Proof of Claim**

"The Ninth Circuit has long recognized the informal proof of claim doctrine, consistently applying the so-called rule of liberality in amendments to creditors' proofs of claim so that the formal claim relates back to a previously filed informal claim." *In re Fish*, 456 B.R. 413, 417 (B.A.P. 9th Cir. 2011) (internal citation and quotations omitted). The *In re Fish* court explained, "[i]n the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity." *Id.*, *citing In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 816-17 (9th Cir. 1985).

"For a document to constitute an informal proof of claim, it must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *In re Fish*, at 417 (cleaned up). The requirements for an informal claim, according to the Ninth Circuit Bankruptcy Appellate Panel are:

(1)     presentment of a writing;

(2)     within the time for the filing of claims;

(3)     by or on behalf of the creditor;

(4)     bringing to the attention of the court;

(5)     the nature and amount of a claim asserted against the estate.

*Id.* Nevertheless, these requirements are not to be applied formalistically. *See Diversified Pacific Opportunity Fund I, LLC, v. Cisneros (In re Riley)*, No. 6:09-BK-23174-DS, 2013 WL 4854485 (C.D.Cal. May 7, 2013) (reviewing the requirements and comparing other Ninth Circuit decisions that focus on resolving the issue on the merits and not on formalities).

The *In re Fish* court then proceeded to explain the various documents that have been held to be informal proofs of claim in other court decisions: disclosure statements, complaints for relief from the automatic stay with attachments, district court complaint combined with creditor's correspondence with debtor's counsel and a joint motion with the debtor to transfer the case to bankruptcy court, and a letter to the bankruptcy trustee even though it had not been filed with the

11

bankruptcy court. *In re Fish*, at 417. "In all these cases the courts focused not on the type of document, but on its contents and the creditor's conduct." *Id.* at 417-18.

The *In re Riley* court in California, though unpublished, provides an excellent summary of how the variance in the decisions involving informal proofs of claim involves notice. 2013 WL 4854485 at *2-3. "The salient issue is whether or not a creditor is seeking to introduce a new claim in disguise." *Id.*, *citing In re Sambo's Restaurants, Inc.,* 754 F.2d 811, 815 (9th Cir. 1985). The *Sambo* decision explained the rule of liberality:

> "In the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity."

*Id.* at 816-17. In other words, the goal is "to liberally allow amendments if the estate had adequate notice of the creditor's intent to pursue the claim." *In re Riley*, 2013 WL 4854485 at *4. Here, the Debtor had ample notice of the debt it owed to II and II has not tried to seek a new claim in disguise— merely the same debt the Debtor has owed since 2023.

Along the lines of the courts liberally construing amendments, the Ninth Circuit has previously considered multiple documents together to find a valid informal proof of claim. *See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.),* 761 F.2d 1374, 1381 (9th Cir. 1985). That court found that correspondence with debtor's counsel and a joint motion with the debtor to transfer a case to bankruptcy court together were sufficient to constitute an informal proof of claim. *Id.*

Courts in other jurisdictions have applied the same underlying principles. The doctrine of informal proof of claims is a judicially created doctrine designed "to alleviate the problems of form over substance by averting the potentially devastating effects the failure to formally comply with the Bankruptcy Rules may cause, when practically speaking a creditor's pleading(s) put all the parties in interest on sufficient and timely notice that a claim was being asserted." *In re Bargdill¸* 238 B.R. 711, 717 (Bankr. N.D. Ohio 1999). Then again, not every document filed prior to the bar date is an informal proof of claim, according to the Eleventh Circuit Court of Appeals. *The Charter Co. v. Dioxin Claimants* (*In re The Charter Co.*), 876 F.2d 861, 863-64 (11th Cir. 1989).

The *Charter* court found that "a document must apprise the court of the existence, nature and amount of the claim (if ascertainable) and make clear that the claimant's intention to hold the debtor liable for the claim" to qualify as an informal proof of claim. *Id.* That court cited to multiple other cases finding the following to be adequate for an informal proof of claim: "motions for relief from an automatic stay, letters notifying the trustee of a debt of the estate, and complaints against a chapter 7 discharge together with an objection to a chapter 13 plan." *Id.* at 864 (cleaned up). There is a caveat, however, that "[m]ere knowledge by the debtor of the creditor's claim will not suffice to establish the existence of a valid proof of claim." *Id.* If the court agrees with the informal proof of claim analysis, then it will be given "retroactive effect to the date of the timely filed informal proof of claim." *Bargdill*, at 717.

Here, the Trustee's Objection ignores the central equitable test: whether the estate had timely notice of II's claim and that II intended to hold the Debtor liable. That standard is plainly satisfied. The Debtor expressly identified II as its largest unsecured creditor in the DIP Motion and DIP Loan [ECF No. 41] and in the Debtor's schedules [ECF No. 29, p. 2 of 24 and 10 of 24 at § 3.3] during Chapter 11. The debt was never disputed, never marked as disputed, contingent or unliquidated, and was actively incorporated into the Debtor's financial representations to the Court. Importantly, under Chapter 11, creditors such as II are not required to file proofs of claim when the debtor lists the debt on a schedule, unless their claims are marked "disputed, contingent, or unliquidated." *See Fed. R. Bankr. P.* 3003(c)(2); 11 U.S.C. § 1111(a). That II subsequently filed a formal proof of claim after conversion to Chapter 7 does not defeat relation back to the informal proof of claim, but merely supplies the formal mechanism confirming the same claim already disclosed and relied upon throughout the proceedings.

Accordingly, the Claim No. 2-1, filed by II post-conversion, constitutes a proper amendment that relates back to its earlier informal claim. The bankruptcy estate was at all relevant times on notice of the existence, nature, and amount of the debt, and the Trustee has identified no prejudice arising from the timing. To hold otherwise would elevate procedural technicality over longstanding equitable doctrine, precisely what the informal proof of claim doctrine is designed to prevent. *See In re Fish*,

456 B.R. 413 (B.A.P. 9th Cir. 2011). II's proof of claim should therefore be deemed timely and allowed in full.

### D.    Equity and Absence of Prejudice Compel Allowance of the Claim

Even apart from the substantial authority supporting relation back to the informal proof of claim and allowance of II's amended Claim No. 2-1, *supra*, equity and the absence of prejudice overwhelmingly favor the claim's allowance. Bankruptcy courts operate as courts of equity, and as the Ninth Circuit has repeatedly emphasized, the Bankruptcy Rules regarding proofs of claim must be construed to avoid forfeiture of legitimate claims based on procedural technicalities. *See In re Sambo's Rests.,* 754 F.2d at 816-17 (encouraging "liberal allowance" of claim amendments); *In re Fish*, 456 B.R. at 417 (same).

Here, no party, including the Debtor or the Trustee, have ever disputed the existence, amount, or enforceability of the underlying debt owed to II. To the contrary, both the Debtor and the Trustee consistently treated II as the largest creditor in the case, expressly identifying the obligation in the Schedules and DIP Motion and never marking the debt as disputed, contingent, or unliquidated.

"In the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity." *Sambo's Rests.,* 754 F.2d at 816-17. The Ninth Circuit Bankruptcy Appellate Panel has previously considered whether there would be prejudice if an informal proof of claim were allowed after the disclosure statement had been approved, the plan had been sent out for a vote, and the funds had already been disbursed under the confirmed plan. *In re Wheatfield Business Park, LLC,* 308 B.R. 463, 468 (B.A.P. 9th Cir. 2004). That court determined that allowing the claim would not result in prejudice because a creditor who delivered an amendable, informal proof of claim is in the same position as those who properly filed formal proofs of claim. *Id.* Further, a "mere reduction in the distribution" to one creditor when another creditor's informal proof of claim is allowed by the court is "not sufficient prejudice to justify disallowing" the amended claim. *In re Parrott Broadcasting Limited Partnership*, 518 B.R. 602, 612 (Bankr. D. Idaho 2014) (where one creditor

14

objected to another creditor's informal proof of claim argument on the grounds that allowing the amended claim would reduce its distribution from 29 cents on the dollar to 11 cents on the dollar).

Here, the Trustee has not identified any reliance or detriment arising from the timing of the filing other than the mere fact that II's formal proof of claim was filed after the Bar Date. [ECF No. 355 at p. 5 of 95].[6] Rather, the Trustee only mentions prejudice once in his Objection. [ECF No. 355 at p. 8 of 96]. The Trustee's statement regarding prejudice is entirely conclusory and unsupported by any showing of actual harm. II filing its Claim No. 2-1 after the Trustee moved to approve the sale does not constitute legal prejudice. No distribution to creditors has occurred, the sale was not conditioned on claims allowance, and allowing II's claim will not delay or disrupt estate administration. The Trustee does not contend that any sale order must be unwound or that creditor recoveries would be improperly diluted. In fact, the Trustee proceeded with his sale motion with full knowledge of II's late-filed Claim No. 2-1, as set forth in detail above.

Moreover, any perceived delay is fully explained by the lack of notice to II of the Chapter 7 Bar Date. II acted promptly upon becoming aware that a formal claim was necessary to protect its position following the conversion to Chapter 7. Disallowing II's claim now would elevate form over substance, imposing a harsh penalty, and produce a windfall to other creditors or the estate in contravention of the fundamental policy of ensuring equitable distribution. Disallowance would deprive II of the opportunity to participate in distributions on a debt that was openly acknowledged from inception and never challenged until the Objection.

Accordingly, equity, fairness, and the absence of any demonstrated prejudice mandate that II's Proof of Claim be deemed timely and allowed in full.

---

[6] In fact, but for Ignite International, Ltd. pursuing the acquisition of Debtor's assets, and paying the handsome sum of $890,000 for the assets remaining with the estate, there would be no distributions to creditors. *See Trustee's Notice of Sale* [ECF No. 351].

## IV.    CONCLUSION

For the reasons set forth herein, the Court should (i) overrule the Trustee's Objection; (ii) find that II's Proof of Claim is allowed in its entirety; and (iii) make such other findings that are just and proper under the circumstances.

Dated this 25th day of November, 2025.

McDONALD CARANO LLP

/s/ Ryan J. Works
Ryan J. Works, Esq. (NSBN 9224)
Jonah Gavish, Esq. (NSBN 17197)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
jgavish@mcdonaldcarano.com

Attorneys for Ignite International, Ltd.,
Rohleder Inc., and International Investments, Ltd.

16